No. 22-1747

IN THE

# United States Court of Appeals for the Federal Circuit

DANIEL D. BARRY,

*Claimant-Appellant*,

*v.*

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS,

*Respondent-Appellee.*

On Appeal from the United States Court of Appeals for Veterans Claims No. 20-3367, Judge Michael P. Allen, Judge Joseph L. Falvey, and Judge Grant C. Jaquith

# OPENING BRIEF OF CLAIMANT-APPELLANT DANIEL D. BARRY

Kenneth H. Dojaquez
CARPENTER CHARTERED
P.O. Box 2099
Topeka, KS 66601

Jingyuan Luo
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Melanie L. Bostwick
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

*Counsel for Claimant-Appellant*

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1747

**Short Case Caption** Barry v. McDonough

**Filing Party/Entity** Daniel D. Barry

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/06/2022

Signature: /s/ Jingyuan Luo

Name: Jingyuan Luo

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Daniel D. Barry | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**


CERTIFICATE OF INTEREST ... i

TABLE OF AUTHORITIES ... vi

STATEMENT OF RELATED CASES ... x

INTRODUCTION ... 1

JURISDICTIONAL STATEMENT ... 3

STATEMENT OF THE ISSUES ... 4

STATEMENT OF THE CASE ... 4

- The VA's SMC scheme entitles exceptionally disabled veterans to extra monthly compensation. ... 4
- Mr. Barry, an Army veteran, sustains injuries from a land mine in Vietnam and is awarded SMC benefits ... 7
- Mr. Barry seeks an increase in his SMC rate based on additional compensable service-connected disabilities rated at 320%. ... 8
- The Board of Veterans' Appeals denies Mr. Barry's claim, and a split Veterans Court panel affirms the judgment. ... 10

SUMMARY OF THE ARGUMENT ... 19

STANDARD OF REVIEW ... 21

ARGUMENT ... 22

I. The Veterans Court Majority Erred in Holding That § 3.350(f)(3) Only Permits One Half-Step Increase in SMC Rate. ... 22

   A. The text of subsection (f)(3) does not limit a veteran to a single half-step increase in SMC rate. ... 22

   B. The majority's interpretation of § 3.350(f)(3) is unpersuasive. ... 25

   C. The majority erred in not considering the pro-veteran canon in its interpretation of § 3.350(f)(3). ... 35

1. The pro-veteran canon is an important piece of the Court's interpretive toolkit and should be considered when the text of the statute does not clearly answer the question at hand.... 36

2. Even if "sustained textual analysis" precedes the application of the pro-veteran canon, it does not resolve the meaning of § 3.350(f)(3). .... 41

II. Subsection 3.350(f)(3) Should be Interpreted to Permit Multiple Half-Step Increases in SMC Rate. ......................... 43

A. The text of § 3.350(f)(3) indicates that a veteran is entitled to at least two half-step increases................. 43

B. The pro-veteran canon, VA's duty to maximize benefits, and legislative history of § 1114(p) all point to a more permissive interpretation of § 3.350(f)(3)................................................................ 44

CONCLUSION ........................................................................ 48

ADDENDUM

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Black & Decker Corp. v. Comm'r*,
986 F.2d 60 (4th Cir. 1993) ........ 20

*Boone v. Lightner*,
319 U.S. 561 (1943) ........ 36

*Breniser v. Shinseki*,
25 Vet. App. 64 (2011) ........ 4, 6

*Brown v. Gardner*,
513 U.S. 115 (1994) ........ 37

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ........ 38

*Fishgold v. Sullivan Drydock & Repair Corp.*,
328 U.S. 275 (1946) ........ 36

*Foster v. McDonough*,
34 Vet. App. 338 (2021) ........ 12, 21

*Goodman v. Shulkin*,
870 F.3d 1383 (Fed. Cir. 2017) ........ 37

*Henderson ex rel. Henderson v. Shinseki*,
562 U.S. 428 (2011) ........ 37, 39

*Hudgens v. McDonald*,
823 F.3d 630 (Fed. Cir. 2016) ........ 40

*Huerta v. McDonough*,
34 Vet. App. 76 (2021) ........ 16

*King v. St. Vincent's Hosp.*,
502 U.S. 215 (1991) ........ 37, 39

*Kisor v. McDonough*,
995 F.3d 1316 (Fed. Cir. 2021) ........................................................ 38

*Kisor v. McDonough*,
995 F.3d 1347 (Fed. Cir. 2021) .................................................. 38, 41

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019)............................................. 16, 20, 35, 38, 39

*Langdon v. McDonough*,
1 F.4th 1008 (Fed. Cir. 2021)........................................................... 23

*Maggitt v. West*,
202 F.3d 1370 (Fed. Cir. 2000) ........................................................ 12

*Moreira v. Principi*,
3 Vet. App. 522 (1992) ....................................................................... 5

*Morgan v. Wilkie*,
31 Vet. App. 162 (2019)..................................................................... 46

*NOVA v. Sec'y of Veterans Affairs*,
260 F.3d 1365 (Fed. Cir. 2001) ........................................................ 39

*Otero-Castro v. Principi*,
16 Vet. App. 375 (2002)..................................................................... 38

*Petitti v. McDonald*,
27 Vet. App. 415 (2015)..................................................................... 37

*Roberto v. Dep't of Navy*,
440 F.3d 1341 (Fed. Cir. 2006) ........................................................ 38

*Roby v. McDonough*,
No. 2020-1088, 2021 WL 3378834 (Fed. Cir. Aug. 4, 2021)............... 42

*SAS Inst., Inc. v. Iancu*,
138 S. Ct. 1348 (2018)....................................................................... 38

*Saunders v. Wilkie*,
886 F.3d 1356 (Fed. Cir. 2018) ........................................................ 21

*Savage v. Shinseki*,
24 Vet. App. 259 (2011) .......... 20

*Shinseki v. Sanders*,
556 U.S. 396 (2009) .......... 36

*Southall-Norman v. McDonald*,
28 Vet. App. 346 (2016) .......... 18, 23

*Sursely v. Peake*.
551 F.3d 1351 (Fed. Cir. 2009) .......... 26, 27, 40

*Tropf v. Nicholson*,
20 Vet. App. 317 (2006) .......... 37

*United States v. Oregon*,
366 U.S. 643 (1961) .......... 37

**Statutes**

38 U.S.C. § 501 .......... 6

38 U.S.C. § 1110 .......... 4

38 U.S.C. § 1111 .......... 4

38 U.S.C. § 1112 .......... 4

38 U.S.C. § 1113 .......... 4

38 U.S.C. § 1114 .......... *passim*

38 U.S.C. § 1115 .......... 4

38 U.S.C. § 1116 .......... 4

38 U.S.C. § 1117 .......... 4

38 U.S.C. § 1118 .......... 4

38 U.S.C. § 1162 .......... 40

38 U.S.C. § 7252 .......... 3

38 U.S.C. § 7266 .......... 3

38 U.S.C. § 7292 .......... 4, 21

Pub. L. No. 79-182, ch. 369, 59 Stat. 533 (1945) .......... 46

**Rules and Regulations**

38 C.F.R. § 3.103 .......... 46

38 C.F.R. § 3.321 .......... 11

38 C.F.R. § 3.350 .......... *passim*

38 C.F.R. § 4.16 .......... 11

**Other Authorities**

91 Cong. Rec. 7879 (1945) .......... 46, 47

H.R. Rep. No. 79-934 (1945) .......... 47

S. Rep. No. 79-549 (1945) .......... 47

U.S. Dep't of Veterans Affairs, *2022 VA Special Monthly Compensation Rates* (Aug. 9, 2022), https://www.va.gov/disability/compensation-rates/special-monthly-compensation-rates/ .......... 5, 29

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding in the U.S. Court of Appeals for Veterans Claims ("Veterans Court") was previously before this or any other appellate court.

Counsel are not aware of any cases in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal, within the meaning of Fed. Cir. R. 47.5(b) and the accompanying practice note.

## INTRODUCTION

Mr. Barry served the Nation honorably in Vietnam and became gravely injured after stepping on a land mine during combat. His injuries required an open amputation of his right leg above the knee and left him with a constellation of other service-connected disabilities. For his injuries, Mr. Barry receives special monthly compensation ("SMC"). SMC is a higher rate of compensation for veterans who suffer from additional hardships above and beyond those contemplated by the Department of Veterans Affairs' ("VA") schedule for rating disabilities. The rates of SMC, listed in 38 U.S.C. § 1114, vary according to the nature of the veteran's service-connected disabilities. Subsections (l) through (o) of the statute cover specific disabilities and situations. Subsection (p) recognizes that a veteran's service-connected disabilities may exceed the requirements for the prescribed rate for each level and allows a rate increase, half- or full-step, under certain specified conditions. The VA implements 38 U.S.C. § 1114 through 38 C.F.R. § 3.350. Subsections (f)(3) and (f)(4) of the regulation implement the half- and full-step increases discussed in § 1114(p).

In 2012, Mr. Barry filed a claim to increase his SMC rate after his May 2011 rating decision from the VA reflected additional compensable service-connected disabilities. His latest rating decision from the VA in December 2014 reflected still more additional compensable service-connected disabilities—all together totaling 320%. But the Board of Veterans' Appeals ("Board") denied Mr. Barry's claim, holding that he did not meet the requirements for a full-step SMC rate increase under § 3.350(f)(4) because none of his additional compensable service-connected disabilities was individually rated at 100%. Mr. Barry then appealed to the Court of Appeals for Veterans Claims ("Veterans Court"), arguing that he qualified for a higher SMC rate through multiple half-step increases under § 3.350(f)(3). The Veterans Court held in a 2 to 1 opinion that subsection (f)(3) only permits one half-step increase, and this half-step increase was already reflected in Mr. Barry's SMC (m ½) rating.

In reaching its interpretation of § 3.350(f)(3), the majority misinterpreted the plain language of the regulation, which entitles a veteran to at least two half-step increases in their SMC rate. And despite acknowledging that the plain language of the regulation does

not conclusively resolve whether a veteran is entitled to only one or as many half-step increases as their conditions justify, the majority failed to consider the pro-veteran canon, instead selectively prioritizing other tools of interpretation. When taken into consideration alongside the language in the regulation and the legislative history of § 1114(p), the pro-veteran canon tips the scale in favor of permitting veterans like Mr. Barry to receive multiple half-step increases in their SMC rate. Congress enacted disability benefits to make veterans as whole as possible, if only financially, for the wounds they suffered through their service to the Nation. Permitting multiple half-step increases in their SMC rate more adequately compensates veterans like Mr. Barry whose service-connected disabilities would otherwise go uncompensated.

## JURISDICTIONAL STATEMENT

This is an appeal from a final judgment of the Veterans Court. The Veterans Court had jurisdiction to review the decision of the Board under 38 U.S.C. §§ 7252 and 7266. On February 3, 2022, the Veterans Court issued an opinion affirming the Board's decision. Appx18; *see also* Appx29 (Judgment entered February 25, 2022). Mr. Barry timely appealed that judgment on April 22, 2022. Appx262. This appeal

raises legal issues, so this Court has jurisdiction under 38 U.S.C. § 7292(d)(1).

## STATEMENT OF THE ISSUES

Whether the Veterans Court erred in holding that 38 C.F.R. § 3.350(f)(3) only entitles a claimant to receive one half-step increase in special monthly compensation ("SMC") rate from the statutory rates payable under 38 U.S.C. § 1114 (l) through (n).

## STATEMENT OF THE CASE

### ***The VA's SMC scheme entitles exceptionally disabled veterans to extra monthly compensation.***

By law, veterans receive compensation for disabling conditions from military service based on their degree of disability. *See* 38 U.S.C. §§ 1110–1118. The purpose is to compensate the veteran for the economic loss resulting from the disease or injury sustained during military service. Special monthly compensation is available when, "'as the result of service-connected disability,' a veteran suffers additional hardships above and beyond those contemplated by VA's schedule for rating disabilities." *Breniser v. Shinseki*, 25 Vet. App. 64, 68 (2011) (citing 38 U.S.C. § 1114(k)–(s)). The rate of SMC "varies according to

the nature of the veteran's service-connected disabilities." *Moreira v. Principi*, 3 Vet. App. 522, 524 (1992).

Levels of SMC are listed in subsections (k) through (o) of § 1114. Subsection (k) is a special rate known as "SMC rate payment variation," and it can be added to the rates prescribed under subsections (l) through (n) subject to certain caps. 38 U.S.C. § 1114(k); *see* U.S. Dep't of Veterans Affairs, *2022 VA Special Monthly Compensation Rates* (Aug. 9, 2022), https://www.va.gov/disability/compensation-rates/special-monthly-compensation-rates/. Subsections (l) through (o) cover specific disabilities and provide progressively increased rates of SMC based on the severity of the veteran's disability. 38 U.S.C. §§ 1114(l)–(o). Subsection (p) provides for half- or full-step increases to the next higher rate in subsections (l) through (n) for a veteran whose service-connected disabilities exceed the requirements for the prescribed rate he or she meets, but who does not meet the qualifications for the next higher prescribed rate:

> (p) in the event the veteran's service-connected disabilities exceed the requirements for any of the rates prescribed in this section, the Secretary may allow the next higher rate or an intermediate rate, but in no event in excess of $4,667.

38 U.S.C. § 1114(p). The maximum rate of $4,667 permitted under subsection (p) is same as the rate prescribed in subsection (o). 38 U.S.C. § 1114(o). Thus, subsection (o) places a cap on the half- or full-step increases permitted under subsection (p).

To implement § 1114, the VA promulgated, among other regulations, 38 C.F.R. § 3.350. *Breniser*, 25 Vet. App. at 64; 38 U.S.C. § 501. Relevant to this appeal are the subsections implementing § 1114(p). Subsection (f)(3) discusses half-step increases and reads:

> Additional independent 50 percent disabilities. In addition to the statutory rates payable under 38 U.S.C. 1114 (l) through (n) and the intermediate or next higher rate provisions outlined above, *additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more will afford entitlement to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. 1114, but not above the (o) rate.* In the application of this subparagraph the disability or disabilities independently ratable at 50 percent or more must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitlement under 38 U.S.C. 1114 (l) through (n) or the intermediate rate provisions outlined above. The graduated ratings for arrested tuberculosis will not be utilized in this connection, but the permanent residuals of tuberculosis may be utilized.

38 C.F.R. § 3.350(f)(3) (emphasis added). And subsection (f)(4) discusses full-step increases and reads:

> Additional independent 100 percent ratings. In addition to the statutory rates payable under 38 U.S.C. 1114(l) through (n) and the intermediate or next higher rate provisions outlined above *additional single permanent disability independently ratable at 100 percent apart from any consideration of individual unemployability will afford entitlement to the next higher statutory rate under 38 U.S.C. 1114 or if already entitled to an intermediate rate to the next higher intermediate rate, but in no event higher than the rate for (o).* In the application of this subparagraph the single permanent disability independently ratable at 100 percent must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitlement under 38 U.S.C. 1114 (l) through (n) or the intermediate rate provisions outlined above.

38 C.F.R. § 3.350(f)(4) (emphasis added).

***Mr. Barry, an Army veteran, sustains injuries from a land mine in Vietnam and is awarded SMC benefits.***

Mr. Barry served honorably in the Army from July 31, 1969, to November 18, 1971. Appx1, Appx170, Appx186. He earned a Purple Heart for his service in Vietnam. Appx1. On October 23, 1970, during combat operations against hostile forces, then-Sergeant Barry stepped on a land mine. Appx181, Appx188. He required an open amputation of his right leg above the knee. Appx18, Appx187–188. He also suffered extensive loss of tissue on his left leg, exposing his tibia; fragment wounds to his right hand and left eye; and injury to both ears. Appx18, Appx181–185, Appx187–188. Sergeant Barry spent 13 months assigned

to hospitals until he received a disability retirement from the Army in November 1971. Appx18, Appx186.

Mr. Barry filed his first claim for compensation in January 1972, Appx178–180. The VA initially awarded Mr. Barry SMC for his loss of one foot under § 1114(k). Appx18–19, Appx168, Appx176. His SMC was increased in November 2005 to the intermediate step between subsections (m) and (n) due to the anatomical loss of his right leg as well as the loss of use of his left leg (meeting the requirement under § 1114(m)) and due to the loss of use of both feet and additional disabilities (scar of the right flank, status-post muscle graft right latissimus dorsi muscle group II) independently ratable at 50% of more (meeting the requirement under § 1114(p) for a half-step rate increase). Appx19, Appx166–168.

***Mr. Barry seeks an increase in his SMC rate based on additional compensable service-connected disabilities rated at 320%.***

Mr. Barry's May 2011 rating decision from the VA reflected additional compensable service-connected disabilities: PTSD, rated 70% disabling; left eye injury with glaucoma, 30%; glenohumeral arthritis of the right shoulder, 30%; glenohumeral arthritis of the left

shoulder, 20%; lumbosacral strain, 10%; and healed fractured fingers of the right hand, with traumatic tattooing, 10%. Appx19, Appx166–168. Consequently, he sought an increase in his SMC rate in September 2012. Appx165. Since filing his 2012 claim, Mr. Barry received another rating decision from the VA in December 2014, which, in addition to the compensable service-connected disabilities listed in his May 2011 rating, increased his rating for some of those service-connected disabilities and added further service-connected disabilities. Appx109–112. In total, Mr. Barry's current compensable disabling conditions include:

- Conditions for which he receives SMC at the (m ½) rate: right leg above the knee amputation; loss of use of left leg; loss of use of both feet; and loss of use for one eye, Appx2, Appx20, Appx112.
- Additional disabilities for which he currently does not receive compensation:
  - PTSD (70%),
  - Right shoulder arthritis (60%),
  - Left shoulder arthritis (50%),
  - Left eye injury with glaucoma (30%),

- Left eye disfigurement (30%),
- Defective hearing (20%),
- Lumbar spine injury (10%),
- Right hand injury (10%),
- Left and right hip joint disease (10% each),
- Hypertension (10%), and
- Tinnitus (10%).

Appx2, Appx20, Appx109–112.

***The Board of Veterans' Appeals denies Mr. Barry's claim, and a split Veterans Court panel affirms the judgment.***

On March 16, 2020, the Board concluded that Mr. Barry was not entitled to a higher SMC rate. Appx36. Specifically, the Board rejected Mr. Barry's argument that his additional disabilities, collectively rated over 100% disabling and independent of his loss of use of his lower extremities, satisfied the requirements under § 3.350(f)(4) for a full step increase to the next higher statutory rate or intermediate rate under § 1114(p). Appx38–41. Pointing to subsection (f)(4)'s requirement for an "additional single permanent disability" to "afford entitlement to the next higher statutory rate," the Board concluded that a combined 100

percent rating from multiple disabilities, even if caused by the same etiological injury, did not meet this *single* disability requirement. Appx38–41.

Mr. Barry appealed to the Veterans Court. Appx3, Appx30. His primary argument on appeal,[1] and relevant to this appeal, was that the Board misinterpreted § 3.350(f)(3) to limit him to one half-step increase in SMC rate when the regulation provides for as many half-step increases as a claimant's conditions can justify. Appx3, Appx193, Appx196–204. In Mr. Barry's situation, his additionally rated disabilities entitle him to multiple half-step increases under § 3.350(f)(3) to the maximum SMC rate under § 1114(o). Appx203–204. For example, his PTSD rating at 70%, his right shoulder rating at 60%, and his left shoulder rating at 50% would likely each qualify for

[1] Mr. Barry also argued that § 3.350(f)(4) is invalid because it prohibits a total disability rating based on individual unemployability (TDIU) awarded under 38 C.F.R. § 4.16 from being used as the equivalent of a 100% rating for a single disability under subsection (f)(4) and that he is entitled to an extraschedular rating under 38 C.F.R. § 3.321(b). Appx4, Appx204–209. The Veterans Court found that both issues were not ripe for review. Appx15–17. Neither are the subject of this appeal. And Mr. Barry reserves the right to fully develop the record below on these issues.

separate half-step increases.[2] His other injuries, a 30% rating for his vision defect and a separate 30% rating for a disfigurement of the left eye, combine for another half-step increase. And the remainder of his other injuries combined would also entitle him to a further half-step increase. While Mr. Barry's argument to the Veterans Court focused on a different subsection of § 3.350 than his argument to the Board, the Veterans Court exercised its discretion and considered Mr. Barry's argument because it called upon the Court to make purely legal determinations *de novo* that would frame how the agency assessed his claims. Appx8–9; *see Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000); *Foster v. McDonough*, 34 Vet. App. 338, 344–45 (2021).

On February 3, 2022, the Veterans Court affirmed the Board's March 2022 decision, concluding in a 2 to 1 opinion that the Board did not err when it failed to discuss whether Mr. Barry was entitled to

---

[2] It is not clear from the regulation if each of Mr. Barry's shoulder disability ratings would qualify for separate half-step increases; however, because Mr. Barry's disabling ratings total 320%, there are multiple ways he can reach the maximum SMC rate under § 1114(o) if § 3.350(f)(3) is interpreted to permit as many half-step increases as a claimant's conditions justify. Thus, it does not matter how his conditions are combined for each half-step increase.

additional half-step rating increases under § 3.350(f)(3). Appx1–2. Despite recognizing that "the plain language of § 3.350(f)(3) standing alone does not conclusively resolve the issue dividing the parties" and that the "regulation doesn't clearly answer the question [it] face[d]," the majority assessed the meaning of subsection (f)(3) without considering the pro-veteran canon. Appx12–14. Instead, it held that it did not need to resort to the pro-veteran canon or "other canons of construction" because it could use "the tools of interpretation to assess the regulation's meaning." Appx14.

First, the majority looked to the text of § 3.350(f)(3), which recites that "additional single permanent disability *or* combinations of permanent disabilities independently ratable at 50 percent or more will afford entitlement to *the* next higher intermediate *rate*." Appx12; 38 C.F.R. § 3.350(f)(3) (emphasis added). The majority concluded that the use of the disjunctive "or" and the term "the" in conjunction with the singular term "rate" supported an interpretation of subsection (f)(3) as limited to a single half-step increase. Appx12. It further explained that this interpretation is supported by similar language in § 1114(p) using singular articles and the singular term "rate." Appx12 ("the Secretary

may allow *the* next higher *rate* or *an* intermediate *rate*.") (citing 38 U.S.C. § 1114(p)) (emphasis in original).

Second, the majority found an intrastatutory comparison between §§ 1114(k) and (p) persuasive. Appx12–13. Subsection (k) lists a number of conditions—including the loss of use of one or more creative organs, or one foot, or one hand, or both buttocks—and expressly provides a rate of compensation at $96 a month "for each such loss." 38 U.S.C. § 1114(k). And the VA's implementing regulation provides that SMC under § 1114(k) "is payable for *each* anatomical loss or loss of use." Appx13 (citing 38 C.F.R. § 3.350(a)). The majority found Congress's choice to include language providing for multiple applications of an SMC rate in § 1114(k) but not in § 1114(p) compelling evidence that Congress did not intend for § 1114(p) to apply more than once. Appx13.

Third, the majority resorted to the canon of interpretation that avoids rendering any portion of a regulation meaningless or superfluous, reasoning that an interpretation of § 3.350(f)(3) that permits multiple half-step increases would undermine § 3.350(f)(4). Appx14. While admitting that an interpretation of subsection (f)(3) that permits multiple half-step increases does not necessarily render

subsection (f)(4) meaningless, the majority held that "[i]t would be odd to say that a veteran may obtain higher benefits using multiple half-steps to get a full-step increase (or, as appellant's example for his case shows, even more) under subsection (f)(3), without meeting the fairly restrictive requirements for the full-step increase under subsection (f)(4)." Appx14.

Contrary to its assertion that it expressed "no views concerning the pro-veteran canon's place within the 'order of operations' used for statutory and regulatory interpretation," the majority made an arbitrary distinction between "tools of interpretation" and "other canons of construction" in reaching its decision. Appx14 & n.57. And it then placed those tools of interpretation on the same level with the canon against surplusage, giving them priority over other interpretive tools, including the pro-veteran canon, in the order of regulatory interpretation.

Dissenting in part, Judge Jaquith found that the Board erred in denying Mr. Barry a higher statutory SMC rate. Appx28. He disagreed with the majority's interpretation of the regulation, instead explaining that the text of § 3.350(f)(3) plainly provides for two half-step

increases—first to the intermediate rate, and for those like Mr. Barry already at an intermediate rate, to the next statutory rate. Appx18. He further noted that the majority's interpretation conflicts with both the pro-veteran canon and the VA's duty to maximize benefits. Appx22–28. Judge Jaquith agreed with the majority that determining the plain meaning of a regulation requires the Court to "bring all its interpretative tools to bear" and "make a conscientious effort to determine, based on indicia like text, structure, history, and purpose, whether the regulation really has more than one reasonable meaning." Appx23 (citing *Huerta v. McDonough*, 34 Vet. App. 76, 80 (2021) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2423–24 (2019)). But because interpreting the words of a regulation in their context "seems to include the veteran's canon," he found that the majority erred in not considering it. Appx23. Thus, to the extent the plain language of the regulation is not conclusive, this error constituted a separate basis to require reversal of the Board's decision. Appx28.

In reading the text of § 3.350(f)(3), Judge Jaquith explained that subsection (f)(3) describes the conditions that warrant a higher rate of SMC: "additional single permanent disability or combinations of

permanent disabilities independently ratable at 50 percent or more … [which] must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitlement" to SMC. Appx20 (quoting 38 C.F.R. § 3.350(f)(3)). And subsection (f)(3) also clearly specifies the outcome if either of those conditions are met: "entitlement to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. 1114, but not above the (o) rate." Appx20 (quoting 38 C.F.R. § 3.350(f)(3)). Thus, the text of the regulation teaches that the rate outcome in subsection (f)(3) is a half-step increase to an intermediate rate or, if the individual is already at an intermediate rate, another half-step increase to the next statutory rate. Appx20. This, he further explained, is consistent with the text in § 1114(p) allowing "the next higher rate or an intermediate rate." Appx21 (quoting 38 U.S.C. § 1114(p)).

Warning against reading a limitation that is not present into the regulation, Judge Jaquith observed that while the regulation identifies ratings that may not be utilized to obtain a half-step increase, such as those for arrested tuberculosis, it does not limit the use of § 3.350(f)(3)

to a single disability or one combination of disabilities, rated at 50%. Appx20–21. He explained that the meaning of subsection (f)(3) sanctioned by the majority added an unstated qualifier to the regulation: "to the next higher intermediate rate or if already entitled to an intermediate rate *under the other intermediate rate provisions outlined above* [in subsections f(1)–f(2)] to the next higher statutory rate." Appx21. And the Court should not "read into the regulation a limitation to its applicability that is simply not there." Appx21 (citing *Southall-Norman v. McDonald*, 28 Vet. App. 346, 351–52 (2016)).

Finally, Judge Jaquith explained that allowing for two half-step increases under § 3.350(f)(3) would not be incongruous with § 3.350(f)(4). Appx22. Under his interpretation, a veteran can advance to the next statutory SMC rate either through (1) two intermediate steps over time for two single permanent disabilities or combinations of permanent disabilities independently ratable at 50% or more or (2) through a single permanent disability independently ratable at 100%. Appx22. This interpretation of subsection (f)(3) thus does not render superfluous or conflict with subsection (f)(4). Appx22.

## SUMMARY OF THE ARGUMENT

Subsection 3.350(f)(3) allows veterans with an "additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more [] entitlement to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. 1114." 38 C.F.R. § 3.350(f)(3). Nothing in the text of the regulation limits the number of half-step increases to only one. In fact, it suggests that at least two half-step increases should be permitted. And the legislative history of § 1114(p), the statute that § 3.350(f)(3) implements, suggests an even more liberal reading of subsection (f)(3) to permit multiple half-step increases.

The Veterans Court majority acknowledged that the plain language of § 3.350(f)(3) does not clearly answer the question whether subsection (f)(3) limits a veteran to a single half-step increase or permits as many half-step increases as a veteran's disabilities can justify. Appx12. Yet it still affirmed the Board's opinion and held that § 3.350(f)(3) can only be used once to increase a claimant's SMC rate. Appx14.

In doing so, the Veterans Court majority erred by failing to consider the long-standing pro-veteran canon in its interpretation of § 3.350(f)(3). Regulatory interpretation requires the Court to "bring all its interpretive tools to bear," and one such tool is the pro-veteran canon. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2423 (2019); *Savage v. Shinseki*, 24 Vet. App. 259, 265 (2011) (citing *Black & Decker Corp. v. Comm'r*, 986 F.2d 60, 64 (4th Cir. 1993) ("Regulations, like statutes, are interpreted according to canons of construction.")).

The Veterans Court majority thus erred by making an arbitrary distinction between "tools of interpretation" and "canons of construction," concluding that it would only use the former to resolve the meaning of § 3.350(f)(3). Appx14. Such a distinction is contrary to legal precedent. Further, the majority compounded its error by selectively applying the canon against surplusage to support its conclusion that subsection (f)(3) cannot practically mean that multiple half-step increases are possible. Appx14. Application of this canon is not only logically untenable, but also directly contradicts the majority's claims that it expressed no views regarding the place of the pro-veteran canon within the order of operations used for statutory and regulatory

interpretation. Appx14 n.57. Rather, the Veterans Court majority selectively prioritized other tools of interpretation in reaching its decision. This was in error and does not persuasively resolve the interpretation of subsection (f)(3).

An interpretation of § 3.350(f)(3) in view of the pro-veteran canon and in light of the VA's duty to maximize benefits for veterans points to a more expansive reading of subsection (f)(3) to permit multiple half-step increases in SMC rate.

## STANDARD OF REVIEW

This Court must set aside an interpretation of a regulation "that was relied upon in the decision of the [Veterans Court]" and that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7292(d)(1)(A). The Veterans Court's legal determinations, including interpretations of statutes and regulations, are reviewed de novo. *See Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018); *Foster v. McDonough*, 34 Vet. App. 338, 344–45 (2021).

## ARGUMENT

### I. The Veterans Court Majority Erred in Holding That § 3.350(f)(3) Only Permits One Half-Step Increase in SMC Rate.

#### A. The text of subsection (f)(3) does not limit a veteran to a single half-step increase in SMC rate.

Subsection 3.350(f)(3) entitles veterans already receiving statutory rates under 38 U.S.C. § 1114 (l) through (n) "to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate" for an "additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more." 38 C.F.R. § 3.350(f)(3). And it sets out three limitations: (1) it sets a cap at the maximum statutory SMC rate of subsection (o); (2) it limits the qualifying disability or disabilities to those that are separate and distinct from the conditions that entitle the veteran to SMC rates under §§ 1114(l) through (n) and intermediate rates under §§ 3.350(f)(1) and (2) (prevents double counting of any disabling condition); and (3) it excludes graduated ratings for arrested tuberculosis (but not the permanent residuals of tuberculosis) from being utilized as the single disability or in the combinations of disabilities. *Id.*

But § 3.350(f)(3) does not state that the increase it provides for can only be applied once. And, as the dissent recognized, the Veterans Court majority erred in "read[ing] into the regulation a limitation to its applicability that is simply not there." Appx21 (citing *Southall-Norman v. McDonald*, 28 Vet. App. 346, 351–52 (2016)).

As the dissenting judge explained, in reading subsection (f)(3) as limited to only one half-step increase, the majority opinion added an unstated qualifier to the regulation. Appx21 (citing *Langdon v. McDonough*, 1 F.4th 1008, 1011 (Fed. Cir. 2021)). Section 3.350 allows veterans to obtain intermediate rates under subsection (f), specifically subsections (f)(1)–(f)(3). Subsections (f)(1) and (f)(2) list specific anatomical losses that entitle a veteran to an intermediate rate. 38 C.F.R. § 3.350(f)(1)(i), (iii), (v)–(vii), (ix)–(x), (xii); (f)(2)(i), (iii)-(vii). And subsection (f)(3) allows a veteran to obtain an intermediate rate through half-step increases. 38 C.F.R. § 3.350(f)(3). If subsection (f)(3) can only be applied once, then the regulation effectively limits a veteran's entitlement "to the next higher intermediate rate or if already entitled to an intermediate rate *under the other intermediate rate provisions outlined above* [in §§ 3.350(f)(1) and (f)(2)] to the next higher

statutory rate." Appx21. This language is notably missing from the relevant sentence of the regulation. And its presence in the next sentence of the regulation demonstrates that the VA knew how to differentiate between increases under subsection (f)(3) from those under the intermediate rate provisions in subsections (f)(1) and (f)(2). 38 C.F.R. § 3.350(f)(3) ("In the application of this subparagraph the disability or disabilities independently ratable at 50 percent or more must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitlement under 38 U.S.C. 1114 (l) through (n) *or the intermediate rate provisions outlined above*.") (emphasis added). Thus, if a veteran was limited to one half-step increase under subsection (f)(3), the regulation would explicitly state, as it does in the provision in the very next sentence, that the veteran could not use subsection (f)(3) itself to arrive at an intermediate rate through which he or she could subsequently obtain another half-step increase to the next higher statutory rate.

### B. The majority's interpretation of § 3.350(f)(3) is unpersuasive.

The Veterans Court majority relied on three reasons to conclude that § 3.350(f)(3) only entitles veterans to a single half-step increase in SMC rate: its interpretation of the text of subsection (f)(3) and of the statute it implements, § 1114(p); an intrastatutory comparison with § 1114(k) and its implementing regulation, § 3.350(a); and the canon against surplusage. Appx12–14. As discussed below, these reasons at best weakly support an interpretation of the regulation as limited to a single half-step increase, and the majority's reliance on the canon of surplusage is not only logically fallible but also arbitrarily elevates it above other canons of interpretation, in particular the pro-veteran canon.

**Language of the Regulation:** The majority first looked to the text of § 3.350(f)(3) and concluded that two aspects of the language tip the meaning of the subsection towards a single half-step increase: the use of the disjunctive "or" and the use of single articles and terms. Appx12.

But the use of disjunctive "or" is inapposite. The language "additional single permanent disability *or* combinations of permanent

disabilities independently ratable at 50 percent or more" only indicates that there are two distinct ways for a veteran to qualify for a half-step increase, not that a single half-step increase is all that is permitted.[3] 38 C.F.R. § 3.350(f)(3). The majority's suggestion that the use of the conjunctive "and" instead of the disjunctive "or" would provide more support for appellant's view that multiple half-step increases are allowed is illogical. Appx12. The use of the term "and" would require a veteran to have both a single permanent disability independently ratable at 50 percent or more *and* combinations of permanent disabilities independently ratable at 50 percent or more to obtain a half-step increase. It would still provide no guidance as to the number of half-step increases permitted by the regulation if the veteran met this increased burden.

This Court rejected similar reasoning from the Veterans Court in *Sursely v. Peake*. 551 F.3d 1351, 1357 (Fed. Cir. 2009). In *Sursely*, the

---

[3] To the extent that the majority meant to suggest the use of the disjunctive "or" indicates a choice between two options, each of which can only be used once, the limitation that each of the options can only be applied once is not in the regulation itself. Nor is it supported by the mere use of the disjunctive "or," which in this instance sets forth the two criteria a veteran can meet to receive a SMC rate increase.

Veterans Court reasoned that, "because a veteran could qualify for a clothing allowance through use of a prosthetic appliance 'or' through use of certain skin medications, 'fulfilling the requirements of *both* subsections would not lead to any greater clothing allowance than fulfilling the requirements of one subsection because the statute authorizes the Secretary to pay 'a clothing allowance to each veteran' who satisfies the criteria of either subsection.'" *Id.* This Court disagreed, explaining that that the word "or" simply signified that there was two ways to qualify for a clothing allowance, and that it implied nothing about whether the veteran can be awarded two clothing allowances, one based on a prosthetic appliance and the other based on a qualifying skin condition. *Id.* Likewise, the use of the disjunctive "or" in § 3.350(f)(3) implies nothing about the number of times subsection (f)(3) can be applied to increase a veteran's SMC rate.

And the majority's reliance on the regulation's use of the term "the" in conjunction with the singular term "rate" is also unavailing. Appx12 (referring to "entitlement to the *next* higher intermediate *rate*.") (emphasis in original). Read in context of the remainder of the

sentence,[4] all the singular article "the" paired with the term "rate" suggests is that a qualifying disability or combination of disabilities corresponds to the next higher intermediate rate. That is, if a veteran has an additional single permanent disability ratable at 50 percent or more, or a combination of permanent disabilities ratable at 50 percent or more, he or she would be entitled to *the* next higher intermediate rate. It does not answer the question of how many intermediate rate, or half-step, increases are permitted under the regulation if the veteran has more than one single permanent disability ratable at 50 percent or more, or more than one combination of disabilities rated at 50 percent or more. The language of the regulation only specifies that veterans meeting one of the requirements under subsection (f)(3) are entitled to a half-step increase, not the total number of permitted half-step increases.

---

[4] "In addition to the statutory rates payable under 38 U.S.C. 1114 (l) through (n) and the intermediate or next higher rate provisions outlined above, additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more will afford entitlement to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. 1114, but not above the (o) rate." 38 C.F.R. § 3.350(f)(3).

**Intrastatutory Comparison:** The majority then turned to the language in § 1114(k) and its implementing regulation, § 3.350(a). Appx12–13. The majority concluded that, because the language in § 1114(k) explicitly provides for multiple applications of an SMC rate, and such language is missing from § 1114(p) and its implementing regulation, §§ 3.350(f)(3) and (f)(4), Congress did not intend for § 1114(p) to be applied multiple times. Appx12–13. Thus, each of the rate increases under the corresponding regulatory provisions, §§ 3.350(f)(3) and (f)(4), can likewise only be applied once.

But the majority missed a key distinction between the SMC rate listed in § 1114(k) and the SMC rate *levels* in §§ 1114(l) through (o). As the VA itself recognizes, subsection (k) is a special rate called "SMC rate payment variation," whereas subsections (l) through (o) "cover specific disabilities and situations." *See* U.S. Dep't of Veterans Affairs, *2022 VA Special Monthly Compensation Rates* (Aug. 9, 2022), https://www.va.gov/disability/compensation-rates/special-monthly-compensation-rates/. As a rate payment variation, subsection 1114(k) lists a number of service-connected disabilities and a rate of

compensation of $96 per month "for each such loss or loss of use."[5] 38 U.S.C. § 1114(k). This is distinct from the SMC rate *levels* discussed in subsections (l) through (o), for which a veteran qualifies under the specific requirements set out in each subsection. 38 U.S.C. §§ 1114(l)–(o). Put another way, §§ 1114(l) through (o) are steps of an SMC rate ladder, with § 1114(o) being the maximum obtainable rate. It is this ladder to which § 1114(p) and its implementing regulations 38 C.F.R. §§ 3.350(f)(3) and (f)(4) apply half- and full-step increases. As evident

---

[5] "[I]f the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of one or more creative organs, or one foot, or one hand, or both buttocks, or blindness of one eye, having only light perception, has suffered complete organic aphonia with constant inability to communicate by speech, or deafness of both ears, having absence of air and bone conduction, or, in the case of a woman veteran, has suffered the anatomical loss of 25 percent or more of tissue from a single breast or both breasts in combination (including loss by mastectomy or partial mastectomy) or has received radiation treatment of breast tissue, *the rate of compensation therefor shall be $96 per month for each such loss or loss of use* independent of any other compensation provided in subsections (a) through (j) or subsection (s) of this section but in no event to exceed $3,327 per month; and in the event the veteran has suffered one or more of the disabilities heretofore specified in this subsection, in addition to the requirement for any of the rates specified in subsections (l) through (n) of this section*, the rate of compensation shall be increased by $96 per month for each such loss or loss of use*, but in no event to exceed $4,667 per month." 38 U.S.C. § 1114(k) (emphasis added).

from the language of the regulation itself, § 3.350(f)(3) does not include § 1114(k) as a step on this SMC rate ladder. 38 C.F.R. § 3.350(f)(3) ("In addition to the statutory rates payable under *38 U.S.C. 1114 (l) through (n)* … additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more will afford entitlement to the next higher intermediate rate … under 38 U.S.C. 1114, but not above the (o) rate.") (emphasis added).

The difference between rate levels in subsections (l) through (o) and the rate of compensation in subsection (k) is further reflected in the language of subsection (k) itself: "and in the event the veteran has suffered one or more of the disabilities heretofore specified in this subsection, *in addition to the requirement for any of the rates specified in subsections (l) through (n) of this section*, *the rate of compensation shall be increased by $96 per month for each such loss or loss of use*." 38 U.S.C. § 1114(k) (emphasis added). A veteran can only qualify for one rate level under subsections (l) through (o), whereas the rate of compensation in subsection (k) can be applied multiple times, and on top of any compensation received under subsections (l) through (n), subject to monetary limitations set forth in subsection (k). *See also*

*2022 VA Special Monthly Compensation rates*, *supra* ("We may add Level K to your basic SMC rate."). Thus, the language for multiple applications of the compensation rate per qualifying disability in subsection (k) is not informative as to whether § 3.350(f)(3)—implementing § 1114(p)—allows for only a single half-step increase or multiple half-step increases in the SMC rate *levels* reflected in subsections (l) through (n).

**Canon Against Surplusage:** In reasoning that § 3.350(f)(3) only permits one half-step increase, the majority also turned to § 3.350(f)(4) and the canon of interpretation that avoids rendering any portion of a regulation meaningless or superfluous. Appx14. If subsection (f)(3) permits multiple half-steps, the majority concluded that it would be incongruous for a veteran to obtain higher benefits through multiple half-step increases under subsection (f)(3) than through a full-step increase under subsection (f)(4), which has more restrictive requirements. Appx14.

But even the majority's opinion itself admits that this reasoning is shaky, noting "it may not be that appellant's interpretation of subsection (f)(3) renders subsection (f)(4) entirely meaningless."

Appx14. In order for multiple applications of subsection (f)(3) to render subsection (f)(4) entirely meaningless, the majority needs to make a number of assumptions. This includes that subsection (f)(4) itself can only be used once to increase a veteran's SMC rate; that the two subsections are mutually exclusive and cannot be used together to increase a veteran's SMC rate; and that subsection (f)(4) somehow caps the SMC rate increase under subsection (f)(3). But none of these assumptions are reflected in the language of the regulation or the statute it implements.

As with subsection (f)(3), there is no language in the subsection (f)(4) that limits its application to a single full-step increase. *See* 38 C.F.R. § 3.350(f)(4). Moreover, there is nothing in the regulation or the underlying statute that suggests subsections (f)(3) and (f)(4) are mutually exclusive. In fact, the language in the regulation suggests the opposite. Subsection (f)(4) reads in part: "In addition to the statutory rates payable under 38 U.S.C. 1114 (l) through (n) *and the intermediate or next higher rate provisions outlined above* additional single permanent disability independently ratable at 100 percent apart from any consideration of individual unemployability will afford entitlement

to the next higher statutory rate under 38 U.S.C. 1114 *or if already entitled to an intermediate rate to the next higher intermediate rate*, but in no event higher than the rate for (o)." 38 C.F.R. § 3.350(f)(4) (emphasis added). The reference to the "intermediate or next higher rate provisions outlined above" refers to the other subsections of 3.350(f), including subsection (f)(3). This indicates that the two subsections are not mutually exclusive, and that subsection (f)(4) does not set a limit for recovery for subsection (f)(3). The only limit is clearly stated in the regulation: "not above the (o) rate." 38 C.F.R. § 3.350(f)(3). This supports the conclusion that permitting multiple half-step increases under subsection (f)(3) does not render subsection (f)(4) superfluous.

Additionally, the majority's reasoning erroneously assumes that veterans with total disability ratings over 100% are somehow less disabled simply because none of their disabilities individually rate at 100%. And it leaves veterans with uncompensated disabilities. Mr. Barry is a prime example. Together, his twelve additional compensable disabilities from his December 2014 rating decision totals 320%. Appx22. But none of his disabilities individually rate at 100%. It is

illogical to suggest that Mr. Barry is less disabled and entitled to a lower SMC rate than someone with a single additionally compensable disability rated at 100%. Subsections (f)(3) and (f)(4) present a veteran with two avenues to obtain SMC rate increases. A reading of subsection (f)(3) that permits multiple half-step increases does not render subsection (f)(4) superfluous.

### C. The majority erred in not considering the pro-veteran canon in its interpretation of § 3.350(f)(3).

The majority admitted that the "plain language of § 3.350(f)(3) standing alone does not conclusively resolve the issue dividing the parties" because the regulation does not clearly answer the question of how many half-step increases in SMC rate are permitted under subsection (f)(3). Appx12. It thus erred by failing to "bring all its interpretive tools to bear" to ascertain the meaning of the regulation. *Kisor v. Wilkie*, 139 S. Ct. at 2423–24. Instead, the majority improperly relied on selective tools of interpretation and canons of construction without any consideration of the pro-veteran canon. But for the reasons discussed above (at 25–35), even if the case law permits the majority to selectively prioritize certain tools of interpretation before the pro-veteran canon, the tools the majority employed do not conclusively

resolve the meaning of § 3.350(f)(3). At best, they provide only weak support for an interpretation of subsection (f)(3) that is in tension with the text of the regulation itself, the legislative history of the underlying statute, and the VA's duty to maximize benefits.

**1. The pro-veteran canon is an important piece of the Court's interpretive toolkit and should be considered when the text of the statute does not clearly answer the question at hand.**

The pro-veteran canon has occupied a place in Supreme Court jurisprudence for almost 80 years. *See, e.g.*, *Boone v. Lightner*, 319 U.S. 561, 575 (1943) ("The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation."); *see also Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) ("Our problem is to construe the separate provisions of the [Selective Service] Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits."). The canon recognizes Congress's solicitude for veterans who often risk their own lives to serve the Nation. *See Shinseki v. Sanders*, 556 U.S. 396, 412 (2009); *see also*,

*United States v. Oregon*, 366 U.S. 643, 647 (1961) ("The solicitude of Congress for veterans is of long standing.").

The pro-veteran canon instructs that provisions providing benefits to veterans should be liberally construed in the veterans' favor, with any interpretive doubt resolved to their benefit. *See, e.g., King v. St. Vincent's Hosp.*, 502 U.S. 215, 220–221 & n.9 (1991); *Brown v. Gardner*, 513 U.S. 115, 118 (1994). This approach effectuates Congress's legislative intent to "place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 440 (2011) (citation omitted).

The issue of exactly when the pro-veteran canon should be applied in statutory and regulatory interpretation has admittedly been one that has divided this Court. It is undisputed that, when construing a regulation, it is appropriate to first examine the regulatory language itself. *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017); *Petitti v. McDonald*, 27 Vet. App. 415, 422 (2015); *Tropf v. Nicholson*, 20 Vet. App. 317, 320 (2006). But when the regulatory language does not answer the question at issue, this Court is split as to when the pro-

veteran canon is considered. *Compare Kisor v. McDonough*, 995 F.3d 1347, 1359–61 (Fed. Cir. 2021) (denying petition for rehearing en banc) (Hughes, J., concurring), with *id.* at 1363 (O'Malley, J., dissenting) and *Kisor v. McDonough*, 995 F.3d 1316, 1326 (Fed. Cir. 2021) (Reyna, J., dissenting).

It is well established that "[t]he rules of statutory construction apply when interpreting an agency regulation." *Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006); *Otero-Castro v. Principi*, 16 Vet. App. 375, 380 (2002) ("The basic principles that apply to construing statutes apply equally to construing regulations."). The Supreme Court has it made clear that courts are obligated to apply all traditional tools of statutory interpretation before resorting to deference. *Kisor*, 139 S. Ct. at 2415 ("[A] court must 'carefully consider[]' the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on.") (citation omitted); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018) ("[T]he *Chevron* Court explained that deference is not due unless a 'court, employing traditional tools of statutory construction,' is left with an unresolved ambiguity.") (citation omitted); *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) ("Even under

*Chevron*, we owe an agency's interpretation of the law no deference unless, after 'employing traditional tools of statutory construction,' we find ourselves unable to discern Congress's meaning.") (citation omitted).

The pro-veteran canon is one such traditional tool of statutory and regulatory interpretation. *See, e.g., Henderson*, 562 U.S. at 441 ("We have long applied the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.") (citations omitted); *Kisor*, 139 S. Ct. at 2430 ("In the real world the judge uses his traditional interpretive toolkit, full of canons and tiebreaking rules, to reach a decision about the best and fairest reading of the law.") (Gorsuch, J. concurring in judgment). The Supreme Court has also previously held that, if the meaning of the text is unclear, it "would ultimately read [an uncertain] provision in [the veteran]'s favor under the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *King*, 502 U.S. at 220–21 n.9.

This Court has also at times considered the pro-veteran canon as one of the "the usual canons of statutory construction." *See e.g., NOVA*

*v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1378 (Fed. Cir. 2001) (weighing the canon against countervailing legislative history); *Hudgens v. McDonald*, 823 F.3d 630, 637 (Fed. Cir. 2016) (weighing the canon over the VA's reliance on a dictionary definition). In *Sursely v. Peake*, this Court considered the pro-veteran canon alongside textual clues and legislative history in interpreting a VA statute discussing clothing allowance for veterans with certain service-connected disabilities. 551 F.3d at 1356–58 (discussing 38 U.S.C. § 1162). In doing so, this Court rejected the Veterans Court's reasoning that the veteran's proposed interpretation was "irrational" because "it would permit a veteran with multiple prosthetic appliances affecting a single article of clothing to receive multiple clothing allowances." *Id.* at 1357–58. Likewise here, it is also not an "irrational" result or incongruous with subsection (f)(4) for Mr. Barry to use subsection (f)(3) multiple times to arrive at a higher SMC rate. As this Court stated in *Sursely*, "there is no statutory language that requires the Secretary to ignore the practical situation of the veteran applying for benefits." *Id.* at 1358.

Thus, the pro-veteran canon should be applied, as any other tool of interpretation or canon of construction when the text of the regulation

read in isolation does not clearly resolve the issue. *Kisor v. McDonough*, 995 F.3d 1347, 1374 (Fed. Cir. 2021) ("But when the text yields competing plausible interpretations, all of the canons ought to be consulted and weighed in the analysis.") (O'Malley, J. dissenting).

**2. Even if "sustained textual analysis" precedes the application of the pro-veteran canon, it does not resolve the meaning of § 3.350(f)(3).**

In denying rehearing *en banc* in *Kisor*, this Court laid out a hierarchy of canons, placing the pro-veteran canon below other interpretive canons and holding that the pro-veteran canon is to be applied only when interpretive doubt remained after other canons of interpretation are applied. *Kisor v. McDonough*, 995 F.3d 1347, 1348 (Fed. Cir. 2021) ("[T]he pro-veteran canon should play a role only when a sustained textual analysis—including any applicable descriptive canons—yields competing plausible interpretations, none of which is fairly described as the best."). While this subordination of the pro-veteran canon has no basis in Supreme Court case law, *see supra* 36–41, it appears that the Veterans Court majority may have applied a similar hierarchy in determining the meaning of § 3.350(f)(3). *See* Appx14.

But the majority's "sustained textual analysis" *still* does not resolve the meaning of § 3.350(f)(3). The majority admitted that the language of the regulation is not clear. Appx12. Its intrastatutory comparison misses a key distinction between SMC rate levels in subsections (l) through (o) and the "rate of compensation" listed in subsection (k). *See supra* 29–32. And by its own admission, its application of the canon against surplusage is shaky. *See supra* 32–35. As the dissenting judge observed, at most, the majority's opinion demonstrates the existence of interpretive doubt in the text and meaning of subsection (f)(3). Appx26.

Thus, even under the "sustained textual analysis" approach, which subordinates the pro-veteran canon, the remaining interpretive doubt requires the Veterans Court to consider the pro-veteran canon in this case. *See Roby v. McDonough*, No. 2020-1088, 2021 WL 3378834, at *8 (Fed. Cir. Aug. 4, 2021) ("While the need to resort to the canon may be obviated where no interpretive doubt remains after consideration of more traditional tools of construction, once it is clear interpretive doubt remains, as the Veterans Court concluded, the pro-veteran canon of construction must be considered.").

## II. Subsection 3.350(f)(3) Should be Interpreted to Permit Multiple Half-Step Increases in SMC Rate.

Under the correct analytical approach, which includes the pro-veteran canon, § 3.350(f)(3) should be read more expansively to permit multiple half-step increases in a veteran's SMC rate. The language in the regulation itself suggests that at least two half-step increases should be permitted. And both the legislative history of § 1114(p), the statute that § 3.350(f)(3) implements, and the VA's duty to maximize benefits support a more liberal reading of the regulation to permit multiple half-step increases. Veterans like Mr. Barry who suffered amputations are among the most severely disabled from their service to the Nation. They should be allowed to receive the highest SMC rate their conditions justify. Permitting multiple half-step increases under subsection (f)(3) provides a more flexible framework under which they can obtain more adequate compensation.

### A. The text of § 3.350(f)(3) indicates that a veteran is entitled to at least two half-step increases.

Subsection 3.350(f)(3) specifies that, if a veteran has an "additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more," he or she is

entitled to “the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. 1114, but not above the (o) rate.” 38 C.F.R. § 3.350(f)(3). This language indicates that the rate outcome under subsection (f)(3) can be in addition to those under the other intermediate rate provisions in the regulation, including subsection (f)(3) itself. Thus, subsection (f)(3) at least entitles a veteran previously entitled to an intermediate rate—including under subsection (f)(3)—to the next higher statutory rate if a later increase in his service-connected disability ratings warrants it. This interpretation is further consistent with the statute that subsection (f)(3) implements, which permits entitlement to “the next higher rate or intermediate rate.” 38 U.S.C. § 1114(p).

### B. The pro-veteran canon, VA’s duty to maximize benefits, and legislative history of § 1114(p) all point to a more permissive interpretation of § 3.350(f)(3).

The only remaining issue is thus whether a veteran is limited to two half-step increases under subsection (f)(3)—as the dissenting judge found—or whether, as Mr. Barry argued, he or she is able to obtain as many half-step increases as their disabilities justify. Limiting a veteran to two half-step increases under subsection (f)(3) is a de-facto

cap of one full step under § 1114(p). While that may not be an entirely unreasonable interpretation of the language in subsection (p) read in isolation, it is in tension with the fact that the statute itself already expresses a monetary cap, at SMC rate (o).

Applying the pro-veteran canon makes clear that a veteran should be entitled to multiple half-step increases until he or she reaches SMC rate (o). The pro-veteran canon instructs that § 3.350(f)(3) be liberally construed in the veteran's favor. Any interpretive doubt regarding the number of half-step increases permitted under subsection (f)(3) should be resolved in the veteran's favor to permit as many half-step increases as their disabling conditions justify. Permitting veterans multiple half-step increases under subsection (f)(3) provides them with a more flexible framework under which they can obtain higher SMC rates based on their constellation of disabling conditions. Otherwise, veterans like Mr. Barry would be left with a multitude of uncompensated service-connected disabilities because they cannot otherwise use these conditions to qualify for higher statutory SMC rates.

Moreover, this interpretation is consistent with VA's duty to maximize benefits, which requires the VA to grant a veteran every benefit that can be supported in law while protecting the Government's interests, which are addressed by the statutory cap of SMC rate (o). *See Morgan v. Wilkie*, 31 Vet. App. 162, 164, 167–68 (2019); 38 C.F.R. § 3.103(a). And it is also supported by the legislative history of § 1114(p), which § 3.350(f)(3) implements. Subsection (p) was added to the Veterans Regulations in 1945. Pub. L. No. 79-182, ch. 369, 59 Stat. 533, 534 (1945) ("(p) In the event the disabled person's service-incurred disabilities exceed the requirements for any of the rates prescribed herein, the Administrator, in his discretion, may allow the next higher rate or an intermediate rate, but in no event in excess of $300."). Both the House and Senate reports accompanying the bill recognized "the great difference existing between double amputations at various levels"[6] and wanted to provide "a more flexible scale for the authorization of

---

[6] The House Congressional Record contemplated double amputation to include individuals "who have lost one arm and one leg, or one eye and one arm, or one eye and one leg." 91 Cong. Rec. 7879 (1945). Under this understanding, Mr. Barry is triply amputated: his right leg was amputated; he lost use of his left leg; and he lost use of one eye. Appx112.

monetary benefits to the most severely disabled veterans." H.R. Rep. No. 79-934, at 2 (1945); S. Rep. No. 79-549, at 1 (1945); 91 Cong. Rec 7879 (statement of Rep. Sabath) ("I wish to say I am extremely anxious to do everything in my power to help these most deserving men. We cannot do too much for them.").

Interpreting § 3.350(f)(3) as permitting multiple half-step increases would most effectuate Congress's intention behind § 1114(p) to provide a more flexible scale under which to authorize monetary benefits to the most severely disabled veterans. Subsection (p) recognizes that a veteran's service-connected disabilities may exceed the requirements for the prescribed rate he or she meets under § 1114. 38 U.S.C. § 1114(p). While detailed, no statute or regulation can possibly contemplate every veteran's disabling conditions. An interpretation of § 3.350(f)(3) that permits veterans multiple half-steps increases in their SMC rate provides a more flexible pathway for veterans to obtain additional compensation for disabling conditions that would otherwise go uncompensated. This would more adequately compensate veterans, like Mr. Barry whose additional compensable

service-connected disabilities total to 320%, for their service to the Nation.

## CONCLUSION

The Court should reverse the judgment of the Veterans Court and remand with instructions for the Board to consider Mr. Barry's SMC entitlement under the correct interpretation of § 3.350(f)(3).

September 6, 2022

Respectfully submitted,

*/s/ Jingyuan Luo*

Kenneth H. Dojaquez
CARPENTER CHARTERED
P.O. Box 2099
Topeka, KS 66601

Jingyuan Luo
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Melanie L. Bostwick
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

*Counsel for Appellant*

# ADDENDUM

Opinion, filed February 3, 2022 .................................................... Appx1

Judgment, filed February 25, 2022............................................... Appx29

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 20-3367

DANIEL D. BARRY, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 25, 2021 Decided February 3, 2022)

*Kenneth H. Dojaquez*, of Topeka, Kansas, for the appellant.

*Melissa C. Loomis*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Sarah W. Fusina*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before ALLEN, FALVEY, and JAQUITH, *Judges*.

ALLEN, *Judge,* filed the opinion of the Court. JAQUITH*, Judge*, filed an opinion concurring in part and dissenting in part.

ALLEN, *Judge*: As a general matter, VA compensates veterans for service-connected conditions by applying the Schedule for Rating Disabilities, which is meant to reflect the average impairment in earning capacity those conditions cause.[1] But Congress has also provided that, under certain circumstances, veterans will be entitled to receive compensation at a disability rate above that provided in the rating schedule. One device for providing such additional compensation is special monthly compensation (SMC).[2] This appeal concerns certain aspects of the SMC structure Congress has created and VA has implemented through its regulations.

Appellant Daniel D. Barry served the Nation honorably in the U.S. Army from July 1969 to November 1971.[3] We gratefully acknowledge Mr. Barry's extraordinary service in Vietnam, for which he earned a Purple Heart. In this appeal, which is timely and over which the Court has

[1] *See* 38 U.S.C. § 1155; *see also* 38 C.F.R. § 3.321(a).

[2] *See* 38 U.S.C. § 1114.

[3] Record (R.) at 3326.

jurisdiction,[4] he contests a March 16, 2020, Board of Veterans' Appeals decision that denied entitlement to SMC at the rate payable under 38 U.S.C. § 1114(n).[5]

This matter was submitted to a panel of the Court principally to address 38 C.F.R. § 3.350(f)(3), a portion of the regulation VA promulgated to implement the SMC program Congress established. As we will explain, § 3.350(f)(3) allows a veteran to receive an intermediate or half-step rating increase in SMC under certain circumstances, a rating device we will describe in more detail below.[6] The specific question we address today is whether § 3.350(f)(3) may be used more than once to provide for such an intermediate or half-step rating increase for SMC. In other words, does § 3.350(f)(3) provide for only one intermediate rating or may it be used to provide multiple intermediate ratings subject only to the maximum rate payable for SMC? Because we hold that § 3.350(f)(3) entitles a claimant to receive only one half-step rating increase in SMC benefits, we conclude that the Board did not err when it failed to discuss the possibility of entitlement to any additional half-step ratings under § 3.350(f)(3). We also conclude that appellant's other arguments on appeal are without merit. Accordingly, we will affirm the March 2020 Board decision.

## I. FACTS AND PROCEDURAL HISTORY

Since 1971, appellant has been receiving disability compensation benefits for injuries he suffered as a result of a landmine explosion that led to an above-the-knee amputation of his right leg. In addition to SMC benefits appellant receives for above-the-knee amputation of his right leg, loss of use of both feet, and loss of use of one eye, appellant is service connected for PTSD (with a 70% disability rating), a right shoulder condition (60%), a left shoulder condition (50%), a left eye disability (30%), left eye disfigurement (30%), bilateral hearing loss (20%), a lumbar spine injury (10%), a right hand injury (10%), left and right hip disabilities (10% each), hypertension (10%), and tinnitus (10%). He also has noncompensable service-connected disabilities that are not at issue here. Appellant has had a combined 100% disability rating since 1971, to which VA has added his SMC benefits.

---

[4] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[5] R. at 5-10.

[6] We use "half-step" and "intermediate" interchangeably in this opinion.

Relevant to this appeal, appellant receives SMC benefits under section 1114(p), title 38, U.S. Code, at an intermediate rate, that is a rate between sections 1114(m) and 1114(n) per 38 C.F.R. § 3.350(f)(3). Appellant sought an increase in SMC, which was ultimately denied by the regional office (RO), and appellant appealed to the Board. After the Board ruled against him, appellant appealed to this Court. In August 2019, the Court remanded appellant's claim for increased SMC under section 1114(n) because the Board failed to consider SMC exceptions under § 3.350(f)(4). Appellant raised no issues concerning an increased SMC rating under § 3.350(f)(3); his appeal focused entirely on (f)(4).

In March 2020, the Board issued the decision on appeal, concluding that appellant is not entitled to SMC at the rate provided under section 1114(n). The Board explained that appellant already receives an intermediate rate increase under § 3.350(f)(3), and the exception under § 3.350(f)(4) that allows for a full step increase was not available to appellant given the nature of his disabilities. As to subsection (f)(4), the Board recognized that independent of appellant's loss of use in the lower extremities (a reason why he receives SMC benefits already), his additional disabilities are collectively rated at 100%.[7] But the Board went on to explain that the exception allowing increased SMC under "(f)(4) requires that the separate 100[%] disabling disability be a single disability, not simply a combination of disabilities stemming from the same etiology."[8] The Board assessed the differences in the language between § 3.350(f)(3) and (f)(4) to support its conclusion.[9] This appeal followed.

## II. PARTIES' ARGUMENTS

Appellant's primary argument on appeal is that the Board misinterpreted § 3.350(f)(3) and, therefore, erred when it did not consider whether he was entitled to additional SMC benefits under that provision. Appellant posits that intermediate ratings under § 3.350(f)(3) are not limited to just one half-step increase. Rather, he asserts that the plain language of the regulation provides for as many intermediate increases as a claimant's condition can justify, subject only to the maximum SMC rate Congress has set. In that regard, he provides an example of how he believes § 3.350(f)(3) should have been applied in his case. His application goes like this: we start with appellant's

[7] R. at 6-7.

[8] R. at 7.

[9] R. at 7-9.

entitlement to SMC(m) based on the loss of use of his legs; then VA should consider that he has a 70% rating for PTSD that allows him to go up one intermediate step to receive compensation at the SMC(m 1/2) level; then VA should consider that he has two 30% ratings for left eye conditions that combine to make a 50% rating, which entitles him to another intermediate step to receive compensation at the SMC(n) level; then combining his left and right shoulder ratings, he would get another intermediate increase up the SMC(n 1/2) level; and finally, the remainder of his disabilities combine to a 50% rating that entitles him to obtain the maximum rate for SMC benefits, provided for at the SMC(o) level.[10]

Alternatively, appellant argues that § 3.350(f)(4) provides grounds for him to obtain SMC at a higher rate. He doesn't contest the Board's decision that none of his disabilities are independently rated at 100% such that he would be entitled to greater SMC benefits under subsection (f)(4).[11] Rather, he maintains that § 3.350(f)(4) is invalid because it prohibits a total disability rating based on individual unemployability (TDIU) awarded under 38 C.F.R. § 4.16 from being used as the equivalent of a 100% rating for a single disability, such that subsection (f)(4) would warrant an increase in his SMC compensation. He explains that his request for increased SMC compensation raised the issue of entitlement to TDIU, which, as we noted, he argues equates to a total disability rating that would make him eligible for increased SMC under § 3.350(f)(4). Therefore, he posits that "the Secretary's restriction in § 3.350(f)(4) that only a 100% schedular rating can qualify a veteran for a full increase in SMC benefits is contrary to [his] own regulations."[12]

Finally, appellant raises a second alternative argument, asserting that the record reasonably raises the issue of entitlement to an extraschedular rating under the current version of 38 C.F.R. § 3.321(b). He contends that what he characterizes as his request for a total rating was enough to raise the issue of entitlement to an extraschedular rating under § 3.321(b), and the Board erred by not considering it.[13]

---

[10] The record reflects that appellant has been receiving SMC at the (m 1/2) level since 2005, R. at 573, so we assume that appellant's explanation in his brief starting at the lower (m) level is merely for demonstrative purposes.

[11] Because he raises no argument about this point, he has abandoned any appeal about it. *See Pederson v. McDonald*, 27 Vet.App. 276, 283 (2015) (en banc).

[12] Appellant's Brief (Br.) at 15.

[13] *Id.* at 8.

For his part, the Secretary argues that appellant's interpretation of § 3.350(f)(3) is incompatible with the regulatory and statutory scheme for the provision of SMC benefits. The Secretary explains that a plain reading of § 3.350(f)(3), and review of 38 U.S.C. § 1114(p), the relevant portion of the authorizing statute, provides for only one intermediate step increase for any additional disabilities independently rated at 50% or more, not multiple intermediate step increases. He also notes that appellant raised this argument for the first time before the Court in this appeal and urges us to decline to address it. During oral argument, the Secretary maintained that if the Court concludes that § 3.350(f)(3) is ambiguous, then his interpretation should receive deference.[14]

Second, the Secretary asserts that the Court should reject appellant's argument that § 3.350(f)(4) is invalid not only because appellant raised this argument for the first time on appeal (just as he raised the subsection (f)(3) argument), but also because appellant does not contest the Board's determination that he is ineligible for a full step increase under § 3.350(f)(4) other than with respect to TDIU. But, the Secretary continues, appellant has not been adjudicated to be entitled to TDIU. So, because he is not in receipt of TDIU and does not contest the Board's determination that he is ineligible for a full step increase under § 3.350(f)(4), the Secretary maintains that appellant's request that the Court invalidate the portion of (f)(4) addressing TDIU is tantamount to asking the Court to issue a prohibited advisory opinion. The Secretary then asserts that if the Court decides to address the issue on the merits, appellant's argument fails because the regulation's express prohibition on using TDIU to justify a full-step increase is not unlawful.

Finally, the Secretary asserts that the Court should not address entitlement to an extraschedular rating under § 3.321(b) because that issue was neither expressly argued to the Board nor reasonably raised by the record. He states that the purpose of extraschedular ratings is to compensate veterans when their disabilities are incapable of evaluation under the rating schedule. And here, appellant has not argued that any of his service-connected disabilities is so severe or manifests in such unusual or extraordinary symptoms that a schedular rating is inadequate.

In his reply brief, appellant did not address the Secretary's assertions that the issues concerning §§ 3.350(f)(3) and (f)(4) are raised for the first time on appeal and, therefore, the Court should not consider them. However, during oral argument he urged us to exercise our discretion

---

[14] Oral Argument at 43:22-43:29, *Barry v. McDonough*, U.S. Vet. App. No. 20-3367 (oral argument held Oct. 25, 2021), http://www.uscourts.cavc.gov/oral_arguments_audio.php.

to hear his arguments on the merits. Additionally, appellant concedes that he never argued that the rating schedule was not capable of compensating his individual disabilities. Rather, he clarified that his extraschedular rating argument is that because he asked for a total rating under § 3.350(f)(4), the Board was required to consider whether referral for an extraschedular rating under § 3.321(b) was warranted.[15]

## III. ANALYSIS

As we noted above, appellant's principal argument on appeal concerns the operation of 38 C.F.R. § 3.350(f)(3). He then provides a first alternative argument focusing on 38 C.F.R. § 3.350(f)(4) and a second alternative under 38 C.F.R. § 3.321(b). We will follow appellant's lead and consider these arguments in the order of priority he has used. But before doing so, we must consider an antecedent question about whether we should address the arguments on the merits at all, given that appellant did not raise any of them before the Board.

### *A. Issue Exhaustion*

Our first task is to consider whether to invoke the doctrine of issue exhaustion and decline to address appellant's arguments, all of which have been raised for the first time on appeal to this Court. Traditionally, when presented with an argument newly raised on appeal over which we have jurisdiction, the Court has discretion to hear the argument, decline to address it, or remand the matter as appropriate.[16] Exercising this discretion entails a case-by-case analysis that weighs appellant's interests against the "institutional interests the doctrine exists to service."[17] The law continues to recognize the longstanding "importance of issue exhaustion with respect to administrative tribunals" because "'orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while [the agency] has opportunity for correction in order to raise issues reviewable by the courts.'"[18]

The U. S. Court of Appeals for the Federal Circuit has held that issue exhaustion is appropriate when "[a] veteran raises an argument for the first time on appeal to the Veterans Court

---

[15] Reply Br. at 7.

[16] *Maggitt v. West,* 202 F.3d 1370, 1377-89 (Fed. Cir. 2000); *see also* 38 U.S.C. §. 7252(a).

[17] *Maggitt*, 202 F.3d at 1377.

[18] *Scott v. McDonald*, 789 F.3d 1375, 1377 (Fed. Cir. 2015) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).

and the Veterans Court determines that the VA's institutional interests outweigh the interests of the veteran under the balancing test set forth in *Maggitt*."[19] In *Maggitt*, the Federal Circuit held that, because exhaustion of administrative remedies is not a jurisdictional requirement in the veterans benefits system, this Court may hear arguments raised before it in the first instance provided it otherwise has jurisdiction over the appeal.

We acknowledge that recently, in *Carr v. Saul*, the Supreme Court addressed issue exhaustion in the context of nonadversarial administrative proceedings before the Social Security Administration (SSA). In that context, and with respect to the particular argument at issue in *Carr*, the Supreme Court held that it was error for a court to impose an issue-exhaustion requirement on constitutional challenges not raised before the SSA.[20] Specifically, the Supreme Court held that claimants who applied for SSA disability benefits and who had hearings conducted or decisions issued by an administrative law judge (ALJ) whose appointment purportedly was not in accordance with the Appointments Clause of the U.S. Constitution were not required to assert such Appointments Clause challenges before the SSA and could appropriately raise them for the first time in Federal court.[21] The Supreme Court explained that in nonadversarial administrative proceedings the issue exhaustion doctrine should not be used for, at least, constitutional questions, "which usually fall outside the adjudicator's areas of technical expertise[,]" and futile questions, which are questions that are beyond the authority of an agency to address.[22] But the Supreme Court also suggested that "in the sphere of routine objections to individual benefits determinations, the scales might tip differently."[23]

It may be that *Carr* has affected how courts should consider issue exhaustion in the context of veterans benefits determinations. While the Supreme Court specifically addressed the concept in connection with SSA administrative adjudication, the Court's reasoning was frequently based on the more general differences between adversarial and nonadversarial proceedings.[24] However,

[19] *Dickens v. McDonald*, 814 F.3d 1359, 1361 (Fed. Cir. 2016); *see Scott*, 789 F.3d at 1377-81 (addressing contexts in which the requirement of issue exhaustion is appropriate).

[20] 141 S. Ct. 1352, 1362 (2021).

[21] *Id*. at 1362.

[22] *Id.* at 1360-61.

[23] *Id.*; *id.* at 1360 n.5.

[24] *Id*. at 1358-62.

while we have considered *Carr*, we need not assess its potential implications today. That is so because we conclude that it is appropriate for us to consider all appellant's arguments on the merits based on traditional issue exhaustion principles, which, if anything, provide for issue exhaustion to be employed in more situations than is likely the case under *Carr*.

We begin with appellant's argument that 38 C.F.R. § 3.350(f)(4) is invalid. Though appellant raised this argument for the first time on appeal, it is clearly appropriate for us to consider this argument. The Board is bound by VA regulations.[25] So, it would have been futile for appellant to raise this argument before the Board. "Resort to the administrative process is futile if the agency will almost certainly deny any relief . . . because it . . . lacks jurisdiction over[] the matter."[26] And as the Supreme Court recently held in *Carr*, "[i]t makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested. Such a vain exercise will rarely 'protect administrative agency authority' or 'promot[e] judicial efficiency.'"[27] Therefore, it is appropriate for us to consider appellant's argument concerning the invalidity of § 3.350(f)(4).

We will also exercise our discretion to address appellant's arguments concerning § 3.350(f)(3) and § 3.321(b) on the merits. These arguments call on us to make purely legal determinations. And when we decide such legal questions, we do so de novo.[28] Of course, we recognize that an agency has an important interest in addressing regulations within its expertise even if a court will usually interpret those regulations without deference to the agency.[29] Therefore, we acknowledge that there are institutional factors that weigh in favor of employing issue exhaustion principles here. But on balance we believe that the individual interests carry the day. Appellant is in a favored class: veterans. His challenge in large measure does not call on the Agency to employ its expertise and *apply* legal principles to assess his particular circumstances. Instead, he asks that the Court make certain legal determinations that would frame *how* the Agency

---

[25] *See* 38 U.S.C. § 7104(c).

[26] *Wolfe v. Wilkie*, 32 Vet.App. 1, 39 (2019) (quoting *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986)).

[27] *Carr*, 141 S. Ct. at 1361 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

[28] *See Foster v. McDonough*, 34 Vet.App. 338, 344-45 (2021); *see also Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc).

[29] *See Bowen v. City of New York*, 476 U.S. 467, 485 (1986) ("Because of the agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context.").

would assesses his claims. And the appellate judicial process has allowed VA to advance its views about the legal questions at issue, protecting the institutional interests we recognize are in play. And finally, appellant was represented by a non-attorney agent before the Board. Given the complex legal issues at the core of appellant's arguments on appeal, the lack of a lawyer before the Agency cuts in appellant's favor. Accordingly, after carefully balancing the competing interests at stake, we will exercise our discretion to address appellant's arguments in the first instance.[30]

*B. Interpretation of § 3.350(f)(3)*

We begin with basic, and likely familiar, principles underlying our interpretative endeavor. Questions of regulatory interpretation are questions of law that the Court reviews de novo.[31] The basics of regulatory interpretation are well established. We look first to text and structure of a regulation, which is the best indication of its plain meaning.[32] If the plain meaning of the regulation is clear on its face, then such plain meaning controls, and "that is 'the end of the matter.'"[33]

While the plain language of a regulation is critically important to the interpretive effort, it is not uncommon for courts to consider other things to assess a regulation's meaning. In other words, regulatory interpretation requires the Court to "bring all its interpretative tools to bear" and to "make a conscientious effort to determine, based on indicia like text, structure, history, and purpose, whether the regulation really has more than one reasonable meaning."[34] As Justice Kagan recently made clear on behalf of the Supreme Court, "a court cannot wave the ambiguity flag just because it found the regulation impenetrable on first read. Agency regulations can sometimes make the eyes glaze over. But hard interpretive conundrums, even relating to complex rules, can often be solved."[35] A regulation could be genuinely ambiguous to the extent it may not directly address an issue, or it may prove susceptible to more than one reasonable reading when applied to some

---

[30] *Carr*, 141 S. Ct. at 1360-61; *Maggitt*, 202 F.3d at 1377.

[31] *See Foster*, 34 Vet.App. at 344-45.

[32] *See Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017).

[33] *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)); *see also Kisor v. Wilkie*, __U.S. __, __, 139 S. Ct. 2400, 2415 (2019).

[34] *Kisor*, 139 S. Ct. at 2421; *see Savage v. Shinseki,* 24 Vet.App. 259, 265 (2011) (citing *Black & Decker Corp. v. Comm'r of Internal Revenue*, 986 F.2d 60, 64 (4th Cir.1993) ("Regulations, like statutes, are interpreted according to canons of construction.")).

[35] *Kisor*, 139 S. Ct. at 2415.

fact patterns.[36] But a regulation is not ambiguous simply because both parties insist that the plain meaning supports his or her position and neither party's interpretation is unreasonable to the Court.[37]

Before we turn to § 3.350(f)(3) in particular, a little background about SMC is in order to provide context. SMC is available when a veteran's service-connected disability or disabilities cause "additional hardships above and beyond those contemplated by VA's schedule for rating disabilities."[38] The rate of SMC "varies according to the nature of the veteran's service-connected disabilities."[39] Basic levels of SMC are listed in section 1114(k), providing for compensation where a veteran, as a result of service-connected disability, has also suffered one of the listed forms of anatomical loss.

A veteran who meets the requirements set out in section 1114(k) can potentially receive additional benefits through the SMC structure Congress has created. Namely, higher levels of SMC may be awarded if, in addition to one or more of the disabilities specified in subsection (k), the veteran also meets the requirements for any of the rates specified in subsections (l) through (o).[40] And, in cases where a veteran is entitled to an SMC rate between (l) and (n) and also has additional service-connected disabilities not captured by any SMC rate, the SMC rate can be increased by either a half or a full step, but not more than the maximum SMC rate set out in subsection (o).[41] Specifically, section 1114(p) provides that "in the event the veteran's service-connected disabilities exceed the requirements for any of the rates prescribed in this section, the Secretary may allow the next higher rate or an intermediate rate, but in no event in excess of $4,667."

Now let's turn to the focus of this appeal concerning SMC. Section 3.350, VA's implementing regulation for SMC ratings, provides for full and half-step rate increases in SMC in

---

[36] *Id*. at 2410.

[37] *Id*. at 2423.

[38] *Breniser v. Shinseki*, 25 Vet.App. 64, 68 (2011); *see* 38 U.S.C. § 1114(k)-(s). SMC is a statutory benefit provided for strictly noneconomic purposes to compensate veterans who suffered anatomical loss as a result of a service-connected disability, no formal claim is ever required, and it is always in addition to compensation benefits already being received. When more than one SMC rate is applicable, rates are calculated using the combined ratings table.

[39] *Moreira v. Principi*, 3 Vet.App. 522, 524 (1992).

[40] 38 U.S.C. § 1114.

[41] 38 U.S.C. § 1114(p). There are seven levels of SMC rates between (l) and (o): (l), (l 1/2), (m), (m 1/2), (n), (n 1/2), and (o).

certain circumstances. As germane here, a half-step increase is provided for under § 3.350(f)(3), which states:

> ***Additional independent 50 percent disabilities.*** In addition to the statutory rates payable under 38 U.S.C. [§] 1114 (l) through (n) and the intermediate or next higher rate provisions outlined above, additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more will afford entitlement to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. [§] 1114, but not above the (o) rate. In the application of this subparagraph the disability or disabilities independently ratable at 50 percent or more must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitlement under 38 U.S.C. [§] 1114 (l) through (n) or the intermediate rate provisions outlined above.

A full-step increase is provided for under § 3.350(f)(4),[42] which states:

> ***Additional independent 100 percent ratings.*** In addition to the statutory rates payable under 38 U.S.C. [§] 1114 (l) through (n) and the intermediate or next higher rate provisions outlined above additional single permanent disability independently ratable at 100 percent apart from any consideration of individual unemployability will afford entitlement to the next higher statutory rate under 38 U.S.C. 1114 or if already entitled to an intermediate rate to the next higher intermediate rate, but in no event higher than the rate for (o). In the application of this subparagraph the single permanent disability independently ratable at 100 percent must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitlement under 38 U.S.C. [§] 1114 (l) through (n) or the intermediate rate provisions outlined above.

To review where the parties stand, appellant argues that a plain reading § 3.350(f)(3) shows that if a veteran has multiple disabilities rated at least at 50%, each disability rated 50% (and each combination of disabilities adding up to 50%) allows for a half step increase up until the point at which the claimant reaches the upper limit for SMC in section 1114(o). In other words, he maintains the plain language of the regulation shows that one is not limited to just a single half-step increase. In contrast, the Secretary asserts that the plain meaning of § 3.350(f)(3) allows for only one half-step increase, regardless of how many disabilities a claimant has that are service connected and rated 50% disabling.

---

[42] While one of appellant's alternative arguments focuses directly on (f)(4), we set the regulation out here because it provides some context for our interpretation of (f)(3).

Confining ourselves for a moment to subsection (f)(3) in isolation, there is some indication that the regulation does not provide for multiple half-step increases. First, (f)(3) employs the phrase "additional single permanent disability *or* combinations of permanent disabilities independently ratable at 50[%] or more."[43] The use of "or" suggests a choice of one thing or another. If appellant's view were correct, it seems "and" would be more appropriate. In addition, having such a qualifying disability or combination of disabilities allows for "entitlement to *the* next higher intermediate *rate*."[44] The use of the term "the" in conjunction with the singular term "rate" points in the Secretary's direction.

Despite these textual clues, the reality is that the plain language of § 3.350(f)(3) standing alone does not conclusively resolve the issue dividing the parties. The regulation doesn't clearly answer the question we face. But that does not mean that we should immediately "wave the ambiguity flag."[45] Based on an assessment of the regulation using the wide array of interpretive tools at our disposal (with our subsection (f)(3) focused points in the background), we ultimately agree with the Secretary that § 3.350(f)(3) permits only one intermediate increase.

Section 3.350(f) implements section 1114(p). In section 1114(p), Congress provides that "the Secretary may allow *the* next higher *rate* or *an* intermediate *rate*."[46] The use of the terms "the" and "an" in conjunction with the singular term "rate" in the authorizing statute indicates that one singular "rate" would be provided through any regulation the Secretary adopted to implement the statute. Moreover, this interpretation is most consistent with the rest of the statute's language and structure. For example, section 1114(k) provides that "the rate of compensation therefor shall be [X amount] for *each such loss.*"[47] The italicized language suggests that multiple losses can qualify for SMC under subsection (k), standing in stark contrast to the more limited language in section 1114(p). We have previously found such intrastatutory comparisons useful when interpreting section 1114.[48]

---

[43] 38 C.F.R. § 3.350(f)(3) (2021) (emphasis added). The regulation goes on to repeat the "disability or combination of disabilities" language in a separate sentence.

[44] *Id*. (emphasis added).

[45] *Kisor*, 139 S. Ct. at 2415.

[46] 38 U.S.C. § 1114(p) (emphasis added).

[47] 38 U.S.C. § 1114(k) (emphasis added).

[48] *See Bria v. Wilkie*, 33 Vet.App. 228, 232-36 (2021).

In addition, VA's implementing regulation, § 3.350(a), recognizes the plurality of the statute. It provides that SMC under section 1114(k) "is payable for *each* anatomical loss or loss of use" of the anatomy specified.[49] The fact that Congress chose to include the language providing for multiple applications of an SMC rate, i.e., section 1114(k), in one part of the statute, but not in others, i.e., section 1114(p), is compelling. And VA's implementation of those varying approaches through its implementing regulations is a faithful application of the choices Congress made. When Congress drafted section 1114 and chose to include certain language in one situation but not in another, we can assume that this decision was intentional.[50] Thus, if VA or Congress intended section 1114(p) to allow for multiple applications, like section 1114(k), both the statute and implementing regulations would have been written differently. For example, with respect to half-step increases, either the statute or regulation could have used the phrase "for each such loss or losses" after the term "rate."

And we can't forget how significant section 1114(p) is because it is what provides VA with the authority to adopt § 3.350(f)(3) in the first place. VA is powerless to provide more benefits than Congress elected to authorize.[51] The language in § 3.350(f)(3) is at least clear that "entitlement to *the* next higher intermediate *rate*" will be afforded when the requirements are met.[52] This language does not conflict with the statute's language that "the Secretary may allow *the* next higher *rate* or *an* intermediate *rate*."[53] Indeed, we think this language does precisely what Congress authorized. But even if we thought that the regulation *could* be read to provide *more* than Congress authorized, we would not lightly assume that the Agency went beyond the authority Congress provided. In that regard, when a regulatory provision can be interpreted in a way that harmonizes it with the statute it implements, courts should adopt such a harmonious interpretation.[54]

---

[49] 38 C.F.R. § 3.350(a).

[50] *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("'W]here Congress includes particular language in one section of a statute but omits it in another section . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972))).

[51] Contrary to our dissenting colleague's contention, our reading of the regulation is consistent with the plain meaning of the language used by Congress in section 1114(p) to authorize only one full or one one-half step SMC rate increase. Just because "Congress could have used stricter and more narrowly tailored language," *post* at 20, does not empower us to ignore the plain meaning of the language Congress did use.

[52] 38 C.F.R. § 3.350(f)(3) (emphasis added).

[53] 38 U.S.C. § 1114(p) (emphasis added).

[54] *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 25 (1982) ("We consider first whether the [r]egulation harmonizes

Finally, to give real meaning to § 3.350(f)(4), which, recall, provides for a full-step increase, we think that subsection (f)(3) cannot practically mean that multiple half-step increases are possible. It would be odd to say that a veteran may obtain higher benefits using multiple half-steps to get a full-step increase (or, as appellant's example for his case shows, even more) under subsection (f)(3), without meeting the fairly restrictive requirements for the full-step increase under subsection (f)(4). Canons of construction require us to avoid rendering any portions of a regulation meaningless or superfluous.[55] While it may not be that appellant's interpretation of subsection (f)(3) renders subsection (f)(4) entirely meaningless, it strikes us that appellant's interpretation of subsection (f)(3) undermines subsection (f)(4) in a way that suggests appellant's interpretation is not the better of the competing conceptions the parties have advanced.

In sum, we hold that § 3.350(f)(3) can only be used once to increase a claimant's SMC rate.[56] As explained above, there are indications pointing to that interpretation even if we confined ourselves to the language of (f)(3) standing alone. In addition, Congress purposefully omitted language concerning repeated use in section 1114(p), on which (f)(3) is based, despite permitting repeated use in other sections of the statute. And, reading § 3.350(f)(3) as we do, provides purpose for its subsequent subsection (f)(4). Because we can use the tools of interpretation to assess the regulation's meaning, we need not resort to other canons of construction, including deference to the Agency's interpretation of the regulation were it "genuinely ambiguous" or the pro-veteran rule of construction from *Brown v. Gardner*.[57] Therefore, we hold that the Board did not err when it failed to consider the application of § 3.350(f)(3) more than once in its assessment of whether appellant was entitled to a higher SMC rate.

---

with the statutory language."); *Anthony v. United States*, 520 F.3d 374, 380 (5th Cir. 2008) ("[C]ourts should not interpret an agency regulation to thwart the statutory mandate it was designed to implement.").

[55] *See Splane v. West*, 216 F.3d 1058, 1068-69 (Fed. Cir. 2000) ("[C]anons of construction . . . require us to give effect to the clear language of a [regulation] and avoid rendering any portions meaningless or superfluous.").

[56] Our dissenting colleague disagrees with our holding in this regard and asserts that under § 3.350(f)(3) appellant is entitled to an SMC(n) rate. Under that logic, appellant would be eligible for at least two half-step increases in his SMC rate but no more. This is a result neither party advocated. It's not clear to us why, given our dissenting colleague's position on the meaning of § 3.350(f)(3), one would stop at two half-step increases.

[57] Our dissenting colleague spends significant time discussing how, precisely, the pro-veteran canon of construction from *Brown v. Gardner* fits into statutory and regulatory interpretation more generally. This is certainly an important issue and, as the dissent makes clear, one that deeply divided the Federal Circuit. But we express no views concerning the pro-veteran canon's place within the "order of operations" used for statutory and regulatory interpretation. Consistent with *Kisor*, we do not need to reach that question because the interpretive tools that we rely on, including, most importantly, adherence to the authorizing statute in section 1114, bears out our interpretation of § 3.350(f)(3).

*C. TDIU and § 3.350(f)(4)*

We will now briefly address appellant's two alternative arguments concerning purported Board errors. Starting with § 3.350(f)(4), appellant contends that this portion of the regulation is invalid because it excludes TDIU as a basis on which to provide a veteran with a full-step increase for SMC, and the Board, therefore, erred when it denied him an increase under § 3.350(f)(4). There are multiple levels to this argument. First, appellant asserts that the Board failed to consider the reasonably raised issue of entitlement to TDIU based on the severity of his vision, shoulder, and hip disabilities. Second, appellant maintains that the Board is required to treat a TDIU rating as a total rating per § 4.16(b). Finally, appellant contends that had the Board applied § 3.350(f)(4) properly, it would have awarded him a full-step increase based on his purported entitlement to TDIU. He requests that we find § 3.350(f)(4) invalid to the extent it excludes TDIU from consideration as basis for a full-step increase and that we remand the matter to the Board to correctly apply the law. The Court is not persuaded.

The Board must address all potentially applicable regulations that are reasonably raised by the record.[58] Entitlement to TDIU "is implicitly raised whenever a pro se veteran, who presents cogent evidence of *unemployability*, seeks to obtain a higher disability rating."[59] Thus, we have held that the Board may be required to address TDIU where there is evidence of an inability to work and the veteran is not in receipt of the maximum rating.[60] As we have explained, TDIU is not a separate claim, "but rather involves an attempt to obtain an appropriate rating for a disability or disabilities."[61]

Appellant has been in receipt of a total combined disability rating, plus SMC(k) benefits, since November 1971, on the day after he was discharged from service. There is nothing in the record to show that the issue of *unemployability* arose at any point since 1971 and appellant has not contested any of his schedular ratings for his various service-connected disabilities.[62] Although

---

[58] *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991).

[59] *Comer v. Peake*, 552 F.3d 1362, 1367 (Fed. Cir. 2009) (emphasis added). Whether TDIU was explicitly raised is not at issue here; therefore, we need not consider it. *See* Appellant's Br. at 14 (contending only that "the issue of entitlement to TDIU for a single disability was reasonably raised by the record"); *see also Pederson*, 27 Vet.App. at 281-86.

[60] *Harper v. Wilkie*, 30 Vet.App. 356, 361 (2018).

[61] *Rice v. Shinseki*, 22 Cet.App. 447, 452 (2016).

[62] *Comer*, 552 F.3d at 1366 (requiring "cogent evidence of unemployability").

there is evidence in the record to suggest that he may have difficulties with employment, that does not show that he is *unable* to engage in substantially gainful occupation as a result of his service-connected disabilities. In sum, we don't think the record supports appellant's contentions that the issue of TDIU was reasonably raised.[63]

But even if we assumed that the record somehow suggested that the Board should have considered TDIU in connection with appellant's claims seeking an increase in his SMC benefits, that would matter not at all in terms of whether we can grant appellant the *remedy* he seeks. Recall that appellant has asked us to strike § 3.350(f)(4) down to the extent it excludes TDIU as a basis on which to grant increased SMC. But appellant is not in receipt of a TDIU. That simple truth means that we cannot consider appellant's challenge to § 3.350(f)(4) because it is *entirely* predicated on the exclusion of TDIU as a basis for increased SMC, a benefit to which appellant is not (at least yet) entitled. Although the validity of a regulation is a legal question, we cannot issue advisory opinions no matter how interesting the hypothetical question presented to us may be.[64] And that is clearly what appellant is asking us to do here because, as we've said, he is not in receipt of TDIU now. So, even if we struck down the regulation, it would not assist him in obtaining a greater rate for SMC unless there were other developments. Moreover, if appellant wishes to request TDIU, he is free to do so before VA. Until VA has found appellant to be entitled to TDIU, any matters flowing from how such an entitlement might or might not affect SMC are not ripe.

*D. Extraschedular Consideration*

Section 3.321(b) currently states that "[t]o accord justice in the exceptional case where the schedular evaluation is inadequate to rate a single service-connected disability, the Director of Compensation Service or his delegate is authorized to approve" an extraschedular evaluation.[65]

---

[63] *See Hilkert v. West,* 12 Vet.App. 145, 151 (1004) (en banc), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

[64] *See Barnett v. Wilkie*, 32 Vet.App. 83, 87 (2019) (declining to address an argument because doing so "would amount to an unauthorized advisory opinion"); *Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009) (holding that "the Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion"); *see also Teva Pharm. USA, Inc. v. Novartis Pharm. Corp*., 482 F.3d 1330, 1337-38 (Fed. Cir. 2007) ("Under [the prohibition against advisory opinions] doctrine, federal courts are to decide only 'actual controversies by judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in the case before it.'" (quoting *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri,* 361 U.S. 363, 367 (1960))).

[65] 38 C.F.R. § 3.321(b) (2021). Effective January 8, 2018, VA amended 38 C.F.R. § 3.321(b). *See* 82 Fed. Reg. 57,830, 57,834.

Appellant argues that the Board erred when it failed to address whether he is entitled to an extraschedular rating under the amended—that is current—version of § 3.321(b). He asserts that "the record reasonably raised a request to refer, to the Director of Compensation and Pension Services [(Director)], [his] ratings."[66] In his reply brief, appellant explains that "there is no legal requirement that [he] do more than ask for a total rating in order to raise [the issue of] entitlement to a[n extraschedular] rating under § 3.321(b)."[67] And he contends that because he is seeking a one-step increase in SMC under § 3.350(f)(4), and that is only available for a total rating, "this necessarily requires the Board to apply § 3.321(b) to achieve a total rating."[68]

Appellant offers no real authority to support his position, either factual or legal. Most significantly, although appellant is in receipt of service connection for multiple disabilities, he does not identify *any* disability that he claims has an exceptional disability picture warranting a higher evaluation under extraschedular rating principles. In addition to this fatal lack of proof—or even allegation—appellant's argument again amounts to an invitation for us to render some type of advisory opinion. Even if we assumed that the evidence reasonably raised the issue of extraschedular consideration for *some* (unidentified) disability for *some* (unidentified) reason, appellant agrees that the matter would need to be forwarded to the director for consideration. So, there is no guarantee that appellant would be awarded an extraschedular rating for any of his disabilities and, therefore, we would not be able to assess how any extraschedular consideration might affect an enhancement of his SMC rate just as we couldn't deal with the TDIU issue discussed above. And we note in addition that appellant doesn't seriously address these significant flaws in his argument. In sum, because appellant's argument is purely speculative and severely underdeveloped, we will not address it further.[69]

In addition to his argument that the record reasonably raised the issue of an extraschedular rating, we recognize that appellant also raises substantive arguments about how the current version

---

[66] Appellant's Br. at 17. We note that appellant refers to a previous organizational structure within VA. Currently, there is a Compensation Service with the Pensions and Fiduciary Service constituting a separate entity. SEE DEP'T OF VETERANS AFFAIRS, 2020 FUNCTIONAL ORGANIZATION MANUAL, at 20 (May 15, 2020), https://www.va.gov/VA-Functional-Organization-Manual-2020-4.pdf (last visited Nov. 20, 2021).

[67] Reply Br. at 8.

[68] *Id.* at 7.

[69] A "decision advising what the law would be on an uncertain or hypothetical state of facts" is the very definition of an advisory opinion. *Aldridge v. McDonald*, 27 Vet.App. 392, 394 (2015) (quoting *Nashville, Chattanooga & St. Louis Ry. Co. v. Wallace*, 288 U.S. 249, 262 (1933)); *see also Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006).

of § 3.321(b) should be applied, as well as about the continued viability of this Court's caselaw in the extraschedular arena in light of the amendment to § 3.321(b). For the reasons we have explained, these issues are not ripe for review. So, to be clear, we express no opinion about these aspects of appellant's argument.

## IV. CONCLUSION

After consideration of the parties' briefs, oral argument, the governing law, and the record, the Court AFFIRMS the March 16, 2020, Board decision.

JAQUITH, *Judge*, concurring in part and dissenting in part: I join sections I, II, III.A, III.C, and III.D of the Court's opinion in full. And the first several paragraphs of III.B capably chronicle the principles for interpreting regulations, the context of SMC, the text of the salient subsections, and the parties' arguments. However, because I read the statute and regulation as plainly providing for two half-step increases—to the intermediate rate and, for the veteran already there, to the next higher statutory rate—I respectfully dissent from the Court's holding that only one half-step increase is available under § 3.350(f)(3), and from the Court's conclusion that the Board did not err when it failed to discuss the possibility of an additional half-step rating under § 3.350(f)(3).

### A. The Veteran's Combat Wounds and Disability Ratings

On October 23, 1970, a land mine exploded under then-Sergeant Barry while he was engaged in combat operations against hostile forces in Vietnam.[70] His wounds required an open amputation of his right leg above the knee, which was done in an evacuation hospital.[71] He also suffered extensive loss of tissue on his left leg, exposing his tibia, and fragment wounds to his right hand and left eye.[72] Sergeant Barry spent the next 13 months assigned to hospitals, until he received a disability retirement in November of 1971.[73]

A rating decision in February 1973 awarded the veteran SMC, effective November 1971, for his loss of one foot.[74] A May 2011 rating decision reflected SMC under section 1114(k),

---

[70] R. at 3298.

[71] R. at 3298, 3391.

[72] R. at 3338, 3391.

[73] R. at 3326.

[74] R. at 2808.

effective from November 1971 to November 2005 for the veteran's loss of one foot; SMC under section 1114(k) effective from July 1983 for the veteran's "loss of use of one eye having only light perception"; SMC under section 1114(m) effective from November 2005 for the veteran's loss of one leg and loss of use of his other leg; and SMC under section 1114(p) and § 3.350(f)(3), at the rate intermediate between subsection (m) and subsection (n), effective from November 2005, for the veteran's

> loss of use of both feet (claimed as muscle graft left leg & previously rated as right above knee amputation; traumatic thrombophlebitis, left leg; SFW, left leg with muscle loss MG XI; s/p left knee replacement; scar of the left calf; & scar, left leg) with additional disabilities, scar of the right flank, status-post muscle graft right latissimus dorsi muscle group II (claimed as back scar from donor site of muscle graft) independently ratable at 50 percent or more.[75, 76]

The May 2011 rating decision lists additional compensable service-connected disabilities, including the following: PTSD, rated 70% disabling; left eye injury with glaucoma, 30%; glenohumeral arthritis of the right shoulder, 30%; glenohumeral arthritis of the left shoulder, 20%; lumbosacral strain, 10%; and healed fractured fingers of the right hand, with traumatic tattooing, 10%.[77] In September 2012, the veteran sought an increase in his SMC.[78]

The most recent rating decision in the record, dated December 2014, recites the same bases for the veteran's SMC that the rating decision recited in May 2011.[79] By December 2014, the veteran's additional compensable service-connected disabilities included all those listed in 2011, with increased ratings for his glenohumeral arthritis of the right shoulder, from 30% to 60%, and for his glenohumeral arthritis of the left shoulder, from 20% to 50%.[80] And the veteran had the following additional service-connected disabilities: Left eye disfigurement, rated at 30%; defective

---

[75] R. at 1005.

[76] The Board refers only to rating decisions issued in February 2011, October 1973, and October 1975. R. at 6. The Board's action regarding the 1973 and 1975 rating decisions was affirmed by the Court in 2019. R. at 127-31. In 2018, the Board found that the February 2011 "rating decision that granted service connection for a scar of the right flank, status-post muscle graft right latissimus dorsi muscle group II and assigned an initial noncompensable rating" was not final and binding because the RO had not issued a Statement of the Case on the matter. R. at 139-40. None of the February 2011, October 1973, and October 1975 rating decisions are at issue in this appeal.

[77] R. at 1003-05.

[78] R. at 816.

[79] R. at 573.

[80] R. at 570-71.

hearing, 20%; bilateral degenerative joint disease of his hips (10% each); hypertension, 10%; and tinnitus, 10%.[81] So the veteran's constellation of compensable disabling conditions includes his above-the-knee amputation of his right leg, loss of use of his left leg, loss of use of both feet, and loss of use of one eye, for which he receives SMC, plus PTSD (70%), right shoulder arthritis (60%), left shoulder arthritis (50%), left eye injury with glaucoma (30%), left eye disfigurement (30%), defective hearing (20%), a lumbar spine injury (10%), a right hand injury (10%), left and right hip joint disease (10% each), hypertension (10%), and tinnitus (10%).

B. The Plain Meaning of 38 C.F.R. § 3.350(f)(3)

Based on these facts, the veteran argues that the plain meaning of § 3.350(f)(3) entitles him to four intermediate rate increases, to the SMC rate prescribed by section 1114(o). The Secretary contends that the one intermediate increase the veteran has received is all he is entitled to under the plain meaning of the regulation. The majority reads subsection (f)(3) the way the Secretary does but acknowledges that the plain language of § 3.350(f)(3) does not conclusively resolve the issue. The words I see in subsection (f)(3) give the veteran SMC at the section 1114(n) rate, but no higher.

As the majority notes, if the meaning of a regulation is clear from its language, "that meaning controls."[82] Section 3.350(f)(3), titled "Additional independent 50 percent disabilities," is quite specific. It describes the disabilities that warrant a higher rate of SMC: "additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more . . . [which] must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitlement" to SMC. Subsection (f)(3) also specifies the outcome: "entitlement to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. 1114, but not above the (o) rate." The subsection makes clear that the rate outcome under § 3.350(f)(3) is in addition to those under the other intermediate rate or next higher rate provisions in the regulation. And it identifies ratings that may not be utilized—those for arrested tuberculosis. What subsection (f)(3) doesn't say or suggest is what VA and the majority contend it means: that only one additional disability, or

[81] R. at 571-72.

[82] *Petitti v. McDonald*, 27 Vet.App. 415, 422-23 (2015).

combination of disabilities, rated at 50% counts. The Court should not "read into the regulation a limitation to its applicability that is simply not there."[83]

The majority also misconstrues the significance of the statutory authorization in section 1114(p). Section 1114(p) limits the SMC rate increases for service-connected disabilities that exceed the requirements for the 1114(k) prescribed rates not just to an intermediate rate, but to the next higher rate. As we have previously recognized in considering section 1114, if Congress had intended the limited effect VA and the majority read into the law, Congress could have used stricter and more narrowly tailored language.[84] The actual words of § 3.350(f)(3) limiting entitlement "to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate" dovetail with—and give effect to—the section 1114(p) language allowing "the next higher rate or an intermediate rate."

The meaning of § 3.350(f)(3) advanced by the Secretary and sanctioned by the majority apparently adds an unstated qualifier to the regulation. They see a regulation that limits a veteran with additional disabilities (otherwise uncounted in setting SMC) to entitlement "to the next higher intermediate rate or if already entitled to an intermediate rate *under the other intermediate rate provisions outlined above* to the next higher statutory rate." But the italicized words obviously are not in the regulation. "We cannot rewrite [the] text to include criteria absent from its face."[85] VA demonstrated that it knew how to differentiate increases under subsection (f)(3) from those under other subsections of § 3.350, when that was intended, saying in the very next sentence that subsection (f)(3) increases had to be based on disabilities distinct from those establishing entitlement under different statutory subsections "or the intermediate rate provisions outlined above"—apparently referring to the intermediate rate provisions in § 3.350(f)(1) and (f)(2).

The qualifying word VA actually chose to use in subsection (f)(3)—"already"—is an adverb that expresses a temporal relation. "Already" means "[b]y or before a time stated or implied."[86] So subsection (f)(3), by its terms, entitles a veteran previously entitled to an intermediate rate—as Mr. Barry was, effective November 2005 per the May 2011 rating

---

[83] *See Southall-Norman v. McDonald*, 28 Vet. App. 346, 351-52 (2016).

[84] *Payne v. Wilkie*, 31 Vet.App. 373, 385 (2019).

[85] *Langdon v. McDonough*, 1 F.4th 1008, 1011 (Fed. Cir. 2021).

[86] BALLENTINE'S LAW DICTIONARY 64 (3d ed. 1969); *see* WEBSTER'S NEW WORLD DICTIONARY, COLLEGE EDITION 42 (1968) (defining "already" as "by or before the given or implied time; previously").

decision—to the next higher statutory rate (for him, the section 1114(n) rate) if a later increase in his qualifying permanent disabilities warrants it. That issue was not addressed by the Board.

Moreover, this case shows the fallacy of the notion that subsection (f)(4) means that subsection (f)(3) must permit only one SMC intermediate step increase. Nothing about reading subsection (f)(3) to entitle a veteran with sufficient additional disabilities to a second intermediate step, thereby going to the next higher statutory rate, renders (f)(4) superfluous or meaningless. Section 3.350(f)(4) establishes entitlement to a full step up—based on an "additional single permanent disability independently ratable at 100 percent apart from any consideration of individual unemployability"—that is, to the next higher statutory rate; or if the veteran is already entitled to an intermediate rate, § 3.350(f)(4) entitles the veteran to the next higher intermediate rate. The rating for a veteran with a single permanent disability independently ratable at 100% can advance a full step immediately, so there is nothing incongruous or odd in the potential for a veteran's disability rating to advance two intermediate steps over time (to reach the next higher statutory rate) for two single permanent disabilities or combinations of permanent disabilities independently ratable at 50% or more. Mr. Barry's circumstances illustrate that point emphatically. Using common math, the 12 additional compensable disabilities listed in Mr. Barry's December 2014 rating decision total 320%! And applying the VA formula for arriving at combined ratings[87] results in a 100% rating when just his four highest rated additional disabilities are counted.

C. VA's Duty To Maximize Benefits

The majority's ratification of the Secretary's interpretation of § 3.350(f)(3) also conflicts with VA's duty to maximize benefits. "VA's duty to maximize benefits requires VA to assess all of the claimant's disabilities . . . to determine whether any combination of the disabilities establishes entitlement to special monthly compensation."[88] And VA's duty to maximize benefits requires it to resolve doubt in favor of claimants, including when determining SMC.[89] VA failed to fulfill these obligations here, instead reading restrictions into § 3.350(f)(3) that are not there—

[87] *See* 38 C.F.R. § 4.25 (2021).

[88] *Buie v. Shinseki*, 24 Vet.App. 242, 250 (2010), *as amended* (Apr. 21, 2011).

[89] *Morgan v. Wilkie*, 31 Vet.App. 162, 164, 167-68 (2019); *see* 38 C.F.R. §§ 3.103(a) (2021), 4.3 (2021).

which VA cannot do, "because, in doing so, [it] imposes a greater burden on a claimant than the law does."[90]

D. The Pro-Veteran Canon

In addition, the construction of § 3.350(f)(3) argued by VA and adopted by the majority conflicts with the longstanding pro-veteran canon—"'that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.'"[91] The Secretary argues that the pro-veteran canon does not apply because subsection (f)(3) is not ambiguous, and the majority seems to agree. But the space between the majority's assessment that the plain language of the regulation is not conclusive and the majority's ultimate indication that the regulation is not genuinely ambiguous highlights the canon's significance.

The path from inconclusive language to no genuine ambiguity is well mapped but a little slippery. Determining the plain meaning of a regulation requires the Court to "bring all its interpretative tools to bear" to "make a conscientious effort to determine, based on indicia like text, structure, history, and purpose, whether the regulation really has more than one reasonable meaning."[92] We look to the law to determine whether "there is only one reasonable construction of a regulation."[93] The canons of regulatory construction "require interpretation of words in their context with an eye to the law as a whole."[94] The context of the law as a whole seems to include the veteran's canon.[95]

In *King v. St. Vincent's Hospital*, the Supreme Court stated that it presumed that Congress understood the pro-veteran canon as a basic rule of statutory construction, and the Court applied that canon to read a provision in the veteran's favor, even if the language left its significance unsettled.[96] In *Henderson v. Shinseki*, the Supreme Court read the statute at issue in light of the veteran's canon, declaring that "[w]hile the terms and placement of [the statute] provide some

---

[90] *Ward v. Wilkie*, 31 Vet.App. 233, 240 (2019); *English v. Wilkie*, 30 Vet.App. 347, 353 (2018).

[91] *Henderson v. Shinseki*, 562 U.S. 428, 441 (2011) (quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 n.9 (1991)).

[92] *Huerta v. McDonough*, 34 Vet.App. 76, 80 (2021) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2423-24 (2019)).

[93] *Kisor*, 139 S. Ct. at 2415.

[94] *Ortiz-Valles v. McDonald*, 28 Vet.App. 65, 69 (2016).

[95] *See Henderson*, 562 U.S. at 440-42; *King*, 502 U.S. at 221 n.9; *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946).

[96] 502 U.S. at 221 n.9.

indication of Congress' intent, *what is most telling here* are the singular characteristics of the review scheme that Congress created for the adjudication of veterans' benefits claims."[97] In *Fishgold Sullivan Drydock & Repair Corp.*, the Supreme Court declared that veterans laws are "to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need," and the Court showed us how to do so—"construe the separate provisions of the [law] as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits."[98]

The slipping stems from two words in an oft cited pro-veteran canon case, *Brown v. Gardner*: "interpretive doubt."[99] In *Gardner*, the Board denied the veteran's claim for benefits under 38 U.S.C. § 1151 based on disabilities resulting from surgery in a VA facility.[100] The Board's denial rested on 38 C.F.R. § 3.358(c)(3) (1993), which interpreted the statute as only covering an injury that proximately resulted from fault by the VA or from an accident during treatment or rehabilitation.[101] Though the statute afforded compensation for injuries resulting from surgery, rather than the veteran's misconduct, and said nothing about fault by VA, the Secretary argued that a fault requirement inhered in the statutory requirement of a compensable injury.[102] In rejecting that argument based on the law's "text and reasonable inferences from it," the Supreme Court looked first to the pro-veteran canon, which it summarized as "the rule that interpretive doubt is to be resolved in the veteran's favor."[103]

In *Kisor v. Wilkie*, the Supreme Court declared that courts must exhaust all the traditional tools of construction before concluding that a rule is genuinely ambiguous, but the Court did not address whether the pro-veteran canon is part of that toolkit.[104] On remand, the Federal Circuit

---

[97] 562 U.S. at 440-42 (emphasis supplied).

[98] 328 U.S. at 285.

[99] 513 U.S. 115, 118 (1994).

[100] *Id.* at 116-17.

[101] *Id.*

[102] *Id.* at 117.

[103] *Id.* at 117-18. *See* Chadwick J. Harper, *Give Veterans the Benefit of the Doubt:* Chevron*,* Auer*, and the Veteran's Canon*, 42 HARV. J.L. & PUB. POL'Y 931, 958-59, 961 (2019) ("The language and logic of [*Gardner*] suggest that courts should apply the veteran's canon before turning to deference doctrines," and "*Gardner*'s suggested order of operations" is one reason "the veteran's canon should be recognized as a traditional tool of interpretation.").

[104] 139 S. Ct. at 2415.

filled the breach, declaring: "Under [*Gardner*] . . . the canon does not apply unless 'interpretive doubt' is present," a precondition which "is not satisfied where a sole reasonable meaning is identified through the use of ordinary textual analysis tools, before consideration of the pro-veteran canon."[105] On that basis, the Federal Circuit determined that the canon did not apply because the regulatory text at issue had only one reasonable meaning.[106] The conclusion in *Kisor IV* that the disputed term was not ambiguous[107]was the opposite of its prior holding—which did not cite *Gardner* or mention the pro-veteran canon. [108]

The dissent in *Kisor v. McDonough* (*Kisor IV*) disagreed that interpretive doubt "must be established before the pro-veteran canon can be applied."[109] Judge Reyna declared:

> Fundamentally, when a veterans' benefit provision is ambiguous on its face, the pro-veteran canon must be weighed alongside the other traditional tools in resolving interpretive doubt, including whether interpretative doubt exists. Neither the Supreme Court's decision in this case, nor this court's precedent, supports the majority's assumption that interpretive doubt is to be determined before resort to the pro-veteran canon may be had. To the contrary, the pro-veteran canon is a traditional tool of construction. It requires that we discern the purpose of a veterans' benefit provision in the context of the veterans' benefit scheme as a whole and ensure that the construction effectuates, rather than frustrates, that remedial purpose: that benefits that by law belong to the veteran go to the veteran.[110]

The debate continued when the Federal Circuit denied the veteran's petition for en banc review.[111] A concurrence concluded that *Gardner* made interpretive doubt "a precondition for applying the canon," and "the hierarchy of interpretive tools" means courts "should consider the pro-veteran canon only if, after exhausting all applicable descriptive tools in search of the provision's best meaning, a range of plausible interpretations remains, none of them fairly described as the best."[112] A dissenter's response included the following:

---

[105] *Kisor v. McDonough*, 995 F.3d 1316, 1325-26 (Fed.Cir. 2021) (*Kisor IV*) (quoting *Gardner*, 513 U.S. at 117-18), *cert. denied*, No. 21-465, 2022 WL 89296 (U.S. Jan. 10, 2022).

[106] *Id.* at 1326.

[107] *Id*. at 1319.

[108] *Kisor v. Shulkin*, 869 F.3d 1360 (Fed. Cir. 2017) (*Kisor I*), *vacated and remanded sub nom. Kisor v. Wilkie*, 139 S. Ct. 2400 (2019).

[109] *Kisor IV*, 995 F.3d at 1327 (Reyna, J., dissenting).

[110] *Id*.

[111] *Kisor v. McDonough*, 995 F.3d 1347 (Fed. Cir. 2021) (per curiam order) (*Kisor V*).

[112] *Id.* at 1354-59 (Prost, C.J., concurring).

> The pro-veteran canon of construction is not meant to be an afterthought. It is a tool in the interpretive toolkit that aids in gleaning congressional intent where the plain text of the statute or regulation does not clearly answer the question at hand. . . . The majority . . . cites only *Brown v. Gardner* for its decision to remove the pro-veteran canon—and apparently numerous other canons—from the interpretive toolkit it employs. But [*Gardner*] does not hold that the pro-veteran canon is only an after the fact inquiry. . . [a]nd, it does not say that the pro-veteran canon is anything other than an interpretive canon. . . . The panel majority's latest approach is inconsistent with multiple Supreme Court cases which discuss the pro-veteran canon and treat it as one of the many canons of construction to be collectively employed when interpreting veterans benefit provisions. . . . [W]hen reviewing an agency's interpretation of a statute or regulation (as is the case here), the Supreme Court has made clear that we are to apply all tools of statutory construction to glean congressional intent. Where differing plausible, reasonable interpretations of the terms of a regulation are possible, Congress has spoken: it wants veterans' benefits to be administered in a "pro-claimant" manner.[113]

And Judge Reyna added: "[*Kisor IV*] means that the pro-veteran canon comes into play at the bottom of the ninth inning, after three outs have been made, and as the players head to their respective dugouts. But by then, it's game over."[114]

Of course, we cannot decide whether *Gardner* bears the weight *Kisor IV* gives it (by *Gardner's* terms and in light of *Henderson*, *King*, and *Fishgold*), and we need not try to do so to resolve this case—because the situation here fits nicely within *Gardner*, whether read through the lens of the majority or the dissenter in *Kisor IV*, or those of the concurrences or dissents in *Kisor v. McDonough* (*Kisor V*). At most, the Secretary has shown the existence of ambiguity in the text and meaning of 38 C.F.R. § 3.350(f)(3), and the pro-veteran canon mandates that such interpretive doubt be resolved in the veteran's favor.[115]

E. Deference to the Secretary's Interpretation of § 3.350(f)(3)

At oral argument, in response to direct questions by the Court, the Secretary contended—for the first time—that if § 3.350(f)(3) was deemed ambiguous, VA's consistent approach and interpretation that only one half-step increase is permitted should be given deference. As support, the Secretary pointed only to VA's *Adjudicative Procedures Manual* (M21-1). But deference is not warranted under these circumstances. The Court generally won't entertain contentions raised for

[113] *Id*. at 1366 (O'Malley, J., dissenting).

[114] *Id*. at 1376.

[115] *See Gardner*, 513 U.S. at 118; *Osman v. Peake*, 22 Vet.App. 252, 256 (2008).

the first time by counsel at oral argument.[116] The M21-1 provision was never cited or discussed—by the parties, the regional office, or the Board—so there is no indication that it was the basis of the denial of the veteran's request for SMC at a higher rate.[117]

The pertinent M21-1 section states: "Apply the provisions of 38 CFR 3.350(f)(3) or 38 CFR 3.350(f)(4), whichever is appropriate, only once in a rating decision."[118] Then the section emphasizes that "[c]oncurrent entitlement to SMC under both 38 CFR 3.350(f)(3) and 38 CFR 3.350(f)(4) is prohibited."[119] If we entertain the Secretary's belated and underdeveloped argument, we should hold that neither manual provision merits deference. Interpretations according to agency manuals lack the force of law and do not warrant deference.[120] The Board is not bound by the M21-1, so the Court will not defer to it.[121] And deference is especially inappropriate where, as here, the manual adds a limitation to the applicability of a regulation.[122]

The manual's statement regarding the interplay of subsections (f)(3) and (f)(4) has no direct application to Mr. Barry, but it bears on the majority's stated belief that two steps under subsection (f)(3) cannot be harmonized with subsection (f)(4) and the Secretary's contention at oral argument that a veteran could not receive SMC under both subsections. That contention does not square with the subsection itself. Subsection (f)(4) specifies that its whole step increase is "[i]n addition to . . . the intermediate or next higher rate provisions outlined above," which include subsection (f)(3). The manual's directions do not deserve deference because they are not reasonable interpretations of the regulation.[123] Moreover, as previously indicated, to the extent the regulation permits a reading that would entitle the veteran to the next higher statutory rate of SMC for his constellation of additional permanent disabilities, the pro-veteran canon requires the more expansive reading.[124]

---

[116] *Ray v. Wilkie*, 31 Vet.App. 58, 69-70 (2019); *Overton v. Wilkie*, 30 Vet.App. 257, 265 (2018).

[117] *Ray*, 31 Vet.App. at 69-70; *Overton*, 30 Vet.App. at 265.

[118] *See* VA ADJUDICATIONS PROCEDURES MANUAL M21-1, pt. VIII, subpt. iv, ch. 4, § A.6.a., http://www.knowva.ebenefits.va.gov (last visited Jan. 17, 2022).

[119] *Id.* at § A.6.b.

[120] *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000).

[121] *Ray*, 31 Vet.App. at 70.

[122] *See Lyles v. Shulkin*, 29 Vet.App. 107, 115-16 (2017).

[123] *See Kisor*, 139 S. Ct. at 2416.

[124] *See Sharp v. Shinseki*, 23 Vet.App. 267, 275-76 (2009).

When "the Secretary's interpretation is unfavorable to veterans, such that it conflicts with the beneficence underpinning VA's veterans benefits scheme, and a more liberal construction is available that affords a harmonious interplay between provisions," the more liberal construction prevails.[125]

Furthermore, VA should not be allowed to institute, via its procedures manual, more restrictions on veterans benefits than it proposed and adopted through notice and comment rulemaking.[126] Deference is unwarranted under the circumstances presented in this case because such deference would permit VA, under the guise of interpreting § 3.350(f)(3), "to create de facto a new regulation."[127]

F. Conclusion

The veteran was already receiving SMC at the intermediate rate between section 1114(m) and 1114(n), so his increasingly extensive disabilities entitle him to the full measure of SMC that section 1114(p) and § 3.350(f)(3) authorize: the next higher statutory rate—the rate payable under section 1114(n). The plain meaning of the statute and regulation therefore require reversal of the Board's denial of entitlement at the 1114(n) rate. To the extent the plain language of the law is not conclusive, the plain meaning is unsettled or ambiguous, there is interpretive doubt, or there is more than one reasonable interpretation, the pro-veteran canon also requires reversal.

For the foregoing reasons, I respectfully dissent from the majority's affirmance of the Board's denial of the veteran's entitlement to SMC at the 1114(n) rate.

---

[125] *See Trafter v. Shinseki*, 26 Vet.App. 267, 272 (2013).

[126] *See Bailey v. Wilkie*, 33 Vet.App. 188, 203 (2021); *Murillo v. Brown*, 10 Vet.App. 108, 110 (1997).

[127] *See Kisor*, 139 S. Ct. at 2415 (quoting *Christensen*, 529 U.S. at 588).

*Not Published*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

NO: 20-3367

DANIEL D. BARRY, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

**JUDGMENT**

The Court has issued a decision in this case. The time allowed for motions under Rule 35 of the Court's Rules of Practice and Procedure has expired.

Under Rule 36, judgment is entered and effective this date.

Dated: February 25, 2022

FOR THE COURT:

GREGORY O. BLOCK
Clerk of the Court

By: /s/ Kelly Saah
Deputy Clerk

Copies to:

Kenneth H. Dojaquez, Esq.

VA General Counsel (027)

## CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this brief contains 9373 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Jingyuan Luo*
Jingyuan Luo
*Counsel for Appellant*