No. 2022-1747

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

DANIEL D. BARRY,
Claimant-Appellant,

v.

DENIS MCDONOUGH, Secretary of Veterans Affairs,
Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims
Case No. 20-3367, Judge Michael P. Allen, Judge Joseph L. Falvey,
and Judge Grant C. Jaquith

**BRIEF FOR RESPONDENT-APPELLEE**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

MARTIN F. HOCKEY, JR.
Deputy Director

SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch
Department of Justice, Civil Division
P.O. Box 480
Washington, DC 20044
Telephone: (202) 305-7568
Sosun.Bae@usdoj.gov
Attorneys for the Respondent-Appellee

Of Counsel:

BRIAN D. GRIFFIN
Deputy Chief Counsel

ANDREW J. STEINBERG
Staff Attorney
Department of Veterans Affairs
810 Vermont Avenue NW
Washington, DC 20420

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

STATEMENT OF RELATED CASES ..... vii

STATEMENT OF THE ISSUE ..... 1

STATEMENT OF THE CASE ..... 1

I. Nature Of The Case ..... 1

II. Statement Of Facts And Course Of Proceedings Below ..... 2

A. The Statutory And Regulatory Scheme For SMC ..... 2

B. Mr. Barry's Injuries And Board Proceedings ..... 5

C. The Veterans Court Agrees With VA That 38 C.F.R. § 3.350(f)(3) Only Provides For A Single Half-Step Increase ..... 7

SUMMARY OF THE ARGUMENT ..... 11

ARGUMENT ..... 12

I. Standard Of Review ..... 12

II. Framework For Regulatory Construction ..... 13

III. The Veterans Court Correctly Concluded That 38 C.F.R. § 3.350(f)(3) Does Not Entitle A Veteran To More Than One Half-Step Increase ..... 14

A. Principles Of Regulatory Construction Dictate An Outcome In Favor Of Affirmance ..... 14

1. The Plain Language Of The Regulation Supports VA's Interpretation........................................................14

2. An Intrastatutory Comparison Demonstrates That VA's Regulation Correctly Implements The Statute.............20

3. Mr. Barry's Interpretation Of Subsection (f)(3) Undermines Subsection (f)(4), While VA's Interpretation Does Not ............................................................24

4. Legislative And Regulatory History Do Not Favor Mr. Barry's Interpretation ............................................25

B. The Veterans Court Properly Declined To Consider The Veterans Canon ............................................................29

1. The Veterans Canon Does Not Apply Here ................29

2. Even If The Court Finds Genuine Ambiguity, The Veterans Canon Does Not Automatically Invalidate The Regulation ..........................................................32

C. Mr. Barry Cannot Establish That The Duty To Maximize Applies In The Context Of Statutory Or Regulatory Interpretation................................................................35

CONCLUSION.........................................................................36

# TABLE OF AUTHORITIES

## CASES

*AB v. Brown*,
6 Vet. App. 35 (1993) ........................................ 36

*Auer v. Robbins*,
519 U.S. 452 (1997) ........................................ 34

*Bailey v. Dart Container Corp. of Michigan*,
292 F.3d 1360 (Fed. Cir. 2002) ........................................ 14

*Barry v. McDonough, Secretary of Veterans Affairs*,
35 Vet. App. 111 (2022) ........................................ 1

*Bremiser v. Shinseki*,
25 Vet. App. 64 (2011) ........................................ 3

*Goodman v. Shulkin*,
870 F.3d 1383 (Fed. Cir. 2017) ........................................ 13

*Guillory v. Shinseki*,
603 F.3d 981 (Fed. Cir. 2010) ........................................ 2

*Hanser v. McDonough*,
56 F.4th 967 (Fed. Cir. 2022) ........................................ 36

*Heino v. Shinseki*,
683 F.3d 1372 (Fed. Cir. 2012) ........................................ 31

*Hyundai Steel Co. v. United States*,
19 F.4th 1346 (Fed. Cir. 2021) ........................................ 22

*Johnson v. McDonald*,
762 F.3d 1362 (Fed. Cir. 2014) ........................................ 23

*King v. St. Vincent's Hosp.*,
502 U.S. 215 (1991) ........................................ 15

*Kisor v. McDonough*,
995 F.3d 1316 (Fed. Cir. 2021) ........................................................ 29, 31

*Kisor v. McDonough*,
995 F.3d 1347 ........................................................ 30, 32, 33, 34

*Kisor v. Wilkie*,
139 S. Ct. 2400 ........................................................ 13, 31

*Morgan v. Wilkie,*
31 Vet. App. 162 (2019) ........................................................ 36

*Nielson v. Shinseki*,
607 F.3d 802 (Fed. Cir. 2010) ........................................................ 30, 31, 33

*Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*,
345 F.3d 1334 (Fed. Cir. 2003) ........................................................ 30

*Preminger v. Sec'y of Veterans Affairs*,
517 F.3d 1299 (Fed. Cir. 2008) ........................................................ 30

*Roberto v. Dep't of Navy*,
440 F.3d 1341 (Fed. Cir. 2006) ........................................................ 13, 14

*Roberts v. United States*,
745 F.3d 1158 (Fed. Cir. 2014) ........................................................ 14

*Roby v. McDonough*,
No. 2020-1088, 2021 WL 3378834 (Fed. Cir. Aug. 4, 2021) .................... 29, 31

*Russello v. United States*,
464 U.S. 16 (1983) ........................................................ 15, 22

*Sears v. Principi*,
349 F.3d 1326 (Fed. Cir. 2003) ........................................................ 33, 34

*Smith v. Nicholson*,
451 F.3d 1344 (Fed. Cir. 2006) ........................................................ 34

*Smith v. Shinseki*,
647 F.3d 1380 (Fed. Cir. 2011) .......... 34

*Timex V.I. v. United States*,
157 F.3d 879 (Fed. Cir. 1998) .......... 25

*Wanless v. Shinseki*,
618 F.3d 1333 (Fed. Cir. 2010) .......... 12

*Williams v. Shinseki*,
534 F. App'x 997 (Fed. Cir. 2013) .......... 12

**STATUTES**

38 U.S.C. § 1114 .......... *passim*

38 U.S.C. § 1155 .......... 2

38 U.S.C. § 7292 .......... 12, 13

**REGULATIONS**

38 C.F.R. § 3.103(a) .......... 36

38 C.F.R. § 3.126 .......... 28

38 C.F.R. § 3.236 .......... 28

38 C.F.R. § 3.321 .......... 2, 8

38 C.F.R. § 3.350 .......... *passim*

38 C.F.R. § 35.011(b)(16) .......... 27, 28

38 C.F.R. § 35.012(b)(16) .......... 27, 28

38 C.F.R. § 4.25 .......... 25

**LEGISLATIVE HISTORY**

S. Rep. No. 79-549 (1945), H.R. Rep. No. 79-934 (1945) .......... 26, 27

House Journal, 79th Congress, 1st Session, 10924-571 (1945)............................27

**FEDERAL REGISTER NOTICES**

12 Fed. Reg. 1,595 (Mar. 8, 1947)...............................................................28

14 Fed. Reg. 1,561 (Feb. 24, 1961)...............................................................28

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5, respondent-appellee's counsel states that she is unaware of any other appeal in or from this action that previously was before this court or any other appellate court under the same or similar title. Counsel is also unaware of any case pending in this or any other court that may directly affect or be affected by the Court's decision in this appeal.

No. 2022-1747

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

DANIEL D. BARRY,
Claimant-Appellant,

v.

DENIS MCDONOUGH, Secretary of Veterans Affairs,
Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims
Case No. 20-3367, Judge Michael P. Allen, Judge Joseph L. Falvey,
and Judge Grant C. Jaquith

# BRIEF FOR RESPONDENT-APPELLEE

## STATEMENT OF THE ISSUE

Whether the United States Court of Appeals for Veterans Claims (Veterans Court) correctly held that 38 C.F.R. § 3.350(f)(3) entitles a claimant to receive a single half-step rating increase in special monthly compensation (SMC) benefits.

## STATEMENT OF THE CASE

### I. Nature Of The Case

Claimant-appellant Daniel D. Barry appeals the Veterans Court's decision in *Barry v. McDonough, Secretary of Veterans Affairs*, 35 Vet. App. 111 (2022), in

which the court held, *inter alia*,[1] that 38 C.F.R. § 3.350(f)(3), the regulation which governs SMC ratings and allows an intermediate, or "half-step," increase in SMC rate for certain types of disabilities, only provides for one such increase, rather than multiple increases up to the maximum payable rate for SMC. Appx1-18.

## II. Statement Of Facts And Course Of Proceedings Below

### A. The Statutory And Regulatory Scheme For SMC

VA generally compensates veterans for service-connected disabilities by applying its Schedule for Rating Disabilities, which reflects reduction in earning capacity stemming from specific injuries or combinations of injuries. Appx1; *see also* 38 U.S.C. § 1155; 38 C.F.R. § 3.321(a). However, for various types of injuries, namely anatomical losses or certain levels of impairment due solely to service-connected disabilities, Congress has authorized VA to provide an additional level of compensation *over and above* the basic levels of compensation payable based on disability ratings. Appx1; *Guillory v. Shinseki*, 603 F.3d 981, 983 (Fed. Cir. 2010); M21-1 Adjudication Procedures Manual, Part VIII, Subpart iv, Chapter 4, Section A – Special Monthly Compensation (SMC), *available at* https://www.knowva.ebenefits.va.gov/system/templates/selfservice/va_ssnew/help/

[1] As Mr. Barry acknowledges, the Veterans Court also rendered an opinion on certain issues related to 38 C.F.R. § 3.350(f)(4) and 38 C.F.R. § 3.321(b) that are not the subject of the present appeal. *See* Barry Br. at 11 n.1.

customer/locale/en-US/portal/554400000001018/content/554400000177480/M21-1-Part-VIII-Subpart-iv-Chapter-4-Section-A-Special-Monthly-Compensation-SMC (M21-1 Manual). This level of compensation is known as special monthly compensation, or SMC. SMC is available when a veteran's service-connected disabilities cause "additional hardships above and beyond those contemplated by VA's schedule for rating disabilities." Appx10 (quoting *Bremiser v. Shinseki*, 25 Vet. App. 64, 68 (2011)).

The SMC rates veterans are entitled to depend on the nature and severity of the disabilities, and are set forth in 38 U.S.C. § 1114(k)-(o). *Id.* Basic levels of SMC are listed in section 1114(k), which provides for additional compensation associated with specifically enumerated forms of anatomical loss or loss of use. *Id.*; 38 U.S.C. § 1114(k). Subsections (l) through (o) provide for progressively higher SMC rates based on specific, increased levels of disability, and may be combined with the rate prescribed in subsection (k) (subject to a statutory cap of $4,667). Appx10; 38 U.S.C. § 1114(k)-(o).[2]

If a veteran is entitled to an SMC rate pursuant to subsections (l) through (n), and also has additional service-connected disabilities exceeding the requirements for that subsection that are not otherwise captured by another SMC rate, the first

[2] Levels of SMC are also provided in subsections (r), (s), and (t), but are not relevant to this appeal.

sentence of subsection (p) allows VA, at its discretion, to provide "the next higher rate or an intermediate rate," *i.e.*, a "full step" or "half step." *Id.*; 38 U.S.C. § 1114(p).[3]

A VA regulation, 38 C.F.R. § 3.350, implements 38 U.S.C. § 1114; as relevant to this appeal, section 3.350(f)(3) (which specifically implements the first sentence of section 1114(p)) provides for a half-step increase and states:

> In addition to the statutory rates payable under 38 U.S.C. 1114 (l) through (n) and the intermediate or next higher rate provisions outlined above, ***additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more will afford entitlement to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. 1114, but not above the (o) rate***. In the application of this subparagraph the disability or disabilities independently ratable at 50 percent or more must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitlement under 38 U.S.C. [§] 1114 (l) through (n) or the intermediate rate provisions outlined above. The graduated ratings for arrested tuberculosis will not be utilized in this connection, but the permanent residuals of tuberculosis may be utilized.

[3] The remainder of subsection (p) provides for mandatory increases to the rates proscribed in subsections (l) through (n) for certain combinations of disabilities, to which VA may add a further increase under the first sentence of subsection (p), subject to the subsection (o) rate cap.

38 C.F.R. § 3.350(f)(3) (emphasis added).[4] VA interprets this regulation as allowing for a single half-step increase, irrespective of how many additional single service-connected disabilities or combination of service-connected disabilities are independently ratable at 50 percent or higher. Appx11; *see also* M21-1 Manual at VIII.iv.4.A.6.a ("Apply the provisions of 38 C.F.R. 3.350(f)(3) or 38 C.F.R. 3.350(f)(4), whichever is appropriate, only once in a rating decision. ***Important***: Concurrent entitlement to SMC under both 38 C.F.R. 3.350(f)(3) and 38 C.F.R. 3.350(f)(4) is prohibited.") (emphasis in original).

## B. Mr. Barry's Injuries And Board Proceedings

Mr. Barry served in the United States Army from 1969 to 1971. Appx1. In 1971, he encountered a land mine, which exploded and led to an above-the-knee amputation of his right leg. Appx1-2. Mr. Barry also suffered additional injuries

[4] Section 3.350(f)(4), which is not the subject of appeal, but which also implements the first sentence of subsection 1114(p) and contains relevant context, states, in part:

> In addition to the statutory rates payable under 38 U.S.C. [§] 1114 (l) through (n) and the intermediate or next higher rate provisions outlined above additional single permanent disability independently ratable at 100 percent apart from any consideration of individual unemployability will afford entitlement to the next higher statutory rate under 38 U.S.C. 1114 or if already entitled to an intermediate rate to the next higher intermediate rate, but in no event higher than the rate for (o).

> Sections 3.350(f)(1), (2), and (5) implement the mandatory rates specified in the portion of 38 U.S.C. § 1114(p) following the first sentence.

to his left leg, right hand, and left eye. Appx18. Mr. Barry currently receives SMC benefits under § 1114(k) and (m) for the loss of use of both legs at a level preventing natural knee action, the loss of use of both feet, and the loss of use of one eye. Appx2. He also receives SMC benefits pursuant to 38 U.S.C. § 1114(p) and 38 C.F.R. § 3.350(f)(3), which increases his rate under 1114(m) to an intermediate rate between the rates specified in section 1114(m) and section 1114(n). Appx2-3.

Mr. Barry's SMC benefits enhance his level of compensation for having been awarded a 100 percent schedular rating for his combined, service-connected disabilities, including service connection for PTSD at a 70 percent rating, a right shoulder condition at a 60 percent rating, a left shoulder condition at a 50 percent rating, a left eye disability at a 30 percent rating, a right hand injury at a 10 percent rating, left and right hip disabilities at 10 percent ratings each, hypertension at a 10 percent rating, and tinnitus at a 10 percent rating. *Id.* In total, Mr. Barry is compensated for a combined 100 percent disability rating, which is boosted by his SMC benefits.[5] Appx2, Appx109-112.

---

[5] Mr. Barry asserts that he is uncompensated for the disabilities for which he does not currently receive SMC. *See*, *e.g.*, Barry Br. at 9. This is not accurate, as he is compensated under the VA Schedule with a 100 percent disability rating for his combined disabilities, which is enhanced by the SMC benefits he already receives.

Mr. Barry sought an increase in SMC benefits to the rate payable under section 1114(n), which was denied by the regional office and then appealed to the Board of Veterans' Appeals (board). Appx3, Appx81. The board ruled against Mr. Barry on his claim for entitlement to SMC at the rate payable under section 1114(n). Appx69. Mr. Barry then appealed to the Veterans Court, which remanded back to the board to consider certain exceptions under 38 C.F.R. § 3.350(f)(4).[6] Appx3.

In 2020, the board concluded again that Mr. Barry was not entitled to SMC benefits at the section 1114(n) rate. Appx36-41. It found that Mr. Barry already received an intermediate rate increase under 38 C.F.R. § 3.350(f)(3), and that an exception set forth in section 3.350(f)(4) was not available to him. Appx3. Mr. Barry appealed the board decision to the Veterans Court. Appx30.

### C. The Veterans Court Agrees With VA That 38 C.F.R. § 3.350(f)(3) Only Provides For A Single Half-Step Increase

On February 3, 2022, the Veterans Court issued a decision in which it held that 38 C.F.R. § 3.350(f)(3) entitles a veteran to receive only one half-step rating increase in SMC benefits, not multiple increases subject only to the maximum SMC cap. Appx2. Accordingly, the court found that the board did not err when it

[6] It appears that Mr. Barry did not claim entitlement to an increased SMC rating pursuant to section 3.350(f)(3) until his second appeal to the Veterans Court; the administrative proceedings focused instead on subsection (f)(4). Appx3.

did not discuss the possibility of entitlement to additional half-step ratings under section 3.350(f)(3).

First, the court acknowledged that both Mr. Barry and VA contended that the language of the regulation unambiguously supported their divergent positions. Appx3-5.[7] The court also considered whether it should even address Mr. Barry's arguments, given he did not raise them to the board. Appx5. It determined to do so, noting that the section 3.350(f)(3) issue required it to make a purely legal determination and that Mr. Barry was represented by a non-attorney before the board. Appx8-9.

The court then turned to the proper construction of section 3.350(f)(3), finding first that the plain language of the regulation indicates that it does not provide for multiple half-step increases because subsection (f)(3) uses the phrase "additional single permanent disability ***or*** combinations of permanent disabilities independently ratable at 50 percent or more" (emphasis in Veterans Court decision) and the use of the word "or" suggests a choice of one thing or another. Appx12. The court also stated that the phrase "entitlement to ***the*** next higher intermediate ***rate***," particularly the employment of the term "the" in conjunction

[7] As noted above, the Veterans Court also discussed Mr. Barry's arguments that section 3.350(f)(4) is invalid and that the board should have considered entitlement pursuant to section 3.321(b). Appx4, Appx15-17. Because these issues are not the subject of this appeal, we omit discussion of them.

with the singular "rate," favored the VA's interpretation. *Id.* (emphasis in Veterans Court decision).

Despite finding the plain language supported the VA's interpretation of the regulation as permitting a single half-step increase, the Veterans Court stated that the regulatory language, standing alone, did not clearly answer the question. *Id.* But, rather than "waving the ambiguity flag," the court held that the interpretive tools of statutory and regulatory construction demonstrated that section 3.350(f)(3) permits only one half-step increase. *Id.*

In employing its interpretive toolkit, the court first looked to the language of the governing statute, observing that 38 U.S.C. § 1114(p) states that "the Secretary may allow ***the*** next higher ***rate*** or ***an*** intermediate ***rate***," which shows that only a singular rate would be provided to the veteran. *Id.* The court also noted that a different subsection of the statute, subsection (k), provides that "the rate of compensation therefor shall be [X amount] for ***each such loss***[,]" and that the fact that Congress chose to include language explicitly providing for multiple SMC increases in subsection (k), but not subsection (p), was compelling. Appx12-13.

The court then remarked that section 1114 provides VA with the authority to issue the regulation, and stated that VA's implementation of the differing approaches to subsections (k) and (p) constituted a faithful application of Congress's choices. Appx13. The court declared that the regulatory language

does precisely what Congress authorized and that, assuming the regulation could even be read to provide more than what Congress intended by statute, it would not lightly presume that VA went beyond what Congress meant to authorize. *Id.*

Finally, the court held that, in order to give real meaning to section 3.350(f)(4) (which provides for a full-step increase), section 3.350(f)(3) cannot mean that multiple half-step increases are possible. Appx14. The court stated that "[i]t would be odd to say that a veteran may obtain higher benefits using multiple half-steps to get a full-step increase . . . under subsection (f)(3), without meeting the fairly restrictive requirements for the full-step increase under subsection (f)(4)." *Id.* Because the court could ascertain the regulation's meaning through tools of regulatory interpretation, it did not make a finding of ambiguity; the court thus declined to consider deference to VA's interpretation or the veterans canon, as those canons only apply when a regulation is genuinely ambiguous. *Id.*

Judge Jaquith dissented in part, disagreeing with the majority that only one half-step increase is available under section 3.350(f)(3). Appx18. In doing so, he relied heavily on the veterans canon, stating that interpretive doubt should be resolved in the veteran's favor because, at most, VA could show "the existence of ambiguity in the text and meaning of 38 C.F.R. § 3.350(f)(3)[.]" Appx23-26. The dissent also found that the majority's decision conflicted with VA's duty to maximize benefits, which it believed required VA to resolve doubt in favor of

claimants. Appx22-23. Finally, the dissent found deference to VA's interpretation of the regulation unwarranted, particularly in light of the veterans canon. Appx27-28.

The Veterans Court entered judgment on February 25, 2022. Appx29. Mr. Barry appealed to this Court.

## SUMMARY OF THE ARGUMENT

This Court should affirm because, as the Veterans Court held, 38 C.F.R. § 3.350(f)(3) does not entitle a veteran to more than one half-step increase. Both the plain language of the regulation, as well as principles of regulatory interpretation (which mirror those of statutory interpretation), dictate such an outcome. In particular, a comparison between different parts of the governing statute, 38 U.S.C. § 1114, demonstrates Congress's intention to limit the increase called for by the first sentence of section 1114(p). And, while Mr. Barry claims that legislative history favors his interpretation of the regulation, an inspection of the statements he cites demonstrates that this is not so.

The Veterans Court also correctly declined to consider the veterans canon when making its determination with regard to 38 C.F.R. § 3.350(f)(3) because that canon could only apply when the regulation is found to ambiguous, and, as stated above, the Veterans Court did ***not*** find the regulation ambiguous.

Finally, Mr. Barry has not demonstrated that VA's duty to maximize even applies in the context of statutory or regulatory interpretation, and existing case law and the language of the relevant regulation shows that the duty is not intended to apply in such a context.

## ARGUMENT

### I. Standard Of Review

"This [C]ourt's jurisdiction to review decisions by the Veterans Court is limited." *Wanless v. Shinseki*, 618 F.3d 1333, 1336 (Fed. Cir. 2010). Pursuant to 38 U.S.C. § 7292(a), this Court may review a Veterans Court decision "with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation . . . or any interpretation thereof . . . that was relied on by the Court in making the decision." *Williams v. Shinseki*, 534 F. App'x 997, 998 (Fed. Cir. 2013) (quoting 38 U.S.C. § 7292(a)).

In reviewing a Veterans Court decision, this Court must decide "all relevant questions of law, including interpreting constitutional and statutory provisions," and set aside any interpretation thereof "other than a determination as to a factual matter" relied upon by the Veterans Court that it finds to be: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of

statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law." 38 U.S.C. § 7292(d)(1).

## II. Framework For Regulatory Construction

When interpreting agency regulations, it is well established that the rules of statutory construction should apply. *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017). When interpreting a regulation, "it is appropriate first to examine the regulatory language itself to determine its plain meaning." *Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006). If the regulatory language is clear, the inquiry ends. *Id.*

As the Veterans Court noted in its decision, "a court cannot wave the ambiguity flag just because it found the regulation impenetrable on first read." Appx9 (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415) (*Kisor I*). Instead, a court must "bring all its interpretive tools to bear" and "make a conscientious effort to determine, based on indicia like text, structure, history, and purpose, whether the regulation really has more than one reasonable meaning." *Kisor I*, 139 S. Ct. at 2423-24. Indeed, a regulation should not be declared ambiguous simply because both parties insist that the plain meaning supports their position and neither party's interpretation strikes a court as unreasonable. Appx10 (citing *Kisor I*, 139 S. Ct. at 2423).

## III. The Veterans Court Correctly Concluded That 38 C.F.R. § 3.350(f)(3) Does Not Entitle A Veteran To More Than One Half-Step Increase

### A. Principles Of Regulatory Construction Dictate An Outcome In Favor Of Affirmance

As the Veterans Court held, the plain language of section 3.350(f)(3), along with the text and structure of the rest of the regulation and the governing statute, demonstrates that the regulation unambiguously provides for only a single half-step increase for veterans. Mr. Barry's arguments do not establish otherwise.

#### 1. The Plain Language Of The Regulation Supports VA's Interpretation

As stated above, an examination of a regulation begins with its plain language, and if the regulatory language is clear, the inquiry ends. *Roberto*, 440 F.3d at 1350. Here, more than one part of the plain language of the regulation demonstrates that it unambiguously provides for only one half-step increase.[8]

As the Veterans Court discussed, section 3.35(f)(3) employs the phrase "additional single disability ***or*** combinations of permanent disabilities independently ratable at 50 percent ***or more***." (emphasis added). This caveat,

[8] Although the Veterans Court decided that the plain language of subsection (f)(3), read in isolation, did not definitively resolve the meaning of the regulation, we believe that the plain language is sufficient to support VA's interpretation, without further analysis. In accordance with this Court's decision in *Roberts v. United States*, 745 F.3d 1158, 1160 n.1 (Fed. Cir. 2014), we submit that this Court can affirm the Veterans Court's decision on alternate grounds. *See also Bailey v. Dart Container Corp. of Michigan*, 292 F.3d 1360, 1362 (Fed. Cir. 2002).

which does not allow for additional half-step increases for an unspecified number of disabilities rated at 50 percent, indicates that subsection (f)(3) already contemplates that a veteran may have multiple or additional disabilities ratable at 50 percent or higher, but still only allows one half-step increase. Put another way, and as VA stated below, "the plain language of the regulation does not suggest that each time there is a disability rated at 50 [percent] that [Mr. Barry] could receive another intermediate or next higher rate." Appx230.

Moreover, if VA had meant to provide for multiple step increases, it would have inserted the world "each" in front of "additional" and "combinations." And in fact, VA did so with regard to subsection (a) of the same regulation, stating that SMC "is payable for ***each*** anatomical loss or lose of use[.]" 38 C.F.R. § 3.350(a); *see also King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (when interpreting a statute, courts must read the provisions of the law as a whole and in context). Given that VA elected to employ the term "each" in one subsection but not the other, we can presume that the omission of "each" in subsection (f)(3) was intentional and indicates entitlement to only one half-step increase. *See Russello v. United States*, 464 U.S. 16, 23 (1983).

Mr. Barry contends that the use of the word "or" is inapposite because it simply indicates that there are two ways for a veteran to qualify for a half-step increase. Barry Br. at 26. But in doing so, he grapples only with the Veterans

Court statement that the insertion of the term "and" would more appropriately convey the allowance of a half-step increase. But using the term "and" would not require the veteran to have a single permanent disability in addition to combinations of permanent disabilities independently ratable at 50 percent or more, as Mr. Barry alleges. Rather, as the Veterans Court indicates, the term "and" means that both a single permanent disability and a combination of permanent disabilities could afford entitlement, but that a veteran can only rely on one or the other in seeking the increase. Appx12. And Mr. Barry fails address at all that the regulatory language does not call for an increase for merely disabilities rated at 50 percent.

In addition, the regulation only allows for "entitlement to ***the*** next higher intermediate ***rate*** or if already entitled to an intermediate rate to ***the*** next higher statutory ***rate***." 38 C.F.R. § 3.350(f)(3). This language clearly shows that the next higher intermediate or statutory rate is meant to be singular. And, as with the phrase "additional single disability or combinations of permanent disabilities," Congress could have stated that a veteran has "entitlement to the next higher intermediate rate ***for each such loss***" or has "entitlement to the next higher intermediate rate ***without limit, subject to the cap***." Yet it did not do so, instead clearly cabining the language to a singular rate increase.

Mr. Barry claims that "entitlement to the next higher intermediate rate" suggests only that, if a veteran has a qualifying disability or combination of disabilities, they would be entitled to the next higher intermediate rate. Barry Br. at 28. But this argument does no more than merely restate the language of the regulation, which sheds no light on why Mr. Barry believes that explicit language granting entitlement to a singular higher intermediate rate should be read as permitting multiple half-step increases.

Mr. Barry offers little in the way of explanation as to why the language of the regulation should unambiguously favor his interpretation. He first echoes the dissent's misguided assertion that the Veterans Court added an "unstated qualifier" to the regulation by effectively amending the regulation to state "to the next higher intermediate rate or if already entitled to an intermediate rate ***under the other intermediate provisions outlined above*** to the next higher statutory rate." Barry Br. at 23-24 (citing Appx21) (emphasized language added by Mr. Barry). He then notes that the next sentence of the regulation in fact contains the phrase "intermediate rate provisions outlined above[,]" claiming that such use shows VA's intent not to cabin the language of the phrase at issue. *Id.*

But Mr. Barry ignores that the use of the phrase "intermediate rate provisions outlined above" in the second sentence of subsection (f)(3) involves an entirely different context than the first sentence of the subsection and utilizes that

phrase to require the disability or disabilities in question to be "separate and distinct and involve different anatomical segments or bodily systems" from those already specified earlier in section (f). *See* 38 C.F.R. § 3.350(f). Moreover, VA's and the Veterans Court's interpretation of the phrase "afford entitlement to the next higher intermediate rate or if already entitled to an intermediate rate" does not impermissibly insert language into the regulation; it simply reflects the most reasoned interpretation of the phrase in the context of the regulation as a whole. The only sensible understanding of the phrase "if already entitled to an intermediate rate," when coupled with the succeeding phrase "to the next higher statutory rate" and read in the surrounding context of the other subsections is that, when a veteran is already entitled to an intermediate rate as a result of the disabilities outlined in the preceding subsections, they will instead receive the next higher statutory rate as a half-step increase (as opposed to receiving a full-step increase to the ***next*** intermediate rate).

Mr. Barry's only other affirmative plain language argument is that the text of section 3.350(f)(3) indicates that a veteran is entitled to at least two half-step increases. Barry Br. at 43-44. He again invokes the phrase "the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate," this time to contend that the phrase indicates that a veteran should

be entitled to both an intermediary rate under subsection (f)(3), ***as well as*** a higher statutory rate under that same subsection. *Id*. at 44.

But, as explained above, the only reasonable construction of the phrase is as meaning that, when a veteran is already entitled to an intermediate rate pursuant to the regulatory and statutory framework, the veteran will instead get a bump up to the next statutory rate, because that would be the only way to effectuate a half-step increase pursuant to the statute and regulation. Nothing in the language suggests, much less clearly indicates, that a veteran who receives an intermediate rate pursuant to a half-step increase under subsection(f)(3) should then also be allowed to obtain another half-step increase to the next statutory rate. Mr. Barry's theory makes little sense because, under his interpretation, a veteran who is already at an intermediate rate pursuant to other SMC provisions and receives a half-step increase under subsection (f)(3) that bumps them to the next higher statutory rate would be disallowed from seeking a second subsection (f)(3) half-step increase to the next intermediate rate, but a veteran whose first half-step increase under subsection (f)(3) bumped them to an intermediate level ***would*** be able to seek a second increase to bump them to the next statutory level.

At bottom, the plain language of subsection (f)(3) supports VA's interpretation and there is nothing in the language of the subsection indicating that multiple half-step increases are warranted for additional 50 percent or higher

disabilities. While Mr. Barry incorrectly argues that VA's interpretation requires the insertion of an "unstated qualifier," it is ***Mr. Barry*** who attempts to read language into the regulation that simply does not exist. Other than his dubious argument that the regulation explicitly allows for at least two half-step increases, he presents no real argument as to how the text of subsection (f)(3) supports his interpretation.

### 2. An Intrastatutory Comparison Demonstrates That VA's Regulation Correctly Implements The Statute

Assuming the plain language of the regulation, taken alone, does not resolve the question, an examination of the governing statute, 38 U.S.C. § 1114, should conclusively establish that VA's interpretation is the correct one.

As the Veterans Court explained, section 3.350(f) implements section 1114(p);[9] in the first sentence of subsection (p), Congress provides that, "in the event the veteran's service-connected disabilities exceed the requirements for any of the rates prescribed in this section, the Secretary may allow ***the*** next higher ***rate*** or ***an*** intermediate ***rate***." 38 U.S.C. 1114(p)) (emphasis added). "The use of the terms 'the' and 'an' in conjunction with the singular 'rate' in the authorizing statute plainly indicates that one singular 'rate' would be provided through any

[9] 38 C.F.R. § 3.350(f)(3) and (f)(4), which are the subsections at issue here, implement only the first sentence of 38 U.S.C. § 1114(p), which is discretionary. The remainder of subsection (p), which is non-discretionary, is implemented by subsections (f)(1), (f)(2), and (f)(5) of 38 C.F.R. § 3.350.

regulation [VA] adopted to implement the statute." Appx12. This is particularly clear when read in combination with Congress's use of the language "service-connected disabilities exceed the requirements for any of the rates" in section 1114 in the opening phrase of subsection (p). In other words, in the first sentence of subsection (p), Congress is providing a single "bump" if a veteran has "service-connected disabilities" that exceed the rates for "any" of the other section 1114 rates.

While the statutory language, standing alone, is enough to indicate that only one rate may be provided in any implementing regulation, Congress's choice to use the singular in section 1114(p) stands in especially stark contrast to the language it included in section 1114(k) of the same statute. Similarly to the regulatory comparison above, Congress stated in subsection (k) that "the rate of compensation therefor shall be [X amount] per month for ***each such loss***," and that "the rate of compensation shall be increased by [X amount] per month for ***each such loss or lose of use***[.]" 38 U.S.C. § 1114(k) (emphasis added). As the Veterans Court pointed out, "[t]he italicized language suggests that multiple losses can qualify for SMC under subsection (k)," as opposed to the language in subsection (p), which points to a singular rate increase. Appx12. Congress did not make such a similar allowance for more than one increase for multiple losses in subsection (p).

Where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Hyundai Steel Co. v. United States*, 19 F.4th 1346, 1353 (Fed. Cir. 2021) (quoting *Russello*, 464 U.S. at 23 (cleaned up)). Thus, we can assume that Congress, having elected to specify multiples in one section of the statute, intentionally chose not to do so with regard to subsection (p), thereby constraining the half-step rate increase to a single one.

Mr. Barry attempts to undermine the Veterans Court's reliance on the comparison between subsections (k) and (p) of section 1114 by asserting that the subsections are distinguishable because subsection (k) covers the rate of compensation for a number of disabilities, while subsection (p) deals with SMC rate levels. Barry Br. at 29-30. According to Mr. Barry, subsection (p) applies to a "ladder" of rates set forth by subsections (l) through (o), and does not include subsection (k) "as a step on this SMC rate latter." *Id.* at 30-31.

What Mr. Barry fails to do, however, is explain why this matters, other than offer a conclusory statement that "the language for multiple applications of the compensation rate per qualifying disability in subsection (k) is not informative as to whether [section] 3.350(f)(3) . . . allows for only a single half-step increase[.]" Barry Br. at 32. Simply because subsections of a statute deal with somewhat

different subject subareas (as different subsections are often wont to do) does not render invalid the presumption that Congress intentionally omitted language in one subsection but not the other. Mr. Barry points to no authority for his supposition that the presumption only applies when the latter section of a statute specifically incorporates to or refers to an earlier section.

Similar to the regulation at hand, and as noted, the governing statute also allows "an" intermediate rate or "the" next higher rate (both singular) for "disabilities" (plural). This intentional language choice to use the plural "disabilities" and the single "an" and "the" together signals that Congress only intended one increase, even when considering all service-connected disabilities. *See* 38 U.S.C. § 1114(p). In *Johnson v. McDonald*, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014), the Court stated that "the fact that the regulation authorizes a single extra-schedular evaluation—'***an*** extraschedular evaluation'—arising from the 'disability or disabilities' indicates that referral for extra-schedule evaluation may be based on the collective impact of the veteran's disabilities." *Id.* at 1365. Thus, the Court in *Johnson* interpreted the singular "an" as a single evaluation and the plural "disabilities" as a combination of multiple disabilities. The same type of conclusion is merited here.

Having found section 1114(p)'s meaning ascertainable, the Veterans Court properly cited the principle that the implementing regulation should, if possible, be

interpreted so as not to exceed statutory authority. Appx13. The court then noted that the provision of a single half step is entirely consistent with the authority granted VA by Congress in 38 U.S.C. § 1114(p), and that the regulation constitutes a "faithful application of the choices Congress made." *Id.* This determination should not be disturbed.

### 3. Mr. Barry's Interpretation Of Subsection (f)(3) Undermines Subsection (f)(4), While VA's Interpretation Does Not

In the final prong of the Veterans Court's subsection (f)(3) analysis, the court held that, "to give real meaning to [section] 3.350(f)(4), which, recall, provides for a full-step increase, we think that subsection (f)(3) cannot practically mean that multiple half-step increases are possible."[10] Appx14. Subsection (f)(4) allows for a full-step increase where the veteran has an "additional single permanent disability independently ratable at 100 percent[.]" 38 C.F.R. § 3.350(f)(4). If a veteran cannot meet the criteria in subsection (f)(4) for a full-step increase, it would be odd indeed to allow a veteran to qualify for a full-step increase or even more through multiple half-step increases via subsection (f)(3). Presumably, if VA had intended to achieve such a strange result, it would have

[10] Mr. Barry mischaracterizes the Veterans Court's decision as admitting that its reasoning is "shaky." Barry Br. at 32. This is not true. The Veterans Court merely stated that Mr. Barry's reading of subsection (f)(3) "may not" render subsection (f)(4) "entirely meaningless," Appx14, a far cry from an admission of "shaky" reasoning.

made clear through the language of subsection (f)(3) that multiple increases are available. *See Timex V.I. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998) ("a statutory construction that causes absurd results is to be avoided if at all possible").

In addition, allowing multiple 50 percent-rated conditions to eclipse compensation for a single 100 percent-rated condition is inconsistent with the way VA generally calculates overall ratings when there are multiple service-connected disabilities. For instance, under 38 C.F.R. § 4.25, the overall disability percentage is not calculated by adding two or more individual ratings together. Rather, each additional disability is considered to add incrementally to the overall disability evaluation. Under the instructions and the table in section 4.25, combining multiple disabilities never reaches 100 percent in terms of overall impairment. The only way to get to 100 percent through combination is via the rounding requirement at the end of subsection (a), as the combination table itself only goes up to 99 percent. While section 4.25 does not apply to SMC calculations, it does identify VA's general approach to rating the disabling effects of multiple disabilities. It is not reasonable to assume that VA intended a different approach under (f)(3) *sub silencio*.

#### 4. Legislative And Regulatory History Do Not Favor Mr. Barry's Interpretation

Despite Mr. Barry's attempt to show otherwise, the legislative history behind 38 U.S.C. § 1114(p) should not encourage the Court to adopt his

interpretation of 38 C.F.R. § 3.350(f)(3). While the Veterans Court did not engage with the legislative or regulatory history of the statue and regulation, Mr. Barry asserts that his interpretation would effectuate Congress's desire to provide "a more flexible scale for the authorization of monetary benefits to the most severely disabled veterans" and to recognize the difference "between double amputations at various levels." Barry Br. at 46-47 (quoting S. Rep. No. 79-549 at 1 (1945); H.R. Rep. No. 79-934 at 2 (1945)).

But the statements cited by Mr. Barry refer to the statute as a whole, and not specifically subsection (p). *See* S. Rep. No. 79-549 at 1; H.R. Rep. No. 79-934 at 2. Simply because Congress generally wanted to provide a more flexible scale and recognize the difference between levels of amputation does not indicate that it intended to have VA provide multiple half-step increases in subsection (p), especially given that the amendments to the statute as a whole effectuated Congress's intent.

Congress's stated objectives were implemented by amending multiple subsections separate from subsection (p). For example, subsection (k) was amended to include extra compensation for each loss (or loss of use) of one foot, one hand, or blindness of one eye, having only light perception, in addition to any rates paid under subsections (l) to (o); in addition, subsection (m) was amended to compensate loss of two extremities based upon the level of loss of use, as was

subsection (n), which provides a higher level of compensation for a higher level of loss of use. *See* S. Rep. No. 79-549 at 2-3; H.R Rep. No. 79-934 at 3-5; *see also* House Journal, 79th Congress, 1st Session, 10924 571, 573 (1945). Thus, while subsection (p) also provides VA with more flexibility, it is not the primary provision through which Congress sought to better compensate the most severely injured veterans, and nothing in the legislative history cited by Mr. Barry indicates that Congress intended subsection (p) to permit more than one half or full-step increase. Indeed, the plain language of subsection (p) recognizes the flexibility of the statutory scheme with its reference to "any of the rates prescribed in this section," but still cabins the subsection (p) adjustment to "the next higher rate or intermediate rate."

In any event, the legislative history supports VA's interpretation, as the House Report relied on by Mr. Barry includes a letter from VA stating that "[i]t is deemed necessary . . . to allow ***the*** next higher or ***an*** intermediate rate[.]" H.R. Rep. 79-934 at 2. As explained above, the deliberate use of the singular supports a reading that allows only one increase.

The regulatory history behind 38 C.F.R. § 3.350(f)(3) similarly demonstrates that VA intended from the beginning to only allow one half-step increase. The original regulation mostly codified section 1114(p) verbatim at 38 C.F.R. §§ 35.011(b)(16) and 35.012(b)(16), but in 1947 VA amended its regulations to

add 38 C.F.R. § 3.126(c), which provided that "[w]ith the requirements for any of the rates provided in paragraphs (b)(12) to (14), §§ 35.011 and 35.012 of this chapter, and additional ***disability*** independently ratable at 50% or more, ***the rate*** will be intermediate[.]" 38 C.F.R. § 3.126(c)(4) (1947); *see* 12 Fed. Reg. 1,595, 1,597 (Mar. 8. 1947) (emphasis added). Again, VA used language indicating the singular and specifies only one rate.

In 1949, the regulation moved to 38 C.F.R. § 3.236, and the language amended to read: "[w]ith the requirements for any of [certain rates set forth by various paragraphs], and additional disability (***single permanent disabilities or combinations or permanent disabilities with the usual prohibition against pyramiding***) independently ratable at 50% or more, ***the rate*** will be intermediate." 38 C.F.R. § 3.326(c)(4) (1949) (emphasis added). With this amendment, VA added eligibility for combinations of disabilities, but showed through the use of parentheses and the specification of a single rate that only one rate bump was permissible.

In 1961, the regulation was moved to its current location at 38 C.F.R. § 3.350. *See* 14 Fed. Reg. 1,561, 1,587 (Feb. 24, 1961), and amended to a form substantially similar to its current iteration. Taken as a whole, the regulatory history indicates VA's intention to allow only a single increase and effectuate Congress's intention.

### B. The Veterans Court Properly Declined To Consider The Veterans Canon

#### 1. The Veterans Canon Does Not Apply Here

In his brief, Mr. Barry argues that the Veterans Court erred by not considering the veterans canon when deciding that 38 C.F.R. § 3.350(f)(3) allows for a single half-step increase, despite that court having declined to find the regulation ambiguous, a precondition for appropriate invocation of the veterans canon.

Mr. Barry encourages the Court to overrule its own precedent by considering the veterans canon even before making a decision on ambiguity informed by the traditional tools of regulatory construction. Barry Br. at 36-41 (urging the Court to consider the veterans canon because the Veterans Court's determination went beyond the plain language of the regulation in a vacuum, even though the court did not pronounce the regulation ambiguous).

But this Court has already held that the veterans canon only applies when, after the use of ordinary textual analysis tools (which includes those discussed above), interpretive doubt still remains (*i.e.*, the regulation is still found to be ambiguous). *See Kisor v. McDonough*, 995 F.3d 1316, 1325-26 (Fed. Cir. 2021) (*Kisor II*) (The "precondition [of interpretive doubt] is not satisfied where a sole reasonable meaning is identified through the use of ordinary textual analysis tools, ***before consideration of the pro-veteran canon***) (emphasis added); *see also Roby*

*v. McDonough*, No. 2020-1088, 2021 WL 3378834, at *8 (Fed. Cir. Aug. 4, 2021) ("our [C]ourt in *Kisor v. McDonough* created an effective hierarchy of canons, placing [the] pro-veteran canon behind other interpretive canons[.]"); *Nielson v. Shinseki*, 607 F.3d 802, 805 (Fed. Cir. 2010) (veterans canon does not apply when text and statutory scheme support VA's interpretation); *Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1340 (Fed. Cir. 2003) (noting that the pro-veteran canon "applies only to ambiguous statutes" and "cannot be invoked to override the clear meaning of a particular provision") (internal quotation marks and citation omitted).

It is well-settled that one panel of this Court may not overrule a prior precedential decision. *See Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1309 (Fed. Cir. 2008) ("[a] prior precedential decision on a point of law by a panel of this court is binding precedent and cannot be overruled or avoided unless or until the court sits *en banc*) (cleaned up). Accordingly, this Court cannot and should not consider Mr. Barry's argument that the veterans canon should applied at the same time or even ahead of other tools of statutory and regulatory interpretation.[11]

---

[11] Mr. Barry claims that the Court is "split as to when the pro-veteran canon is considered." Barry Br. at 37-38. While it is true that the Court is divided on whether the veterans canon should be considered before deferring to VA's interpretation, *see Kisor v. McDonough*, 995 F.3d 1347 (Fed. Cir. 2021) (*Kisor III*), the Court's precedential opinion in *Kisor II* makes clear that the veterans

Mr. Barry asserts that the Court should consider that veterans canon as a "traditional tool of statutory and regulatory interpretation[,]" to be applied alongside other tools of interpretation or canons of construction when the "the text of the regulation read in isolation does not clearly resolve the issue." Barry Br. at 39-41.[12] But this argument directly contravenes this Court's holding in *Kisor II*, which demands that if a reasonable meaning is discerned through the use of ordinary tools of interpretation, the veterans canon is inapplicable. *Kisor II*, 995 F.3d at 1326; *see also Roby*, No. 2020-1088, 2021 WL 3378834, at *8 ("our [C]ourt in *Kisor v. McDonough* created an effective hierarchy of canons, placing [the] pro-veteran canon ***behind other interpretive canons***[.]").

Put another way, the veterans canon does not aid in determining whether Congress had an unambiguous intention; it takes for granted that a statue is ambiguous and it may be considered in the event of a tie in favor of the veteran. *See, e.g., Nielson*, 607 F.3d at 808 n.4; *see also Heino v. Shinseki*, 683 F.3d 1372, 1379 n.8 (Fed. Cir. 2012) ("we will not hold a statute unambiguous by resorting to

---

canon is to be considered ***after*** other interpretive canons have been applied). *See also Roby*, No. 2020-1088, 2021 WL 3378834, at *8.

[12] Mr. Barry also appears to try and draw a distinction between "interpretive doubt" and ambiguity. Barry Br. at 36-41. But *Kisor II*, which was issued in direct relation to the Supreme Court's decision in *Kisor I*, and which specifies that the veterans canon is subordinate to "ordinary textual analysis tools," does not seem to draw any such distinction, which is appropriate in light of *Kisor I*.

a tool of statutory construction used to analyze ambiguous statutes.”). Thus, Mr. Barry’s argument that the Court should consider the veterans canon fails.

**2. Even If The Court Finds Genuine Ambiguity, The Veterans Canon Does Not Automatically Invalidate The Regulation**

Mr. Barry asserts that, even if the veterans canon is placed behind other interpretive canons, a “sustained textual analysis”[13] does not resolve the meaning of section 3.350(f)(3), and therefore the veterans canon should still be considered. Barry Br. at 42. In making this argument, Mr. Barry conspicuously avoids the terms “ambiguous” or “ambiguity,” perhaps in an attempt to encourage a view of the Veterans Court’s decision as finding ambiguity because it thought the plain language alone did not conclusively resolve the question, despite the court having definitively declined to declare the regulation ambiguous.

In any event, as explained above, this Court’s precedent establishes that the veterans canon should only be considered when a regulation is found to be genuinely ambiguous, and not simply when a court looks behind the plain language in isolation and utilizes its interpretive toolkit. Contrary to Mr. Barry’s assertions, a sustained analysis of the plain language, the statute, and the rest of the regulation,

[13] Mr. Barry adopts this phrase from the Court’s denial for a petition for rehearing *en banc*, in which one of the multiple concurrences states that the veterans canon should play a role only “when a sustained textual analysis—including any applicable descriptive canons—yields competing plausible interpretations[.]” *Kisor*, 995 F.3d at 1348.

clearly establishes that section 3.350(f)(3) provides only one half-step increase; accordingly, the Court should not consider the veterans canon.

But even if this Court decides, after employing all the tools of construction, that the regulation is genuinely ambiguous, the veterans canon still does not automatically invalidate a regulation merely because it can be read in a manner permitting a more favorable outcome for a specific veteran. *See, e.g., Sears v. Principi*, 349 F.3d 1326, 1331-32 (Fed. Cir. 2003) ("we must take care not to invalidate otherwise reasonable agency regulations simply because they do not provide for a pro-claimant outcome in every imaginable case."); *Nielson*, 607 F.3d at 808 ("The mere fact that the particular words of the statute… standing alone might be ambiguous does not compel us to resort to the [veterans] canon.").

Mr. Barry also presumes, without sufficient explanation, that if a regulation is determined to be ambiguous, the veterans canon should take precedence over the principle of deference to VA's interpretation of its own regulation. Barry Br. at 38-39. But, as illustrated by *Kisor III*, neither this Court nor the Supreme Court has held that the veterans canon should be applied before deferring to an agency interpretation. *Kisor III*, 995 F.3d at 1358. Indeed, the Court has indicated that, when certain preconditions are met, VA is owed deference without resort to the veterans canon. *Id.* at 1360 (Hughes, J., concurring) ("if the conditions for [ ] deference are met, then the VA is entitled to deference, without resort to the pro-

veteran canon. *See, e.g.*, *Smith v. Shinseki*, 647 F.3d 1380, 1385 (Fed. Cir. 2011); *Smith v. Nicholson*, 451 F.3d 1344, 1349–51 (Fed. Cir. 2006); *Sears*, 349 F.3d at 1331–32. The Supreme Court's decision in *Kisor* does not require alteration of this precedent, but simply clarifies the conditions for application of *Auer*.[14]"). As the concurrence in *Kisor III* noted:

> To hold that the pro-veteran canon applies at any earlier step in the *Chevron* or *Auer* analysis is to hold that the VA, alone among the executive agencies, is not entitled to deference in interpreting its regulations and the statutes Congress has charged it with administering. This position would be anomalous to say the least and has been flatly rejected by this court.

*Kisor III*, 995 F.3d at 1361 (Hughes, J., concurring). Accordingly, this Court should not accept Mr. Barry's presumption that the veterans canon negates deference to agency interpretation.

Finally, Mr. Barry ignores that the regulation, which provides additional compensation for hardships not specifically accounted for in the rest of the SMC scheme, does not conflict with the pro-veteran nature of the veterans benefit framework. Appx224. Rather, as VA noted below, "38 C.F.R. § 3.350(f) provides further relief to disabled veterans that would otherwise be unavailable, and 'is therefore generally consistent with the pro-claimant policy suffusing the statute.'" *Id.* (quoting *Sears*, 349 F.3d at

[14] *Auer v. Robbins*, 519 U.S. 452 (1997).

1332).

Moreover, subsection (f)(3) constitutes only part of the picture of how VA implements section 1114(p). Subsections (f)(1) and (f)(2) provide bump-ups for specific combinations of anatomical losses. *See* 38 C.F.R. § 3.350(f)(1)-(2). Subsections (f)(3) and (f)(4) then provide an additional bump-up on top of those, as both paragraphs provide a bump-up "[i]n addition to . . . the intermediate or next higher rate provisions outlined above." 38 C.F.R. §§ 3.350(f)(3) and (4). And paragraph (f)(5) specifically addresses an increase for loss of three extremities. 38 C.F.R. §§ 3.350(f)(5). As is evident, the entire nature of the SMC framework constitutes a pro-claimant attempt to provide further compensation to veterans who have suffered above and beyond the amount contemplated by the VA Schedule, and Mr. Barry receives SMC benefits pursuant to section 1114(m) and 3.350(f)(3).

### C. Mr. Barry Cannot Establish That The Duty To Maximize Applies In The Context Of Statutory Or Regulatory Interpretation

Mr. Barry echoes the dissent's claim that VA's duty to maximize benefits points in favor of his preferred interpretation. Barry Br. at 44, 47. But he has not demonstrated, as a threshold matter, that the duty to maximize should be considered in interpreting statutes or regulations. And in fact, the case and

regulation he relies on to support his argument suggest that the duty to maximize does not apply to statutory or regulatory construction.

In *Morgan v. Wilkie*, the Veterans Court explained that the duty "is rooted in 38 C.F.R. § 3.103(a), which requires VA to render a decision which grants every benefit ***that can be supported in law*** while protecting the interests of the Government." 31 Vet. App. 162, 167 (2019) (citation omitted) (emphasis added); *see also AB v. Brown*, 6 Vet. App. 35, 38 (1993) ("the claimant will generally be presumed to be seeking the maximum benefit ***allowed by law and regulation***) (emphasis added). This language indicates that the duty to maximize only applies to the extent it complies with law, and strongly implies that it should not be considered when determining what the law ***is*** in the first instance. In addition, this Court has recently stated that the statement of policy set forth by 38 C.F.R. § 3.103(a) "cannot contradict the plain meaning of a regulation." *Hanser v. McDonough*, 56 F.4th 967, 975 (Fed. Cir. 2022). Accordingly, the Court should pay no heed to the argument regarding VA's duty to maximize.

## CONCLUSION

For these reasons, this Court should affirm the decision of the Veterans Court.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Deputy Director

/s/ Sosun Bae
SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch
Department of Justice, Civil Division
P.O. Box 480
Washington, DC 20044
Telephone: (202) 305-7568
Sosun.Bae@usdoj.gov
Attorneys for the Respondent-Appellee

Of Counsel:

BRIAN D. GRIFFIN
Deputy Chief Counsel

ANDREW J. STEINBERG
Staff Attorney
Department of Veterans Affairs
810 Vermont Avenue NW
Washington, DC 20420

February 9, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify under penalty of perjury that the attached brief is proportionately spaced using Microsoft Word, uses a Times New Roman typeface in 14 point font size, and, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), contains 8,392 words.

/s/ Sosun Bae
SOSUN BAE