No. 22-1747

IN THE

# United States Court of Appeals for the Federal Circuit

DANIEL D. BARRY,

*Claimant-Appellant*,

*v.*

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS,

*Respondent-Appellee.*

On Appeal from the United States Court of Appeals for Veterans Claims
No. 20-3367, Judge Michael P. Allen, Judge Joseph L. Falvey, and
Judge Grant C. Jaquith

## REPLY BRIEF OF CLAIMANT-APPELLANT DANIEL D. BARRY

Kenneth H. Dojaquez
CARPENTER CHARTERED
P.O. Box 2099
Topeka, KS 66601

Jingyuan Luo
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Melanie L. Bostwick
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

*Counsel for Claimant-Appellant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1
ARGUMENT ........ 2
I. Subsection 3.350(f)(3) Does Not Limit A Veteran To A Single Half-Step Increase. ........ 2
A. The text of the regulation does not conclusively resolve the issue or support the VA's interpretation. ........ 2
1. The "or…50 percent or more" language is not instructive. ........ 3
2. The use of single articles and terms is not dispositive ........ 8
3. The text of subsection (f)(3) suggests that more than one half-step increase should be permitted. ........ 11
B. Neither The Language Of 38 U.S.C. § 1114(p) Nor An Intrastatutory Comparison With 38 U.S.C. § 1114(k) Supports The Government's Interpretation. ........ 16
C. Mr. Barry's Interpretation Of § 3.350(f)(3) Does Not Undermine § 3.350(f)(4). ........ 22
II. The Pro-Veteran Canon Is Applicable Where Interpretive Doubt Remains After A Sustained Textual Analysis. ........ 25
III. The Legislative History And VA's Duty To Maximize Counsel For A More Flexible Approach To § 3.350(f)(3). ........ 30
CONCLUSION ........ 33
CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AB v. Brown*,
6 Vet. App. 35 (1993) .......... 32

*Adams v. United States*,
117 Fed. Cl. 628 (2014) .......... 18

*Bailey v. Wilkie*,
33 Vet. App. 188 (2021) .......... 32

*Breniser v. Shinseki*,
25 Vet. App. 64 (2011) .......... 25

*City of Columbus v. Ours Garage & Wrecker Serv., Inc.*,
536 U.S. 424 (2002) .......... 19

*English v. Wilkie*,
30 Vet. App. 347 (2018) .......... 9

*Fanning, Phillips & Molnar v. West*,
160 F.3d 717 (Fed. Cir. 1998) .......... 13

*Gazelle v. Shulkin*,
868 F.3d 1006 (Fed. Cir. 2017) .......... 24

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) .......... 23

*Hylete LLC v. Hybrid Athletics, LLC*,
931 F.3d 1170 (Fed. Cir. 2019) .......... 23

*Johnson v. McDonald*,
762 F.3d 1362 (Fed. Cir. 2014) .......... 18, 21, 22, 23

*Kisor v. McDonough*,
995 F.3d 1316 (Fed. Cir. 2021) .......... 27

*Kisor v. McDonough*,
995 F.3d 1347 (Fed. Cir. 2021) ........................................ 26, 27

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019) ........................................ 28

*Morgan v. Wilkie*,
31 Vet. App. 162 (2019) ........................................ 32

*Negusie v. Holder*,
555 U.S. 511 (2009) ........................................ 18

*NOVA v. Sec'y of Veterans Affairs*,
260 F.3d 1365 (Fed. Cir. 2001) ........................................ 28, 29

*Payne v. Wilkie*,
31 Vet. App. 373 (2019) ........................................ 11

*Roby v. McDonough*,
No. 2020-1088, 2021 WL 3378834 (Fed. Cir. Aug. 4, 2021) ............... 27

*Russello v. United States*,
464 U.S. 16 (1983) ........................................ 17

*Sears v. Principi*,
349 F.3d 1326 (Fed. Cir. 2003) ........................................ 29

*Shinseki v. Sanders*,
556 U.S. 396 (2009) ........................................ 33

*Smith v. Nicholson*,
451 F.3d 1344 (Fed. Cir. 2006) ........................................ 29

*Smith v. Shinseki*,
647 F.3d 1380 (Fed. Cir. 2011) ........................................ 29

*Southall-Norman v. McDonald*,
28 Vet. App. 346 (2016) ........................................ 9

*Sursely v. Peake*,
551 F.3d 1351 (Fed. Cir. 2009) ........................................ 6

*Tyler v. Cain*,
533 U.S. 656 (2001) ........ 13

*Walleman v. McDonough*,
35 Vet. App. 294 (2022) ........ 32

*Ward v. Wilkie*,
31 Vet. App. 233 (2019) ........ 9

**Statutes**

38 U.S.C. § 1114 ........ *passim*

**Rules and Regulations**

38 C.F.R. § 3.321 ........ 18, 21

38 C.F.R. § 3.350 ........ *passim*

38 C.F.R. § 4.25 ........ 24, 25

**Other Authorities**

H.R. Rep. No. 79-934 (1945) ........ 30

S. Rep. No. 79-549 (1945) ........ 30

U.S. Dep't of Veterans Affairs, *2023 VA Special Monthly Compensation Rates* (Nov. 29, 2022), https://www.va.gov/disability/compensation-rates/special-monthly-compensation-rates/ ........ 17

## INTRODUCTION

In arguing that § 3.350(f)(3) limits a veteran to a single half-step increase, the government's response largely relies on the textual clues in the regulation that the Veterans Court majority already determined "doesn't clearly answer the question we face." Appx12. The government's response does not articulate any additional substantive reasons why these textual clues unambiguously support its position. Instead, it largely reiterates arguments Mr. Barry has explained are not persuasive.

At bottom, a sustained textual analysis of the regulation does not resolve the parties' dispute as to the number of half-step increases permitted under § 3.350(f)(3). The text itself is not dispositive. The intrastatutory comparison is not applicable in view of the many differences between subsections (k) and (p) of 38 U.S.C. § 1114, which the regulation at question implements. And an interpretation of § 3.350(f)(3) that permits more than one half-step increase does not undermine § 3.350(f)(4). Instead, when the text of § 3.350(f)(3) is read in the context of the rest of the regulation—considering the legislative history of § 1114(p), the pro-veteran canon, and the VA's duty to

maximize—the scales tip in favor of a more liberal reading of subsection (f)(3) that permits multiple half-step increases when a veteran's service-connected disabilities, like those of Mr. Barry's, warrant.

## ARGUMENT

### I. Subsection 3.350(f)(3) Does Not Limit A Veteran To A Single Half-Step Increase.

#### A. The text of the regulation does not conclusively resolve the issue or support the VA's interpretation.

The language of § 3.350(f)(3) does not explicitly state that the increase in intermediate steps it provides can only be applied once. *See* Barry Br. at 22–23. The government does not contend otherwise. Instead, it asserts that more than one part of the plain language of the regulation unambiguously provides for only one half-step increase. And it submits that this Court can affirm on alternate grounds. VA Br. at 14 n.8. But considering the Veterans Court majority's acknowledgement that the textual clues in the regulation are not dispositive, the well-reasoned dissent, and the arguments Mr. Barry advances on appeal, this Court should not affirm the Veterans Court's decision on the alternate ground that the language of the regulation

resolves the issue of the number of half-step increases permitted under § 3.350(f)(3).

The government's plain language argument (14–16) focuses on two aspects of the regulation's text, the use of the disjunctive "or" and the use of single articles/terms, reproduced below in pertinent part.

> …additional single permanent disability ***or*** combinations of permanent disabilities independently ratable at 50 percent ***or more*** will afford entitlement to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. 1114, but not above the (o) rate.

38 C.F.R. § 3.350(f)(3) (emphasis added). But this does little more than reiterate arguments the Veterans Court majority considered and acknowledged "doesn't clearly answer the question." Appx12. And the government's response fails to address Mr. Barry's arguments why these textual clues do not tip the meaning of subsection (f)(3) towards a single half-step increase.

### 1. The "or…50 percent or more" language is not instructive.

The government's response appears to use the disjunctive language in the regulation to make two separate arguments why veterans should be limited to a single half-step increase under

subsection (f)(3). First, the government contends that the use of "or more" in "50 percent or more" is a caveat that limits the number of applications of § 3.350(f)(3) to one. VA Br. at 14–15. This caveat purportedly demonstrates that § 3.350(f)(3) "already contemplates that a veteran may have multiple or additional disabilities ratable at 50 percent or higher, but still only allows for one half-step increase." *Id.*

But this does no more than merely restate the language of the regulation and does not explain why the "or more" language is a caveat meant to limit the number of times § 3.350(f)(3) can be applied. Rather, the most reasonable understanding of the phrase "50 percent or more" within the context of the regulation is that 50 percent is the threshold a single disability or a combination of disabilities must meet to qualify for a half-step increase under § 3.350(f)(3). Removing "or more" from the regulation would lead to the nonsensical result of requiring that the disability or combination of disabilities be rated at exactly 50 percent for the veteran to qualify for a half-step increase in SMC rate under this subsection. That is, a veteran with a single disability or combination of disabilities rated at 60 percent would not qualify for an SMC rate increase under subsection (f)(3) without language indicating that 50

percent is simply a threshold. This would counsel against reading "50 percent or more" as a caveat or limitation. Moreover, subsection (f)(3) does have other limitations whose removal would not lead to the same nonsensical result, including that the disability or disabilities "must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitled under 38 U.S.C. 1114 (l) through (n) or the intermediate rate provisions outlined above." 38 C.F.R. § 3.350(f)(3). The "50 per or more" language is not one such limitation.

Second, the government addresses the use of the disjunctive "or," but does not explain why it indicates only one half-step increase is available under § 3.350(f)(3). VA Br. at 15–16. All the government does in response is criticize Mr. Barry's interpretation by contending that Mr. Barry "grapples only with the Veterans Court's statement that the insertion of the term 'and' would more appropriately convey the allowance of a half-step increase." *Id.*

As an initial matter, this is untrue. Mr. Barry advances other arguments for which the government provides no response. *See* Barry Br. at 25–27. Mr. Barry explains why the disjunctive "or" simply

indicates that there are two ways for a veteran to qualify for a half-step increase and cites supporting case law. *Id.* As this Court explained in *Sursely v. Peake*, the word "or" simply signified there was two ways to qualify for a particular benefit (clothing allowance) and that it did not imply anything about whether the veteran can be awarded the benefit twice, once under each qualifying condition. 551 F.3d 1351, 1357 (Fed. Cir. 2009). The government's response is silent as to why the same reasoning in *Sursely* should not apply here.

Moreover, the government's defense of the Veteran Court majority's statement regarding the conjunctive "and" appears to be based on a misunderstanding of that statement. The majority reasoned that "[i]f appellant's [Mr. Barry's] views were correct, it seems 'and' would be more appropriate." Appx12. That is, the majority believed that using the conjunctive "and" in place of the disjunctive "or" would better support Mr. Barry's argument that subsection (f)(3) permits more than one half-step increase. Appx12. And because the Secretary did not use the conjunctive "and" in the regulation, the majority found this to be an indication that the VA did not intend subsection (f)(3) to permit more than one half-step increase. *Id.* The Veterans Court majority did

not—as the government seems to suggest—hold that the term "and" means that both a single disability and combination of permanent disabilities could afford entitlement, but that a veteran can only rely on one or the other in seeking an increase.[1] VA Br. at 16.

Even so, the use of the conjunctive "and" in place of the disjunctive "or" would still not provide any guidance as to the number of half-step increases permitted under the regulation. Barry Br. at 26. The new language in pertinent part would read: "additional single permanent disability ***and*** combinations of permanent disabilities independently ratable at 50 percent or more." Thus, even if Mr. Barry accepts a reading of the conjunctive "and" that does not require a veteran to have both a single disability in addition to combinations of permanent disabilities independently ratable at 50 percent to qualify for a half-step

---

[1] The government also notes that Mr. Barry fails to address that the "regulatory language does not call for an increase for merely disabilities rated at 50 percent." VA Br. at 16. It is unclear exactly what the government's criticism is because the "50 percent or more" language in the regulation includes 50 percent. Thus, veterans reaching this 50 percent threshold through a single disability or multiple disabilities qualify for a half-step increase. To the extent this is a continuation of the government's argument that the "or more" language is a caveat limiting veterans to a half-step increase, there is no such indication in the regulation itself. Rather, as Mr. Barry explains, this language is more reasonably interpreted as a threshold. *See supra* at 4–5.

increase, as the government's response suggests, the VA's decision to use "or" rather than "and" in the regulation still provides no answer as to the number of half-step increases permitted under § 3.350(f)(3). All the phrase "additional single permanent disability ***or*** combinations of permanent disabilities independently ratable at 50 percent ***or more***" clearly indicates are the conditions under which a veteran can qualify for a single half-step increase, not that a single half-step increase is all that is permitted. § 3.350(f)(3) (emphasis added).

Thus, the use of the disjunctive "or" with "50 percent or more" language does not, as the government suggests, clearly limit the number of half-step increases permitted by the regulation.

**2. The use of single articles and terms is not dispositive.**

As with the disjunctive "or," the Veterans Court majority also acknowledged that, while the use of single articles and terms in the regulation may tip the interpretation of § 3.350(f)(3) in favor of a single half-step increase, it is not dispositive. Appx12. Mr. Barry contends that the use of the singular article "the" paired with the singular term "rate" only suggests that a qualifying disability or combination of disabilities corresponds to one half-step increase. Barry Br. at 27–28.

It does not limit the veteran to one qualifying disability or one combination of disabilities. Both the government and Veterans Court majority's interpretation add a limitation that is not explicitly stated in the regulation and the underlying statute it implements. *See e.g., Ward v. Wilkie*, 31 Vet. App. 233, 240 (2019) ("The Secretary may not add restrictions to a regulation where they do not exist, 'because, in doing so, the Board imposes a greater burden on a claimant than the law does.'"); *English v. Wilkie*, 30 Vet. App. 347, 353 (2018); *Southall-Norman v. McDonald*, 28 Vet. App. 346, 352 (2016) (citing cases).

The government's response does not explain why the use of singular articles and terms is dispositive towards its interpretation of the regulation. It only argues that this language "clearly shows that the next higher intermediate or statutory rate is meant to be singular." VA Br. at 16. Aside from the fact that this is no more than a conclusory statement, all this language unambiguously shows is that both a single permanent disability and a combination of permanent disabilities affords entitlement to a single half-step increase. It does not unambiguously answer the question of the number of half-step increases permitted under § 3.350(f)(3).

The government also asserts that if veterans were meant to be entitled to multiple half-step increases under § 3.350(f)(3), then "Congress could have stated that a veteran has 'entitlement to the next higher intermediate rate ***for each such loss***' or has 'entitlement to the next higher intermediate rate ***without limit, subject to the cap***." VA Br. at 16 (emphasis language added by the government).[2] But the government ignores that the language regarding the statutory cap is already present in the regulation. *See* 38 C.F.R. § 3.350(f)(3) ("but not above the (o) rate").

Moreover, while it is true that the VA could have provided clarifying language in the statute, that it did not do so does not clearly cabin the current language in the regulation to a single half-step increase as the government contends. The VA could have likewise provided clarifying language to limit § 3.350(f)(3) to a half-step increase, for example: "additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more will afford entitlement to the next higher intermediate rate or if already

[2] While the government refers to Congress, we presume it meant to refer to "the Secretary" or the "VA" as it discusses the regulation. VA Br. at 16.

entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. 1114, but ***only once and*** not above the (o) rate." *See Payne v. Wilkie*, 31 Vet. App. 373, 385 (2019) ("[I]f Congress had intended eligibility only to veterans who allege a closer causal connection between their service-connected disability and the anatomical loss or loss of use of a creative organ, it could have used stricter language in crafting [section 1114(k)].") (internal quotations and citations omitted). That the VA did not provide clarifying language tipping the scale towards either interpretation indicates that the language of the regulation is not dispositive.

**3. The text of subsection (f)(3) suggests that more than one half-step increase should be permitted.**

Section 3.350 allows veterans to obtain intermediate rates under subsections (f)(1)–(f)(3). 38 C.F.R. § 3.350(f)(1)(i), (iii), (v)–(vii), (ix)–(x), (xii); (f)(2)(i), (iii)-(vii); (f)(3). Subsection (f)(3) reads in pertinent part: "entitlement to the next higher intermediate rate or ***if already entitled to an intermediate rate*** to the next higher statutory rate." 38 C.F.R. § 3.350(f)(3) (emphasis added). The dissent recognized, and Mr. Barry further explains in his opening brief, that the Veterans Court majority's interpretation of § 3.350(f)(3) reads in a limitation that is not

present into the regulation. Appx21–22; Barry Br. at 23–24. It limits the "intermediate rate" in the phrase "if already entitled to an intermediate rate" to the intermediate rates obtained under §§ 3.350(f)(1) and (f)(2). *Id.* But this language is not in this sentence of the regulation, and its presence in the very next sentence—"or the intermediate rate provisions outline above"—indicates that the VA knew how to differentiate between increases under subsection (f)(3) from those under the intermediate rate provisions in subsections (f)(1) and (f)(2). This difference suggests that the regulation is not cabined to a single half-step increase and that a veteran can receive a half-step increase under subsection (f)(3) after she or he is already entitled to one under the same subsection.[3]

The government's response asks the Court to examine the context of the two sentences in § 3.350(f)(3). VA Br. at 17–18. It asserts that the second sentence of subsection (f)(3) involves an entirely different

---

[3] The government also faults Mr. Barry for offering few explanations as to why the language of the regulation should unambiguously favor his interpretation (17), but that is not Mr. Barry's argument. Mr. Barry explains why the textual clues the Veterans Court majority relies on are not persuasive and contends that the structure of subsection (f)(3), in the context of the remainder of section (f), suggests that more than one half-step increase is permitted.

context from the first sentence because the second requires that the disability or disabilities be separate and distinct from those already specified earlier in section (f). *Id.* And it contends that the "only sensible understanding of the phrase 'if already entitled to an intermediate rate,' when coupled with the succeeding phrase 'to the next higher statutory rate'" is that a veteran "will instead receive the next higher statutory rate as a half-step increase (as opposed to receiving a full-step increase to the ***next*** intermediate rate)." *Id.* at 18 (emphasis in original).[4]

As an initial matter, even though the government appears to take contradictory positions on the importance of context, Mr. Barry agrees that context matters. *See e.g., Tyler v. Cain*, 533 U.S. 656, 662–63 (2001); *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 721 (Fed. Cir.

---

[4] Mr. Barry agrees that the language "if already entitled to an intermediate rate to the next higher statutory rate" means that the veteran will receive the next higher statutory rate as a half-step increase as opposed to receiving a full-step increase to the next intermediate rate. But this language does not limit the "intermediate rate" to which a further half-step can be added under (f)(3) to the rates outlined in (f)(1) and (f)(2). And it does not cabin a veteran who "is already entitled to an intermediate rate" under subsection (f)(3) from gaining at least another half-step increase "to the next higher statutory rate." *See infra* at 14–15.

1998). But the context of these two sentences of subsection (f)(3) are not "entirely different." *See* VA Br. at 17. Both are in the context of when a veteran is entitled to a half-step increase in SMC rate because of a single disability or a combination of disabilities independently ratable at 50 percent or more. 38 C.F.R. § 3.350(f)(3).

The government's response also appears to suggest that Mr. Barry's interpretation is nonsensical. VA Br. at 19 ("Mr. Barry's theory makes little sense because, under his interpretation, a veteran who is already at an intermediate rate pursuant to other SMC provisions and receives a half-step increase under subsection (f)(3) that bumps them to the next higher statutory rate would be disallowed from seeking a second subsection (f)(3) half-step increase…."). But the nonsensical result the government presents is not from Mr. Barry's interpretation but rather the government's incomplete reading of the text of the regulation. There are two different half-step increases possible under § 3.350(f)(3): (1) a half step increase from a statutory rate to an intermediate rate and (2) a half step increase from an intermediate rate to a statutory rate. This is reflected in the two prongs of the language in the regulation: "the next higher intermediate rate" and "if already

entitled to an intermediate rate to the next higher statutory rate." 38 C.F.R. § 3.350(f)(3).

Under Mr. Barry's interpretation, a veteran who is already at an intermediate rate pursuant to other SMC provisions can receive a half-step increase to the next statutory rate under the "is already entitled to an intermediate rate" language in the subsection (f)(3). She or he can then receive at least another half-step increase[5] to an intermediate rate under the "next higher intermediate rate" language. The government's response appears to forget this "next higher intermediate rate" language in the regulation. In the opposite situation where a veteran is entitled to a statutory rate from other provisions of the regulation, the first increase to an intermediate rate would be under the "next higher intermediate rate" prong, and the second increase to a statutory rate would be under the "if already entitled to an intermediate rate to the next higher statutory rate" prong and so on.

[5] It is Mr. Barry's position that the only limit on the number of half-step increases under subsection (f)(3) is the statutory cap. But, should this Court hold that 38 U.S.C. § 1114(p) permits a total of only one full-step increase or that more than two half-step increases under subsection (f)(3) is incongruous with subsection (f)(4), Mr. Barry submits that the text of the statute allows for at least two half-step increases.

To sum up, the textual clues the government points to in the regulation do not answer the question of the number of half-step increases permitted under § 3.350(f)(3). The surrounding context and relationship between subsections (f)(1) through (f)(4) of the regulation suggests that subsection (f)(3) can be applied more than once and can be used to achieve the intermediate rate to which at least one other half-step increase is added.

### B. Neither The Language Of 38 U.S.C. § 1114(p) Nor An Intrastatutory Comparison With 38 U.S.C. § 1114(k) Supports The Government's Interpretation.

In discerning the meaning of § 3.350(f)(3), the government contends that an intrastatutory comparison of two subsections of the governing statute, 38 U.S.C. §§ 1114(k) and (p), conclusively establishes that the VA's interpretation is the correct one. VA Br. at 20. But just like the Veterans Court majority, the government ignores a key distinction between these two subsections that undermine the intrastatutory comparison.

Subsection 1114(k) is a special SMC rate payment variation provision whereas §§ 1114(l) through (o) are steps of an SMC rate ladder to which § 1114(p) and its implementing regulations apply full

and half step increases. *See* 38 U.S.C. § 1114; Barry Br. at 29–32. Notably, § 1114(p) does not apply to § 1114(k). *See* 38 C.F.R. 3.350 (f)(3) and (f)(4). Subsection (k) can be applied multiple times, including on top of the specified amounts in §§ 1114(l) through (n), whereas a veteran can only qualify for one rate level under §§ 1114 (l) through (o). *See* U.S. Dep't of Veterans Affairs, *2023 VA Special Monthly Compensation Rates* (Nov. 29, 2022), https://www.va.gov/disability/compensation-rates/special-monthly-compensation-rates/. This key distinction undermines the application of the principle that, when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).

The government does not dispute that §§ 1114(k) and (p) deal with different subject subareas. VA Br. at 22–23. Its response criticizes Mr. Barry for "point[ing] to no authority for his supposition that the presumption only applies when the latter section of a statute specifically incorporates to or refers to an earlier section." VA Br. at 23.

But Mr. Barry makes no such supposition. In contending that an intrastatutory comparison between §§ 1114(k) and (p) does not support the Veterans Court majority's interpretation of § 1114(p) and its implementing regulation § 3.350(f)(3), Mr. Barry merely points out that context matters—as the government itself does when it argues against Mr. Barry's interpretation of the "if already entitled to an intermediate rate to the next higher statutory rate" language in the regulation. VA Br. at 17–18. The *Russello* presumption must still be considered in view of "the design of the statute as a whole and to its object and policy." *See Adams v. United States*, 117 Fed. Cl. 628, 659 (2014) (citing *Negusie v. Holder*, 555 U.S. 511, 519 (2009)) (internal citations omitted). Even case law the government cites emphasizes the importance of context. In *Johnson v. McDonald*, the Court held that "[e]ven if the term disability picture as used in other sections of the DVA regulations were construed as referring to the impact of a single disability," the "clear language and the use of the term 'disability picture' in the context of § 3.321(b)(1) refers to the collective impact of a veteran's 'service-connected disability or disabilities.'" 762 F.3d 1362, 1365–66 (Fed. Cir. 2014). The Veterans Court majority failed to appreciate the distinction

between the two statutory provisions when it found the intrastatutory comparison between §§ 1114(k) and (p) helpful in tipping its analysis towards a single half-step increase.

Moreover, the *Russello* presumption "grows weaker with each difference in the formulation of the provisions under inspection." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 435–36 (2002). Here, the formulations of §§ 1114(k) and (p), as well as their implementing regulations, are very different. Barry Br. at 29–32; *Compare* 38 C.F.R. § 3.350(a) *with* § 3.350(f). Subsection 1114(k) provides a rate of $96 per loss of use—such as of one or more creative organs, one foot, one hand, both buttocks, etc.—whereas § 1114(p) applies to different levels of disabilities with a monthly compensation of $3,327 to $4,667. 38 U.S.C. § 1114. The difference between the subsections of the SMC statute is further evident from the fact that subsection (k)'s "each such loss or loss of use" language does not fit within the context of subsection (p). Subsection (p) is not limited to anatomical losses or losses of use, but rather, it applies to a broader set of disabilities. Thus, the intrastatutory comparison between §§ 1114(k)

and (p) is not instructive as to the understanding of § 1114(p) or its implementing regulation § 3.350(f)(3).

Finally, in discussing the intrastatutory comparison between subsections (k) and (p) of § 1114, the government makes a similar argument regarding the use of the singular articles and terms in § 1114(p) to support the VA's interpretation of § 3.350(f)(3). VA Br. at 20–21. Subsection 1114(p) reads in pertinent part: "in the event the veteran's service-connected disabilities exceed the requirements for any of the rates prescribed in this section, the Secretary may allow ***the next higher rate or an intermediate rate***, but in no event in excess of $4,667." 38 U.S.C. § 1114 (emphasis added).

Mr. Barry submits that this language only indicates that Congress contemplated both half- and full-step increases for when a veteran's service-connected disabilities exceed the requirements of any of the rates prescribed in the statute. But should this Court find that the term "the next higher rate" in § 1114(p) limits a veteran to one full-step increase, it does not limit a veteran from achieving that full-step increase through two half-step increases. The most reasonable interpretation of the "an intermediate rate" language, which notably is

not "***the next higher*** intermediate rate," is that Congress realized a veteran can end up with a statutory rate or an intermediate rate under § 1114(p), depending on where they started on the SMC ladder. To read "an intermediate" rate as limiting a veteran to one-half step increase is to read a limitation into the statute that is not present.

Further, the government's citation to *Johnson v. McDonald*, does not merit a different conclusion. VA Br. at 23. *Johnson* does not address the textual issue the parties face here. In *Johnson*, the parties disputed whether 38 C.F.R. § 3.321 entitles a veteran to consideration for referral for extra-schedular evaluation based on a combination multiple disabilities. 762 F.3d at 1363.[6] The Veterans Court deferred to the VA's interpretation that Mr. Johnson's disabilities on a collective basis did not qualify him for referral for extra-schedular consideration. *Id.* at 1364. This Court disagreed, rejecting the argument that use of the term "disability picture" to refer to a single disability in other

---

[6] The regulation, in pertinent part, reads: "the Under Secretary for Benefits or the Director ... is authorized to approve…***an*** extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected ***disability or disabilities***." 38 C.F.R. § 3.321(b)(1) (emphasis added) (2012). It has since been amended in 2018 to change the relevant language in subsection (b)(1) to "disability." 38 C.F.R. § 3.321(b)(1) (2018).

sections of the VA's regulations limits this provision, which also uses the same language, to a single disability. *Id.* at 1365. Instead, this Court was persuaded that the regulation applies to both a single disability and a combination of disabilities because the language of the regulation authorized "an extra-schedular evaluation" arising from a "disability or disabilities." *Id.* Mr. Barry does not dispute that a half-step increase under § 3.350(f)(3) can arise from a single permanent disability or a combination of disabilities. That is not at issue here. But what is in dispute, and what was not addressed in the textual analysis in *Johnson*, is the number of times a provision can be applied. Thus, *Johnson* does not merit the conclusion that the use of the singular article in § 3.350(f)(3) limits a veteran to a single-half step increase.

### C. Mr. Barry's Interpretation Of § 3.350(f)(3) Does Not Undermine § 3.350(f)(4).

In contending that Mr. Barry's interpretation of subsection (f)(3) undermines subsection (f)(4), the government makes the same assumptions the Veterans Court majority did, that is (1) subsection (f)(4) can only be used once, (2) subsections (f)(3) and (f)(4) are mutually

exclusive,[7] and (3) subsection (f)(4) serves as a cap to subsection (f)(3). Barry Br. at 32–34. But none of these assumptions are reflected in the text of the regulation. Further, as Mr. Barry discusses, it is erroneous to assume that veterans with multiple disability ratings are less disabled. Barry Br. at 34–35. This Court in *Johnson* noted, in the context of extraschedular ratings, that "[i]t is not difficult to imagine that, in many cases, the collective impact of all of a veteran's disabilities could be greater than the sum of each individual disability's impact." 762 F.3d at 1366. Likewise, it is not difficult to imagine that the collective impact of a large constellation of disabilities totaling 320 percent[8] is greater than a single disability individually rated at 100 percent.

---

[7] While the government does not rely on the VA's *Adjudicative Procedures Manual* (M21-1) in its arguments, it cites to the manual (5–6), including language that suggests subsections (f)(3) and (f)(4) are mutually exclusive. While both the dissent and Mr. Barry disagree with the manual, *see* Appx27 and Barry Br. at 33–34, this argument has been waived since it was not raised to nor considered by the Veterans Court. *See Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1174 (Fed. Cir. 2019); *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008).

[8] The government suggests in its response that Mr. Barry is compensated for the disabilities for which he does not currently receive

While the Veterans Court majority never explained why allowing multiple half-step increases would be incongruous with the purpose of the SMC statute other than observing that subsection (f)(4) may have more restrictive requirements than subsection (f)(3), the government's response contends that Mr. Barry's interpretation conflicts with the VA's general approach to rating multiple conditions, as reflected in section § 4.25. VA Br. at 25 (citing 38 C.F.R. § 4.25). Under the combined ratings table, each additional disability is considered to add incrementally to the overall disability evaluation. But as the government acknowledges, § 4.25 does not apply to SMC calculations.[9]

---

SMC. VA Br. at 6 n.5. But it does not directly argue this or show why this is true other than noting that he is compensated under the VA Schedule with a 100 percent disability rating for his combined disabilities. *Id.* Mr. Barry's 2014 ratings decision—"100% from 04/19/2013 (Bilateral factor of 8.6 Percent for diagnostic codes 7804, 5051, 5051, 5251, 5251)"—does not take into account all of his disability ratings. Appx112; *see also* Appx109–111 (listing other diagnostic codes). And as the dissent observed, Mr. Barry has 12 additional compensable disabilities and, applying the VA's combined ratings table, Mr. Barry achieves a 100 percent rating when just his four highest rated disabilities are counted. Appx22. Thus Mr. Barry clearly has—and the government does not argue otherwise—uncompensated injuries, however the math is done.

[9] The government does not rely on *Gazelle v. Shulkin*, which did not consider § 3.350(f)(3). 868 F.3d 1006 (Fed. Cir. 2017). To the extent the

VA Br. at 25. And for good reason—by its nature, SMC is meant to be an exception to ordinary compensation. It is designed to cover veterans whose disabilities are beyond those contemplated by VA's schedule for rating disabilities. *Breniser v. Shinseki*, 25 Vet. App. 64, 68 (2011). Mr. Barry is in exactly that situation, given his constellation of disabling service-connected conditions.

Moreover, even if § 4.25 does apply to SMC calculations, it does not necessarily limit a veteran to a single half-step increase. As the dissent noted, applying § 4.25, Mr. Barry reaches a 100% rating when just his four highest rated additional disabilities are counted. Appx22. This leaves Mr. Barry with additional compensable disabilities that can thus be combined to obtain further half-step increases.

## II. The Pro-Veteran Canon Is Applicable Where Interpretive Doubt Remains After A Sustained Textual Analysis.

The Veterans Court majority erred in failing to consider the pro-veteran canon to ascertain the meaning of the regulation, even under the hierarchy of canons this Court laid out in *Kisor* denying rehearing

---

Court believes that *Gazelle* conflicts with the government's admission regarding § 4.25, Mr. Barry reserves the right to argue at an appropriate point that *Gazelle* was wrongly decided.

*en banc*. *Kisor v. McDonough*, 995 F.3d 1347, 1348 (Fed. Cir. 2021). While Mr. Barry submits that subordination of the veteran canon has no basis in Supreme Court case law (36–41), it at least applies here where a reasonable meaning cannot be discerned through the traditional tools of interpretation/a sustained textual analysis. *See* Appx26. As Mr. Barry explains, the textual clues are not dispositive; the intrastatutory comparison misses a key distinction between the subsections of the statute under examination; and the application of the canon against surplusage relies on restrictions not explicitly stated in the regulation. *See* Barry Br. at 29–35; Appx12 ("[T]he reality is that the plain language of § 3.350(f)(3) standing alone does not conclusively resolve the issue dividing the parties.").

As the government correctly observes, Mr. Barry does draw a distinction between "interpretive doubt" and "ambiguity" in arguing why the pro-veteran canon is applicable. VA Br. at 31 n.12. However, this is not to encourage a finding of ambiguity. Rather, Mr. Barry recognizes an apparent distinction in the case law between "interpretive doubt" and "ambiguity."

Interpretive doubt arises when "more traditional tools of construction," such as the meaning of the words, context of the regulation, and semantic canons fail to resolve the meaning of the regulation. *See Roby v. McDonough*, No. 2020-1088, 2021 WL 3378834, at *8 (Fed. Cir. Aug. 4, 2021) ("While the need to resort to the canon may be obviated where no interpretive doubt remains after consideration of more traditional tools of construction, once it is clear interpretive doubt remains, as the Veterans Court concluded, the pro-veteran canon of construction must be considered."); *see also Kisor v. McDonough*, 995 F.3d 1316, 1325–26 (Fed. Cir. 2021) (holding that the "interpretive doubt" precondition is not satisfied "where a sole reasonable meaning is identified through the use of ordinary textual analysis tools"); *Kisor v. McDonough*, 995 F.3d 1347, 1348 (Fed. Cir. 2021) (denying petition for rehearing en banc) (Prost, J., concurring) ("Put another way, courts must first seek the 'best reading' of the statute based on 'the words themselves,' 'the context of the whole statute,' and 'any other applicable semantic canons, which at the end of the day are simply a fancy way of referring to the general rules by which we understand the English language.'").

"Ambiguous," on the other hand, means "genuinely ambiguous" after a court has emptied the entire legal toolkit of statutory and regulatory interpretation. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) ("And when we use that term, we mean it—genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation."); *see id.* at 2415 ("To make that effort, a court must 'carefully consider[ ]' the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on.").

This suggests that a regulation can fall within the realm of "interpretive doubt" without being genuinely ambiguous and invoking deference. *See* Appx26. It is this realm that Mr. Barry contends § 3.350(f)(3) falls under.

The government asserts that even if the Court applies the pro-veteran canon, it does not automatically invalidate a regulation. VA Br. at 33. Mr. Barry agrees. The government's concern that the pro-veteran canon would negate deference to the VA's interpretation is unfounded. *See* VA Br. at 34. The application of the pro-veteran canon is one piece of the interpretive toolkit and not meant to usurp the other pieces. This was evident in *NOVA v. Secretary of Veterans Affairs*,

where this Court considered, among other interpretive tools, the pro-veteran canon. 260 F.3d 1365, 1377–78 (Fed. Cir. 2001). Holding that these "usual tools for resolution…push[ed] in opposite ways," the Court then went to consider *Chevron* deference. *Id.* at 1377–79. *NOVA* demonstrates that the pro-veteran canon and agency deference can coexist.

The government also cites a few cases that purportedly demonstrates, that under certain circumstances, the VA is owed deference without resort to the pro-veteran canon. VA Br. at 33–34. But neither *Smith v. Shinseki*, 647 F.3d 1380 (Fed. Cir. 2011) nor *Smith v. Nicholson*, 451 F.3d 1344 (Fed. Cir. 2006) substantively discusses the pro-veteran canon and its role in statutory interpretation. And while *Sears v. Principi*, 349 F.3d 1326 (Fed. Cir. 2003) does address the pro-veteran canon, the government agrees that this Court is divided on the role of the pro-veteran canon in relation to deference to the VA's interpretation. VA Br. at 30 n.11.

While Mr. Barry submits that the pro-veteran canon points towards a least two-half step increases, the Veterans Court majority erred in not considering it at all. It used the wrong analytical

framework in ascertaining the meaning of § 3.350(f)(3). Whatever the outcome, the pro-veteran canon is an important piece of the regulatory interpretive toolkit and should have been applied.

## III. The Legislative History And VA's Duty To Maximize Counsel For A More Flexible Approach To § 3.350(f)(3).

Congress's intent when it amended § 1114 in 1945 was to provide "a more flexible scale for the authorization of monetary benefits to the most severely disabled veterans" and to recognize the difference "between double amputations at various levels." Barry Br. at 46–47 (quoting S. Rep. No. 79-549, at 1 (1945); H.R. Rep. No. 79-934, at 2 (1945)). Among the amendments to § 1114 was the addition of two new subsections, one of which is now subsection (p). H.R. Rep. No. 79-934, at 3–4 (1945). Congress also amended then subsections (k) through (o) to add qualifying conditions. *Id.* The government does not dispute any of this.

Instead, the government argues that because then subsection (q), now subsection (p), "is not the primary provision through which Congress sought to better compensate the most severely injured veterans," the legislative history does not support Mr. Barry's interpretation. VA Br. at 26–27. As an initial matter, Congress

intended to provide a more flexible compensation scale, and subsection (p) speaks squarely to that because it allows veterans to obtain half- or full-step increases in the compensation scale. Thus, it is not clear from where the government derives its support for its "primary provision" argument.

Furthermore, the government does not explain why subsection (p) must be the "primary provision" effectuating Congress's intent for this Court to consider this intent in its analysis of subsection (p). Even if other provisions of the statute were amended to include extra compensation for different levels of loss of use, this does not mean that Congress's intent for a more flexible compensation scale also does not extend to § 1114(p). It was one of the two subsections that Congress explicitly added to the statute. And the government further fails to explain why this intent does not tip the scales in favor of a more liberal interpretation of the regulation implementing § 1114(p) as Mr. Barry asserts.

Moreover, the government points to different iterations of the regulation, noting that in each iteration, the same singular articles are used to allow "the next higher rate" or "an intermediate rate." VA Br.

at 27–28. But as previously discussed and acknowledged by the Veterans Court majority, the use of this singular language is not dispositive of the number of half-steps permitted under § 3.350(f)(3). That it has been in the regulation since the introduction of subsection (p) does not answer the question facing the Court.

Finally, the government asserts that this Court should not consider the duty to maximize benefits because it does not apply to statutory or regulatory interpretation. VA Br. at 36. But the language the government cites in *Morgan v. Wilkie*, 31 Vet. App. 162, 167 (2019) (citation omitted) and *AB v. Brown*, 6 Vet. App. 35, 38 (1993) is not definitive. At best, it implies that the VA's duty to maximize may not be a tool in the statutory and regulatory interpretation toolkit. But other cases from this Court where the VA's duty to maximize was discussed alongside other tools of interpretation suggest otherwise. *See Walleman v. McDonough,* 35 Vet. App. 294, 306 (2022)*; Bailey v. Wilkie*, 33 Vet. App. 188, 196–97 (2021). And even if the VA's duty to maximize benefits is not a tool of statutory or regulatory interpretation, Mr. Barry's interpretation is most consistent with this duty and the recognition that the VA is not an ordinary agency but rather, one with a

statutory duty to help veterans develop their benefits claims. *See Shinseki v. Sanders*, 556 U.S. 396, 412 (2009).

Thus, both the legislative history and the VA's duty to maximize support a more liberal reading of § 3.350(f)(3) that permits more than a single half-step increase in SMC rate.

**CONCLUSION**

The Court should reverse the judgment of the Veterans Court and remand with instructions for the Board to consider Mr. Barry's SMC entitlement under the correct interpretation of § 3.350(f)(3).

April 3, 2023

Kenneth H. Dojaquez
CARPENTER CHARTERED
P.O. Box 2099
Topeka, KS 66601

Respectfully submitted,

*/s/ Jingyuan Luo*

Jingyuan Luo
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Melanie L. Bostwick
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this brief contains 6790 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Jingyuan Luo*
Jingyuan Luo
*Counsel for Appellant*