# United States Court of Appeals for the Federal Circuit

---

**DANIEL D. BARRY,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-1747

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-3367, Judge Grant Jaquith, Judge Joseph L. Falvey, Jr, Judge Michael P. Allen.

---

Decided: May 16, 2024

---

JINGYUAN LUO, Orrick, Herrington & Sutcliffe LLP, Menlo Park, CA, argued for claimant-appellant. Also represented by MELANIE L. BOSTWICK, Washington, DC; KENNETH DOJAQUEZ, Carpenter Chartered, Topeka, KS.

MARTIN F. HOCKEY, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by SOSUN BAE, BRIAN M. BOYNTON, PATRICIA M. MCCARTHY; BRIAN D. GRIFFIN, ANDREW J. STEINBERG,

Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before LOURIE, PROST, and REYNA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* PROST.

Dissenting opinion filed by *Circuit Judge* LOURIE.

PROST, *Circuit Judge*.

Daniel D. Barry appeals a final decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") limiting his entitlement to additional special monthly compensation ("SMC"). *Barry v. McDonough*, 35 Vet. App. 111 (2022) ("*Decision*"). In the underlying proceedings, Mr. Barry argued that the Board of Veterans' Appeals ("Board") should have considered his entitlement to multiple SMC increases, rather than just one, under 38 C.F.R. § 3.350(f)(3).[1] A majority of the Veterans Court disagreed and interpreted § 3.350(f)(3) to permit only one SMC increase, regardless of how many qualifying disabilities Mr. Barry could demonstrate. As we explain below, § 3.350(f)(3) does not limit how many SMC increases can be provided; instead, it is a mandatory entitlement that can apply multiple times, subject to a statutory cap. We thus reverse and remand.

BACKGROUND

I

The United States recognizes the sacrifices that veterans like Mr. Barry make when they serve our country. Whenever a veteran has a "disability resulting from personal injury suffered . . . in line of duty . . . during a period

---

1 The text of the statutory and relevant regulatory provisions are set out in the appendix.

of war" the United States "will pay" that veteran. 38 U.S.C. § 1110. Congress has outlined these payments in 38 U.S.C. § 1114. The exact amount of compensation for a disabled veteran depends on that veteran's disability rating. The compensation amount increases as the disability rating increases in increments of 10%, with the maximum at a 100%, or total, rating. 38 U.S.C. § 1114(a)–(j).

Congress recognized, however, that veterans may have additional disabling conditions that warrant extra compensation beyond the compensation for a total disability rating. It therefore enacted SMC provisions to provide extra compensation to "exceptionally disabled veterans who are rated as totally disabled." *Guerra v. Shinseki*, 642 F.3d 1046, 1048 (Fed. Cir. 2012). The details of these SMC provisions are listed in § 1114(k)–(t). Demonstrating eligibility for SMC requires a veteran to show specific disabling conditions.

It was recognized early on that the specificity of these provisions could potentially lead to arguable inequities. For example, while a veteran may not be able to show "the anatomical loss of both legs with factors that prevent the use of prosthetic appliances," as § 1114(n) specifically requires, he may have other disabilities with an equivalent cumulative impact. Thus, to allow for more flexibility, Congress amended the predecessor to § 1114 in 1945 "to provide additional rates of compensation or pension and remedy inequalities as to specific service-incurred disabilities in excess of total disability." Act of September 20, 1945, Pub. L. No. 79-182, ch. 369, sec. 1, 59 Stat. 533, 533. It did so by adding subsection (p), which at the time stated that, "[i]n the event the disabled person's service-incurred disabilities exceed the requirements for any of the rates prescribed herein, the Administrator, in his discretion, may allow the next higher rate or an intermediate rate, but in no event in excess of" the statutory cap. *Id.* sec. 1, 59 Stat. at 534. This subsection provided the Administrator (now the Secretary of Veterans Affairs ("Secretary"))

discretion to fairly compensate a veteran for additional disabilities for which Congress did not specifically provide.

Section 1114(p) exists in substantially the same form today. The relevant portion here provides that, "in the event the veteran's service-connected disabilities exceed the requirements for any of the rates prescribed in this section, the Secretary may allow the next higher rate or an intermediate rate, but in no event in excess of" a statutory cap. 38 U.S.C. § 1114(p). The intermediate rate in § 1114(p) is "the arithmetic mean, rounded down to the nearest dollar, between the two rates concerned."

The Secretary has implemented § 1114(p)'s discretionary clause in various provisions of 38 C.F.R. § 3.350(f). Section 3.350(f)(3), our focus in this case, provides:

> ***Additional independent 50 percent disabilities.*** In addition to the statutory rates payable under 38 U.S.C. 1114 (*l*) through (n) and the intermediate or next higher rate provisions outlined above, *additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more will afford entitlement to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. 1114*, but not above the (o) rate. In the application of this subparagraph the disability or disabilities independently ratable at 50 percent or more must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitlement under 38 U.S.C. 1114 (*l*) through (n) or the intermediate rate provisions outlined above. The graduated ratings for arrested tuberculosis will not be utilized in this connection, but the permanent residuals of tuberculosis may be utilized.

38 C.F.R. § 3.350(f)(3) (first emphasis in original, all other emphasis added).

## II

Mr. Barry served in the Army from July 31, 1969, to November 18, 1971. He earned a Purple Heart for his service after being injured during combat. His resulting injuries were, and are, significant. At the time, they required an open amputation of his right leg above the knee. He also suffered an extensive loss of tissue on his left leg that exposed his tibia, had fragment wounds in his right hand and eye, and received injuries to both ears. In all, Mr. Barry remained in the hospital for thirteen months until he received disability retirement from the military.

The Department of Veterans Affairs ("VA") initially gave Mr. Barry a 100% disability rating and awarded him SMC. After receiving several subsequent rating decisions, Mr. Barry received the rating decision at issue here in December 2014. His compensated disabling conditions include the amputation of his right leg above the knee, rated at 100%, the loss of use of his left foot, the loss of use of his left leg, and a constellation of other conditions related to his legs and feet. Based on these ratings, Mr. Barry received SMC at the rate specified in 38 U.S.C. § 1114(m) and received an intermediate-rate increase in his SMC under 38 C.F.R. § 3.350(f)(3).

Mr. Barry does not receive SMC, however, for his many other disabling conditions: post-traumatic stress disorder, rated at 70%; right shoulder arthritis, rated at 60%; left shoulder arthritis, rated at 50%; left eye injury with glaucoma, rated at 30%; left eye disfigurement, rated at 30%; bilateral hearing loss, rated at 20%; lumbar spine injury, rated at 10%; right hand injury, rated at 10%; left and right hip joint disease, rated at 10% each; hypertension, rated at 10%; and tinnitus, rated at 10%.

III

Mr. Barry appealed the 2014 rating decision to the Board, arguing that he should receive an SMC increase above what he was already awarded, based on his additional uncompensated disabilities listed above. The Board initially denied his appeal, but the Veterans Court remanded for further explanation and consideration of potential additional SMC entitlement. The Board then concluded that Mr. Barry could not show entitlement to an SMC increase under 38 C.F.R. § 3.350(f)(4) (a conclusion we do not address here).

Mr. Barry appealed the Board's determination to the Veterans Court. Mr. Barry principally argued that the Board erred by not considering whether he would be entitled to an additional SMC increase under 38 C.F.R. § 3.350(f)(3). Since Mr. Barry had already received one SMC increase under § 3.350(f)(3), the Veterans Court framed the question as whether § 3.350(f)(3) entitled a veteran to only one SMC increase or whether a veteran could increase his SMC under § 3.350(f)(3) more than once. *Decision*, 35 Vet. App. at 122.

In a split decision, the Veterans Court panel majority concluded that 38 C.F.R. § 3.350(f)(3) could provide for only one SMC increase. *Id.* at 120–24. In reaching this conclusion, the majority first reasoned that the text of § 3.350(f)(3) contemplated only one increase in SMC. *Id.* at 122. The majority also determined that the text of 38 U.S.C. § 1114(p), the statutory provision providing authority for § 3.350(f)(3), pointed toward the same interpretation. *Id.* Further, the majority compared § 3.350(f)(3) to other SMC provisions and concluded that the differences in language indicated that § 3.350(f)(3) provides for only one increase in SMC. *Id.* at 122–23. Finally, the majority determined that reading § 3.350(f)(3) to provide for more than one SMC increase would render another provision, § 3.350(f)(4), superfluous. *Id.* at 123–24.

The dissent disagreed. It first noted that 38 C.F.R. § 3.350(f)(3) provides no limits on how many times it may apply. *Id.* at 129 (Jacquith, J., dissenting in part). Rather, the dissent concluded, § 3.350(f)(3)'s plain text shows that it can apply more than once. *Id.* at 129–30. The dissent further noted that the majority's comparison with other statutory and regulatory SMC provisions did not warrant the conclusions the majority drew. *Id.*

Mr. Barry appeals the Veterans Court's decision.

## DISCUSSION

### I

We have jurisdiction to review the Veterans Court's interpretation of regulations. *See* 38 U.S.C. § 7292(c); *Augustine v. Principi*, 343 F.3d 1334, 1337 (Fed. Cir. 2003). On appeal, Mr. Barry presents a pure legal argument about the interpretation of 38 C.F.R. § 3.350(f)(3) relied upon by the Veterans Court. We thus have jurisdiction to review his argument here.

### II

When interpreting a regulatory provision, we apply the rules of statutory construction. *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017). To this end, we examine the "text, structure, history, and purpose" of a regulation to determine its meaning. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). As always, we first "examine the regulatory language itself to determine its plain meaning." *Hanser v. McDonough*, 56 F.4th 967, 970 (Fed. Cir. 2022) (quoting *Goodman*, 870 F.3d at 1386). "If the regulatory language is clear and unambiguous, the inquiry ends with the plain meaning." *Id.* (quoting *Goodman*, 870 F.3d at 1386). Importantly, "the plain meaning that we seek to discern is the plain meaning of the whole statute or regulation, not of isolated sentences." *Boeing Co. v. Sec'y of Air Force*, 983 F.3d 1321, 1327 (Fed. Cir. 2020) (cleaned up).

## III

We now turn to the question here: whether 38 C.F.R. § 3.350(f)(3) provides for only one increase in SMC or whether it can provide for more than one SMC increase in instances such as this, where the veteran has additional ratings for uncompensated disabilities. We first analyze the text of the provision itself and explain why the isolated text does not decide this issue. We then analyze the statutory and regulatory context and explain why it demonstrates that § 3.350(f)(3) unambiguously can provide for more than one SMC increase, subject to a statutory cap on benefits. *See* 38 C.F.R. § 3.350(f)(3) ("not above the [38 U.S.C. § 1114](o) rate").

### A

We begin with 38 C.F.R. § 3.350(f)(3)'s text. Both Mr. Barry and the government offer competing arguments for why the text of § 3.350(f)(3) alone unambiguously supports their positions. As we explain, however, § 3.350(f)(3)'s isolated text does not definitively resolve our inquiry.

The government makes two textual arguments. It first invokes language providing for an increase to "*the* next higher intermediate *rate*" or "*the* next higher statutory *rate*." 38 C.F.R. § 3.350(f)(3) (emphasis added). The government argues that § 3.350(f)(3)'s use of the singular "rate" implies that only one intermediate-rate increase is permitted.

But the text is not so clear. Discerning meaning from the use of a singular instead of a plural form is a recognized rule of interpretation. *Johnson v. McDonald*, 762 F.3d 1362, 1365 (Fed. Cir. 2014). But the singular "rate" in § 3.350(f)(3) is consistent with both the government's interpretation and another interpretation—that the use of "the next higher intermediate rate" or "the next higher statutory rate" merely specifies the new rate after applying § 3.350(f)(3)'s SMC increase. Under the second

interpretation, § 3.350(f)(3)'s increase could apply more than once. So while the government's argument is not unmoored from the text, the singular "rate" is consistent with both competing interpretations here. Thus, the singular "rate" on its own does not determine how many SMC increases § 3.350(f)(3) permits. *Jones v. United States*, 526 U.S. 227, 238 (1999) ("But what we make of the singular-plural distinction turns on the circumstances."); *see Sursely v. Peake*, 551 F.3d 1351, 1356 (Fed. Cir. 2009) (concluding that "it is impossible to determine the proper boundaries of the Secretary's authority pursuant to § 1162 with reference only to the singular nature of the indefinite article 'a'"); *cf. Pulsifer v. United States*, 144 S. Ct. 718, 728–30 (2024) (concluding that a grammatical rule involving the use of "and" versus "or" in the First Step Act did not resolve an interpretive question where that rule was consistent with two competing interpretations).[2]

The government also argues that the use of "or" between "additional single permanent disability" and "combinations of permanent disabilities" means that only one of an additional single permanent disability or a combination of permanent disabilities can provide for an SMC increase

---

[2] We note in passing that, if indeed § 3.350(f)(3) were intended to clearly provide for just *one* intermediate-rate SMC increase, its text makes for an odd choice. Again, it says that certain "additional single permanent disability or combinations of permanent disabilities" can provide for its intermediate-rate SMC increase. 38 C.F.R. § 3.350(f)(3). Not only does it not say "*an*" "additional . . . disability," which might have further connoted "just one"; it uses "combinations" *plural*, when it very well could have used the singular "combination." While too thin to definitively provide for multiple intermediate-rate SMC increases, this language further suggests the government reads too much into the singular "rate."

under 38 C.F.R. § 3.350(f)(3). The government infers from this that § 3.350(f)(3) can provide for only one SMC increase even where, as here, the veteran may qualify for additional SMC increases based on uncompensated disabilities.

We reject the government's reading. "The word 'or' simply signifies that either" a single additional disability or a combination of disabilities "is *sufficient* to qualify for the" SMC increase. *See Sursely*, 551 F.3d at 1357 (emphasis in original). "It implies nothing about whether, after the veteran has been awarded" one SMC increase under § 3.350(f)(3), "the veteran can *also* be considered for" an additional SMC increase based on additional uncompensated disabilities. *See id.* (emphasis in original); *cf. Pulsifer*, 144 S. Ct. at 729 (explaining that the conjunction "or" in context did not resolve a dispute over meaning).

Mr. Barry offers the contrary view that the plain text unambiguously shows that 38 C.F.R. § 3.350(f)(3) can provide for more than one SMC increase. He argues that, because § 3.350(f)(3) provides for an SMC increase when a veteran is "already entitled to an intermediate rate," the veteran could have arrived at that intermediate rate under a previous application of § 3.350(f)(3).

The language he cites, however, does not clearly establish the meaning he seeks to elicit. Section 3.350(f)(1) and (2) provide for intermediate-rate SMC increases that are unrelated to the increase in § 3.350(f)(3). Therefore, the "already entitled to an intermediate rate" language in § 3.350(f)(3) could refer to these other provisions providing an intermediate-rate SMC increase and *not* a prior increase under § 3.350(f)(3). The only other pertinent language discusses how the disability or disabilities conferring § 3.350(f)(3)'s intermediate-rate increase must be "separate and distinct" from those giving increases under § 3.350(f)(1) or (2). While no language forecloses multiple SMC increases under § 3.350(f)(3), there is likewise no

language unambiguously providing for multiple SMC increases. Mr. Barry's argument, like the government's argument regarding the singular "rate," does not definitively resolve the question here.

Therefore, as the Veterans Court majority recognized, "the plain language of § 3.350(f)(3) standing alone does not conclusively resolve the issue dividing the parties." *Decision*, 35 Vet. App. at 122. Having elicited all we can from the isolated text of § 3.350(f)(3), then, we turn to context.

B

1

The broader statutory and regulatory context unambiguously shows that 38 C.F.R. § 3.350(f)(3) can provide for more than one SMC increase.

Consider how 38 U.S.C. § 1114 and 38 C.F.R. § 3.350 operate in tandem. Congress and the VA have set eligibility requirements for compensation and SMC. To qualify for compensation, a veteran must have a disability with a specified rating. 38 U.S.C. § 1114(a)–(j); *see also id.* § 1155 (requiring the Secretary to adopt a schedule of disability ratings). Showing SMC eligibility requires that a veteran demonstrate specific disabling conditions, often beyond the conditions conferring original entitlement to compensation. *Id.* § 1114(k)–(t). Section 3.350 reflects these same SMC eligibility requirements.

Once a veteran demonstrates SMC eligibility, the relevant provisions mandate an SMC award or increase. For example, 38 U.S.C. § 1114(k) states that "the rate of compensation *shall be* $96 per month for each such loss or loss of use." *Id.* § 1114(k) (emphasis added). Portions of 38 U.S.C. § 1114(p), separate from its discretionary clause, provide that "the Secretary *shall* allow the next intermediate rate" or "the next higher rate" when a veteran has certain disabling conditions. *Id.* § 1114(p) (emphasis added). And even the regulatory provision at issue here is

mandatory: it provides that "additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more *will afford entitlement* to the next higher intermediate rate." 38 C.F.R. § 3.350(f)(3); *see also Augustine*, 343 F.3d at 1338 (concluding that § 3.350(f)(3) is mandatory). In this situation, the statutory and regulatory provisions "establish[] a baseline rule that, absent some other limitation, the VA must pay a veteran's benefits." *Rudisill v. McDonough*, 144 S. Ct. 945, 954 (2024); *see also Sursely*, 551 F.3d at 1356 n.4 ("Because the statute speaks in mandatory language, the Secretary is in fact required to pay multiple clothing allowances to a veteran who, as determined under the Secretary's regulations, uses multiple qualifying appliances.").

The only relevant "other limitation" here comes in the form of a statutory compensation cap. For example, 38 U.S.C. § 1114(k) provides a $96 increase in SMC for each specified anatomical loss or loss of use, with a cap on compensation. And § 1114(p), which provides authority for the intermediate-rate SMC increase in 38 C.F.R. § 3.350(f)(3), identifies a cap beyond which SMC cannot increase.[3]

Taken together, these provisions describe an SMC program that has: (1) eligibility requirements to show entitlement to SMC or SMC increases; (2) mandatory SMC awards or increases; and (3) an SMC cap. At least for 38 U.S.C. § 1114(p), insofar as it relates to our interpretation of 38 C.F.R. § 3.350(f)(3) here, Congress did not add additional limitations or requirements, nor should we. We do not add limitations to the statutory scheme that are not reflected in the text of the law Congress passed. *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1900 (2019) ("[I]t is

---

[3] Even apart from the authorizing statutory provision of § 1114(p), the regulatory provision 38 C.F.R. § 3.350(f)(3) includes a cap. *See, e.g.*, 38 C.F.R. § 3.350(f)(3) ("but not above the [§ 1114](o) rate").

our duty to respect not only what Congress wrote but, as importantly, what it didn't write."). Likewise, we do not add terms to a regulatory provision that the Secretary did not include. Here, that means we will not add a limitation on how many times § 3.350(f)(3) can provide for an SMC increase that does not otherwise exist.

Other veterans-benefits regulations confirm our conclusion here. "[I]t is a common tool of statutory construction to consider what words or phrases mean in nearby statute sections or related regulations." *Palm Beach Cnty. v. Fed. Aviation Admin.*, 53 F.4th 1318, 1335 (11th Cir. 2022); *see also Hanser*, 56 F.4th at 970 ("Regulatory interpretation, like statutory interpretation, 'is a holistic endeavor that requires consideration of a [regulatory] scheme in its entirety.'" (alteration in original) (quoting *Meeks v. West*, 216 F.3d 1363, 1366 (Fed. Cir. 2000))). The VA has issued regulations specifying that certain benefits cannot be obtained more than once. *E.g.*, 38 C.F.R. § 21.7143(b) ("The individual may choose to receive benefits under 38 U.S.C. chapter 33 at any time, but not more than once during a certified term, quarter, or semester."); *see also Urban v. Shinseki*, 452 F. App'x 980, 983 (Fed. Cir. 2011) (nonprecedential) ("At the time of Mr. Urban's death, regulations established that the assistance available under section 2101 would 'not be available to any veteran more than once.'" (quoting 38 C.F.R. §§ 3.809, 3.809a (1997))). The absence of any similar limit in 38 C.F.R. § 3.350(f)(3) confirms our conclusion that this provision permits more than one SMC increase.

In sum, as long as Mr. Barry is entitled to an intermediate-rate SMC increase under 38 C.F.R. § 3.350(f)(3), he shall receive it, subject to the explicit cap. Thus, § 3.350(f)(3), in the context of other statutory and regulatory provisions, unambiguously allows for more than one intermediate-rate SMC increase. We decline the government's invitation to read in new requirements that Congress and the Secretary did not create.

2

The government offers multiple structural arguments involving other statutory and regulatory language that it contends support the opposite conclusion. The first set of arguments involves an intrastatutory comparison between 38 U.S.C. § 1114(k) and (p) and an intraregulatory comparison between 38 C.F.R. § 3.350(a) and (f)(3). Section 1114(k) provides for a specified SMC increase "*for each* such loss or loss of use" of enumerated organs and bodily functions, § 1114(k) (emphasis added), and section 3.350(a), which implements § 1114(k), mirrors § 1114(k)'s text for the purposes here. Section 1114(p)'s discretionary clause, on the other hand, provides that "in the event the veteran's service-connected disabilities exceed the requirements for any of the rates prescribed in this section, the Secretary may allow *the next higher rate or an intermediate rate*." § 1114(p) (emphasis added). And § 3.350(f)(3), which gets its authority from § 1114(p), provides that additional disabilities (or combinations) independently rated at 50% or more "will afford entitlement to the next higher intermediate rate." The government argues that, because § 1114(k) and § 3.350(a) give SMC increases "for each" listed condition, and because § 1114(p) and § 3.350(f)(3) do not say "for each," we should infer—and conclude—that the latter two provisions do *not* provide for an SMC increase for each qualifying 50%-or-more disability (or combination).

In advancing this argument, the government relies on the well-recognized principle, sometimes called the meaningful-variation canon, that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up). As the Supreme Court has recently recognized, however, "[t]he principle is mostly applied to terms with some heft and distinctiveness, whose

use drafters are likely to keep track of and standardize." *Pulsifer*, 144 S. Ct. at 735. In *Pulsifer*, the Court distinguished terms like "principal activity" and "money remuneration," which were terms with the "heft" to warrant applying the meaningful-variation canon, from the ordinary conjunctions "and" and "or," which were "ubiquitous" and "sometimes context-dependent" words such that the meaningful-variation canon might not apply. *Id.* This presumption of meaningful variation also "grows weaker with each difference in the formulation of the provisions under inspection." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 436 (2002).

These limitations on the meaningful-variation canon undermine the strength that the government's intrastatutory and intraregulatory comparisons might have in a vacuum. To start, the words "for each" lack the "heft and distinctiveness" to warrant the application of the meaningful-variation canon in this circumstance. *See Pulsifer*, 144 S. Ct. at 735. Far from terms like "principal activity" or "money remuneration," they are instead common words with a "sometimes context-dependent" meaning, and we have no reason to expect that Congress (or the Secretary) would ensure consistent usage of the common phrase "for each" throughout a statute (or regulation). *See id.*

The operational differences between § 1114(k) and (p) also undermine the strength of the meaningful-variation canon here. Section 1114(k) enumerates several different disabling conditions that give a relatively minor SMC increase. Because this section provides a small SMC increase per condition, its operation could be undermined without specifying that *each* condition independently confers an increase in SMC. Without "for each," § 1114(k) could be read to give just one single SMC increase for any number of the enumerated disabling conditions connected by the disjunctive "or." So "for each" merely clarifies the common-sense operation intended by the text: if a veteran has several of the listed conditions, he gets several minor SMC increases.

Section 1114(p)'s discretionary clause, in contrast, gives the Secretary discretion to determine when a veteran may receive an intermediate-rate SMC increase. By delegating to the Secretary discretion to determine how many intermediate-rate SMC increases a veteran may receive, Congress expressed its choice not to cabin the number of possible intermediate-rate SMC increases in § 1114(p)'s discretionary clause. Specific limitations on how many intermediate-rate SMC increases a veteran may receive would instead come from the relevant regulatory provisions, other non-regulatory determinations by the Secretary), or the broader SMC statutory and regulatory structure. *Cf. Augustine*, 343 F.3d at 1338 (concluding that 38 C.F.R. § 3.350(f)(3) is mandatory even though 38 U.S.C. § 1114(p) is discretionary). The operational differences between 38 U.S.C. § 1114(k) and (p) mean that the presence of "for each" in § 1114(k), and their absence in § 1114(p), does not provide much information about whether these linguistic differences reflect a congressional choice to limit § 1114(p)'s discretionary clause to providing *one* intermediate-rate SMC increase. *See City of Columbus*, 536 U.S. at 436.

We similarly conclude that the operational differences between 38 C.F.R. § 3.350(a) and (f)(3) undermine the force of the meaningful-variation canon here. Section 3.350(a) specifies that it provides for an SMC increase "for each" enumerated condition to clarify that it provides for multiple such SMC increases, as we explained above regarding 38 U.S.C. § 1114(k). Section 3.350(f)(3) works differently. It provides for an intermediate-rate SMC increase "[i]n addition to the statutory rates payable" under § 1114(*l*)–(n). 38 C.F.R. § 3.350(f)(3). By its terms, § 3.350(f)(3) applies in a narrower set of circumstances than § 3.350(a), which can provide its SMC increase in addition to the rates established in 38 U.S.C. § 1114(a)–(n) and (s). Moreover, unlike § 3.350(a), § 3.350(f)(3) does not enumerate the disability or combination of disabilities that can confer its

intermediate-rate SMC increase; instead, it provides for an increase for any disability or combination of disabilities "independently ratable at 50 percent or more" that is "separate and distinct and involve[s] different anatomical segments or bodily systems" from those already conferring SMC under § 1114(*l*)–(n) or the other intermediate-rate SMC increases in § 3.350(f). Since § 3.350(f)(3) does not enumerate the universe of disabling conditions (or combinations thereof) that can confer its SMC increase, it lacks § 3.350(a)'s need to clarify that it is not limited to one single application. Put simply, the two regulatory provisions operate too differently to place much weight on the meaningful-variation canon.

We further note that the meaningful-variation canon points both ways in this case. As we referenced above, other VA regulations addressing different benefits explicitly restrict a veteran to receiving those benefits only once. The inconsistency with how Congress and the VA have spoken to the issue of how many times a veterans-benefits provision can apply further undermines the informative power of the meaningful-variation canon here.

Additionally, the implications of the government's intrastatutory comparison are in tension with how 38 C.F.R. § 3.350(f)(3) operates. According to the government, 38 U.S.C. § 1114(p)'s discretionary clause permits only one intermediate-rate SMC increase. But 38 C.F.R. § 3.350(f)(3)'s intermediate-rate SMC increase contemplates the possibility of a prior intermediate-rate SMC increase under § 3.350(f)(1) or (2). Many of the intermediate-rate SMC increases in § 3.350(f)(1) and (2) receive their authority from 38 U.S.C. § 1114(p)'s discretionary clause. The government's reading of § 1114(p)'s discretionary clause seems to prohibit multiple intermediate-rate SMC increases and might prevent, for example, an intermediate-rate increase under 38 C.F.R. § 3.350(f)(1) and a subsequent intermediate-rate increase under § 3.350(f)(3). The inconsistency between the government's argument and the

operation of § 3.350(f)(3) is another reason that we find the government's meaningful-variation argument unpersuasive.

On the whole, and in view of our analysis of a statutory and regulatory scheme mandating intermediate-rate SMC increases, the presence of "for each" in 38 U.S.C. § 1114(k) and 38 C.F.R. § 3.350(a), and their absence in 38 U.S.C. § 1114(p) and 38 C.F.R. § 3.350(f)(3), does not persuade us to infer a limitation on the number of SMC increases provided for by § 3.350(f)(3) that is simply not there.

The government second argues that reading 38 C.F.R. § 3.350(f)(3) to provide for multiple SMC increases renders § 3.350(f)(4) superfluous. Section 3.350(f)(4) provides for an increase to the next statutory rate, or the next intermediate rate if already entitled to an intermediate rate, based on "additional single permanent disability independently ratable at 100 percent"; in other words, § 3.350(f)(4) gives what equates to two intermediate-rate increases (compared to § 3.350(f)(3)'s single intermediate-rate increase). Section 3.350(f)(4) has a stricter eligibility requirement than § 3.350(f)(3). According to the government, "[i]f a veteran cannot meet the criteria in subsection (f)(4) for a full-step increase, it would be odd indeed to allow a veteran to qualify for a full-step increase or even more through multiple half-step increases via subsection (f)(3)." Appellee's Br. 24. But this is not odd at all. The disability or combination of disabilities providing an intermediate-rate SMC increase under § 3.350(f)(3) must be "separate and distinct and involve different anatomical segments or bodily systems" from the disabling condition(s) providing a previous SMC increase. It is entirely plausible that a veteran with two distinct and additional disabilities, in two different anatomical segments or bodily systems, rated at 50% or greater warrants a higher SMC rate than a veteran with one distinct and additional disability rated at 100%. We thus reject the government's surplusage argument.

## CONCLUSION

Section 3.350(f)(3), read in the context of other statutory and regulatory provisions, unambiguously permits multiple intermediate-rate SMC increases. The Veterans Court's contrary interpretation cannot stand. We thus reverse and remand for further proceedings, including the calculation of the number of intermediate-rate SMC increases Mr. Barry should receive.

**REVERSED AND REMANDED**

## COSTS

Costs to Mr. Barry.

APPENDIX

**38 U.S.C. § 1114 – Rates of wartime disability compensation**

For the purposes of section 1110 of this title—

(a) if and while the disability is rated 10 percent the monthly compensation shall be $123;

(b) if and while the disability is rated 20 percent the monthly compensation shall be $243;

(c) if and while the disability is rated 30 percent the monthly compensation shall be $376;

(d) if and while the disability is rated 40 percent the monthly compensation shall be $541;

(e) if and while the disability is rated 50 percent the monthly compensation shall be $770;

(f) if and while the disability is rated 60 percent the monthly compensation shall be $974;

(g) if and while the disability is rated 70 percent the monthly compensation shall be $1,228;

(h) if and while the disability is rated 80 percent the monthly compensation shall be $1,427;

(i) if and while the disability is rated 90 percent the monthly compensation shall be $1,604;

(j) if and while the disability is rated as total the monthly compensation shall be $2,673;

(k) if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of one or more creative organs, or one foot, or one hand, or both buttocks, or blindness of one eye, having only light perception, has suffered complete organic aphonia with constant inability to communicate by speech, or deafness of both ears, having absence of air and bone conduction, or, in the

case of a woman veteran, has suffered the anatomical loss of 25 percent or more of tissue from a single breast or both breasts in combination (including loss by mastectomy or partial mastectomy) or has received radiation treatment of breast tissue, the rate of compensation therefor shall be $96 per month for each such loss or loss of use independent of any other compensation provided in subsections (a) through (j) or subsection (s) of this section but in no event to exceed $3,327 per month; and in the event the veteran has suffered one or more of the disabilities heretofore specified in this subsection, in addition to the requirement for any of the rates specified in subsections (l) through (n) of this section, the rate of compensation shall be increased by $96 per month for each such loss or loss of use, but in no event to exceed $4,667 per month;

(l) if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of both feet, or of one hand and one foot, or is blind in both eyes, with 5/200 visual acuity or less, or is permanently bedridden or with such significant disabilities as to be in need of regular aid and attendance, the monthly compensation shall be $3,327;

(m) if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of both hands, or of both legs with factors preventing natural knee action with prostheses in place, or of one arm and one leg with factors preventing natural elbow and knee action with prostheses in place, or has suffered blindness in both eyes having only light perception, or has suffered blindness in both eyes, rendering such veteran so significantly disabled as to be in need of regular aid and attendance, the monthly compensation shall be $3,671;

(n) if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of both arms with factors preventing natural elbow action with prostheses in place, has suffered the anatomical loss

of both legs with factors that prevent the use of prosthetic appliances, or has suffered the anatomical loss of one arm and one leg with factors that prevent the use of prosthetic appliances, or has suffered the anatomical loss of both eyes, or has suffered blindness without light perception in both eyes, the monthly compensation shall be $4,176;

(o) if the veteran, as the result of service-connected disability, has suffered disability under conditions which would entitle such veteran to two or more of the rates provided in one or more subsections (l) through (n) of this section, no condition being considered twice in the determination, or if the veteran has suffered bilateral deafness (and the hearing impairment in either one or both ears is service connected) rated at 60 percent or more disabling and the veteran has also suffered service-connected total blindness with 20/200 visual acuity or less, or if the veteran has suffered service-connected total deafness in one ear or bilateral deafness (and the hearing impairment in either one or both ears is service connected) rated at 40 percent or more disabling and the veteran has also suffered service-connected blindness having only light perception or less, or if the veteran has suffered the anatomical loss of both arms with factors that prevent the use of prosthetic appliances, the monthly compensation shall be $4,667;

(p) in the event the veteran's service-connected disabilities exceed the requirements for any of the rates prescribed in this section, the Secretary may allow the next higher rate or an intermediate rate, but in no event in excess of $4,667. In the event the veteran has suffered service-connected blindness with 5/200 visual acuity or less and (1) has also suffered bilateral deafness (and the hearing impairment in either one or both ears is service connected) rated at no less than 30 percent disabling, the Secretary shall allow the next higher rate, or (2) has also suffered service-connected total deafness in one ear or service-connected anatomical loss or loss of use of one hand or one foot, the Secretary shall allow the next intermediate

rate, but in no event in excess of $4,667. In the event the veteran has suffered service-connected blindness, having only light perception or less, and has also suffered bilateral deafness (and the hearing impairment in either one or both ears is service connected) rated at 10 or 20 percent disabling, the Secretary shall allow the next intermediate rate, but in no event in excess of $4,667. In the event the veteran has suffered the anatomical loss or loss of use, or a combination of anatomical loss and loss of use, of three extremities, the Secretary shall allow the next higher rate or intermediate rate, but in no event in excess of $4,667. Any intermediate rate under this subsection shall be established at the arithmetic mean, rounded down to the nearest dollar, between the two rates concerned.

[(q) Repealed. Pub. L. 90–493, § 4(a), Aug. 19, 1968, 82 Stat. 809.]

(r) Subject to section 5503(c) of this title, if any veteran, otherwise entitled to compensation authorized under subsection (o) of this section, at the maximum rate authorized under subsection (p) of this section, or at the intermediate rate authorized between the rates authorized under subsections (n) and (o) of this section and at the rate authorized under subsection (k) of this section, is in need of regular aid and attendance, then, in addition to such compensation—

(1) the veteran shall be paid a monthly aid and attendance allowance at the rate of $2,002; or

(2) if the veteran, in addition to such need for regular aid and attendance, is in need of a higher level of care, such veteran shall be paid a monthly aid and attendance allowance at the rate of $2,983, in lieu of the allowance authorized in clause (1) of this subsection, if the Secretary finds that the veteran, in the absence of the provision of such care, would require hospitalization, nursing home care, or other residential institutional care.

> For the purposes of clause (2) of this subsection, need for a higher level of care shall be considered to be need for personal health-care services provided on a daily basis in the veteran's home by a person who is licensed to provide such services or who provides such services under the regular supervision of a licensed health-care professional. The existence of the need for such care shall be determined by a physician employed by the Department or, in areas where no such physician is available, by a physician carrying out such function under contract or fee arrangement based on an examination by such physician. For the purposes of section 1134 of this title, such allowance shall be considered as additional compensation payable for disability.

(s) If the veteran has a service-connected disability rated as total, and (1) has additional service-connected disability or disabilities independently ratable at 60 percent or more, or, (2) by reason of such veteran's service-connected disability or disabilities, is permanently housebound, then the monthly compensation shall be $2,993. For the purpose of this subsection, the requirement of "permanently housebound" will be considered to have been met when the veteran is substantially confined to such veteran's house (ward or clinical areas, if institutionalized) or immediate premises due to a service-connected disability or disabilities which it is reasonably certain will remain throughout such veteran's lifetime.

(t) Subject to section 5503(c) of this title, if any veteran, as the result of service-connected disability, is in need of regular aid and attendance for the residuals of traumatic brain injury, is not eligible for compensation under subsection (r)(2), and in the absence of such regular aid and attendance would require hospitalization, nursing home care, or other residential institutional care, the veteran shall be paid, in addition to any other compensation under

this section, a monthly aid and attendance allowance equal to the rate described in subsection (r)(2), which for purposes of section 1134 of this title shall be considered as additional compensation payable for disability. An allowance authorized under this subsection shall be paid in lieu of any allowance authorized by subsection (r)(1).

**38 C.F.R. § 3.350 Special monthly compensation ratings.**

The rates of special monthly compensation stated in this section are those provided under 38 U.S.C. 1114.

(a) **Ratings under 38 U.S.C. 1114(k).** Special monthly compensation under 38 U.S.C. 1114(k) is payable for each anatomical loss or loss of use of one hand, one foot, both buttocks, one or more creative organs, blindness of one eye having only light perception, deafness of both ears, having absence of air and bone conduction, complete organic aphonia with constant inability to communicate by speech or, in the case of a woman veteran, loss of 25% or more of tissue from a single breast or both breasts in combination (including loss by mastectomy or partial mastectomy), or following receipt of radiation treatment of breast tissue. This special compensation is payable in addition to the basic rate of compensation otherwise payable on the basis of degree of disability, provided that the combined rate of compensation does not exceed the monthly rate set forth in 38 U.S.C. 1114(l) when authorized in conjunction with any of the provisions of 38 U.S.C. 1114 (a) through (j) or (s). When there is entitlement under 38 U.S.C. 1114 (l) through (n) or an intermediate rate under (p) such additional allowance is payable for each such anatomical loss or loss of use existing in addition to the requirements for the basic rates, provided the total does not exceed the monthly rate set forth in 38 U.S.C. 1114(o). The limitations on the maximum compensation payable under this paragraph are independent of and do not preclude payment of

additional compensation for dependents under 38 U.S.C. 1115, or the special allowance for aid and attendance provided by 38 U.S.C. 1114(r).

* * *

(f) **Intermediate or next higher rate.** An intermediate rate authorized by this paragraph shall be established at the arithmetic mean, rounded to the nearest dollar, between the two rates concerned.

(Authority: 38 U.S.C. 1114 (p))

(1) **Extremities.**

(i) Anatomical loss or loss of use of one foot with anatomical loss or loss of use of one leg at a level, or with complications preventing natural knee action with prosthesis in place, shall entitle to the rate between 38 U.S.C. 1114(l) and (m).

(ii) Anatomical loss or loss of use of one foot with anatomical loss of one leg so near the hip as to prevent use of prosthetic appliance shall entitle to the rate under 38 U.S.C. 1114(m).

(iii) Anatomical loss or loss of use of one foot with anatomical loss or loss of use of one arm at a level, or with complications, preventing natural elbow action with prosthesis in place, shall entitle to the rate between 38 U.S.C. 1114(l) and (m).

(iv) Anatomical loss or loss of use of one foot with anatomical loss or loss of use of one arm so near the shoulder as to prevent use of a prosthetic appliance shall entitle to the rate under 38 U.S.C. 1114(m).

(v) Anatomical loss or loss of use of one leg at a level, or with complications, preventing natural knee action with prosthesis in place with anatomical loss of one leg so near the hip as to prevent use

of a prosthetic appliance, shall entitle to the rate between 38 U.S.C. 1114(m) and (n).

(vi) Anatomical loss or loss of use of one leg at a level, or with complications, preventing natural knee action with prosthesis in place with anatomical loss or loss of use of one hand, shall entitle to the rate between 38 U.S.C. 1114 (l) and (m).

(vii) Anatomical loss or loss of use of one leg at a level, or with complications, preventing natural knee action with prosthesis in place with anatomical loss of one arm so near the shoulder as to prevent use of a prosthetic appliance, shall entitle to the rate between 38 U.S.C. 1114 (m) and (n).

(viii) Anatomical loss of one leg so near the hip as to prevent use of a prosthetic appliance with anatomical loss or loss of use of one hand shall entitle to the rate under 38 U.S.C. 1114(m).

(ix) Anatomical loss of one leg so near the hip as to prevent use of a prosthetic appliance with anatomical loss or loss of use of one arm at a level, or with complications, preventing natural elbow action with prosthesis in place, shall entitle to the rate between 38 U.S.C. 1114 (m) and (n).

(x) Anatomical loss or loss of use of one hand with anatomical loss or loss of use of one arm at a level, or with complications, preventing natural elbow action with prosthesis in place, shall entitle to the rate between 38 U.S.C. 1114 (m) and (n).

(xi) Anatomical loss or loss of use of one hand with anatomical loss of one arm so near the shoulder as to prevent use of a prosthetic appliance shall entitle to the rate under 38 U.S.C. 1114(n).

(xii) Anatomical loss or loss of use of one arm at a level, or with complications, preventing natural

elbow action with prosthesis in place with anatomical loss of one arm so near the shoulder as to prevent use of a prosthetic appliance, shall entitle to the rate between 38 U.S.C. 1114 (n) and (o).

(2) **Eyes, bilateral, and blindness in connection with deafness and/or loss or loss of use of a hand or foot.**

(i) Blindness of one eye with 5/200 visual acuity or less and blindness of the other eye having only light perception will entitle to the rate between 38 U.S.C. 1114 (l) and (m).

(ii) Blindness of one eye with 5/200 visual acuity or less and anatomical loss of, or blindness having no light perception in the other eye, will entitle to a rate equal to 38 U.S.C. 1114(m).

(iii) Blindness of one eye having only light perception and anatomical loss of, or blindness having no light perception in the other eye, will entitle to a rate between 38 U.S.C. 1114 (m) and (n).

(iv) Blindness in both eyes with visual acuity of 5/200 or less, or blindness in both eyes rated under subparagraph (2) (i) or (ii) of this paragraph, when accompanied by service-connected total deafness in one ear, will afford entitlement to the next higher intermediate rate of if the veteran is already entitled to an intermediate rate, to the next higher statutory rate under 38 U.S.C. 1114, but in no event higher than the rate for (o).

(v) Blindness in both eyes having only light perception or less, or rated under subparagraph (2)(iii) of this paragraph, when accompanied by bilateral deafness (and the hearing impairment in either one or both ears is service-connected) rated at 10 or 20 percent disabling, will afford entitlement to the next higher intermediate rate, or if the veteran is

already entitled to an intermediate rate, to the next higher statutory rate under 38 U.S.C. 1114, but in no event higher than the rate for (o).

(Authority: Sec. 112, Pub. L. 98-223)

(vi) Blindness in both eyes rated under 38 U.S.C. 1114 (l), (m) or (n), or rated under subparagraphs (2)(i), (ii) or (iii) of this paragraph, when accompanied by bilaterial deafness rated at no less than 30 percent, and the hearing impairment in one or both ears is service-connected, will afford entitlement to the next higher statutory rate under 38 U.S.C. 1114, or if the veteran is already entitled to an intermediate rate, to the next higher intermediate rate, but in no event higher than the rate for (o).

(Authority: 38 U.S.C. 1114(p))

(vii) Blindness in both eyes rated under 38 U.S.C. 1114 (l), (m), or (n), or under the intermediate or next higher rate provisions of this subparagraph, when accompanied by:

(A) Service-connected loss or loss of use of one hand, will afford entitlement to the next higher statutory rate under 38 U.S.C. 1114 or, if the veteran is already entitled to an intermediate rate, to the next higher intermediate rate, but in no event higher than the rate for (o); or

(B) Service-connected loss or loss of use of one foot which by itself or in combination with another compensable disability would be ratable at 50 percent or more, will afford entitlement to the next higher statutory rate under 38 U.S.C. 1114 or, if the veteran is already entitled to an intermediate rate, to the next higher intermediate rate, but in no event higher than the rate for (o); or

> (C) Service-connected loss or loss of use of one foot which is ratable at less than 50 percent and which is the only compensable disability other than bilateral blindness, will afford entitlement to the next higher intermediate rate or, if the veteran is already entitled to an intermediate rate, to the next higher statutory rate under 38 U.S.C. 1114, but in no event higher than the rate for (o).

(Authority: 38 U.S.C. 1114(p))

(3) **Additional independent 50 percent disabilities.** In addition to the statutory rates payable under 38 U.S.C. 1114 (l) through (n) and the intermediate or next higher rate provisions outlined above, additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more will afford entitlement to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. 1114, but not above the (o) rate. In the application of this subparagraph the disability or disabilities independently ratable at 50 percent or more must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitlement under 38 U.S.C. 1114 (l) through (n) or the intermediate rate provisions outlined above. The graduated ratings for arrested tuberculosis will not be utilized in this connection, but the permanent residuals of tuberculosis may be utilized.

(4) **Additional independent 100 percent ratings.** In addition to the statutory rates payable under 38 U.S.C. 1114 (l) through (n) and the intermediate or next higher rate provisions outlined above additional single permanent disability independently ratable at 100 percent apart from any consideration of individual unemployability will afford entitlement to the next higher statutory rate under 38

U.S.C. 1114 or if already entitled to an intermediate rate to the next higher intermediate rate, but in no event higher than the rate for (o). In the application of this subparagraph the single permanent disability independently ratable at 100 percent must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitlement under 38 U.S.C. 1114 (l) through (n) or the intermediate rate provisions outlined above.

> (i) Where the multiple loss or loss of use entitlement to a statutory or intermediate rate between 38 U.S.C. 1114 (l) and (o) is caused by the same etiological disease or injury, that disease or injury may not serve as the basis for the independent 50 percent or 100 percent unless it is so rated without regard to the loss or loss of use.
>
> (ii) The graduated ratings for arrested tuberculosis will not be utilized in this connection, but the permanent residuals of tuberculosis may be utilized.

(5) **Three extremities.** Anatomical loss or loss of use, or a combination of anatomical loss and loss of use, of three extremities shall entitle a veteran to the next higher rate without regard to whether that rate is a statutory rate or an intermediate rate. The maximum monthly payment under this provision may not exceed the amount stated in 38 U.S.C. 1114(p).

# United States Court of Appeals for the Federal Circuit

---

**DANIEL D. BARRY,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-1747

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-3367, Judge Grant Jaquith, Judge Joseph L. Falvey, Jr, Judge Michael P. Allen.

---

LOURIE, *Circuit Judge*, dissenting.

I respectfully dissent. I do so because 38 C.F.R. § 3.350(f)(3), when examined in the context of the regulation's surrounding subsections and the statute that they implement, has only a single reasonable meaning: that a veteran is limited to a single half-step increase in SMC benefits, irrespective of how many additional single service-connected disabilities or combinations of service-connected disabilities the veteran may have that are independently ratable at 50 percent or higher.

In construing regulations, plain language is paramount. *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017). "If the regulatory language is clear and

unambiguous, the inquiry ends with the plain meaning." *Id.* As the Veterans Court properly recognized, under § 3.350(f)(3), an "additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more" will afford entitlement to "*the* next higher intermediate *rate*" or "*the* next higher statutory *rate*." 38 C.F.R. § 3.350(f)(3) (emphases added); *see Decision*, 35 Vet. App. at 122–24. The singular and specific terms "the" and "rate" indicate that veterans are afforded only a single-half step increase in an SMC rate. Even were that language alone not entirely dispositive, a more thorough consideration of the regulation as a whole, along with the statute that it implements, provides meaningful context.

As the majority points out, § 3.350(f)(3) implements 38 U.S.C. § 1114(p), which recites, in part: "in the event the veteran's *service-connected disabilities* exceed the requirements for any of the rates prescribed in this section, the Secretary may allow *the* next higher *rate* or *an* intermediate *rate*, but in no event in excess of $4,667." 38 U.S.C. § 1114(p) (emphases added).

The language of 38 U.S.C. § 1114(p) indicates that only a *single rate increase* should be available, regardless of the number of "*disabilities*" that exceed the rate requirements. As such, § 1114(p) provides a limit to the benefits a veteran may receive under this statutory provision, a single rate increase, and further evidences that its implementing regulation, § 3.350(f)(3), limits veterans to receiving only a single half-step increase for any number of "additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more." *See United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 25 (1982) ("We consider first whether the Regulation harmonizes with the statutory language.").

That construction is reinforced by an examination of the neighboring subsections of § 1114 and § 3.350,

specifically § 1114(k) and its implementing regulation § 3.350(a). Section 3.350(a) implements 38 U.S.C. § 1114(k) just as § 3.350(f) implements 38 U.S.C. 1114 (p). Section 1114(k) expressly affords veterans multiple increases in SMC benefits on a per-disability basis, stating that “the rate of compensation shall be increased by $96 per month *for each such loss or loss of use*, but in no event to exceed $4,667 per month.” 38 U.S.C. § 1114(k) (emphasis added). The statute’s implementing regulation, 38 C.F.R. § 3.350(a), likewise explicitly states that “[s]pecial monthly compensation under 1114(k) is payable *for each anatomical loss*” and further explains that “such additional allowance is payable *for each such anatomical loss*.” 38 C.F.R. § 3.350(a) (emphases added). That language stands in contrast to the language in § 1114(p) and § 3.350(f)(3). Congress could have expressly allowed for multiple half-step increases under § 1114(p) had it chosen to.

The majority attempts to discount that comparison on the basis that “for each” lacks the “heft and distinctiveness” to warrant a meaningful distinction; however, the majority fails to explain how “for each” is so “ubiquitous” or possesses “sometimes context-dependent” meaning that would warrant disregarding the meaningful distinction it provides for each of the relevant provisions. *See* Maj. Op. at 15–16 (citing *Pulsifer*, 144 S. Ct. at 735). In fact, the majority goes on to explain the importance of the “for each” language to the understanding of § 1114(k). *Id.* But I consider it illogical to find that the “for each” language in § 1114(k) is meaningful to the understanding of that statutory provision while the lack of it is meaningless to the understanding of § 1114(p). Both of those provisions are found in the same statute, and both provisions afford veterans increases to their SMC benefits based on certain types of disabilities. I therefore disagree with the majority’s discounting of that comparison.

Furthermore, the majority’s interpretation of § 3.350(f)(3) undermines its neighboring subsection

§ 3.350(f)(4), which affords a veteran a full-step increase if he or she possesses an additional single permanent disability independently ratable at 100 percent. The majority's interpretation of § 3.350(f)(3) results in an illogical application, as a veteran may be able to obtain higher benefits by using multiple half-step increases under § 3.350(f)(3) than by meeting the more restrictive requirements for a full-step increase under § 3.350(f)(4). *See Decision*, 35 Vet. App. at 123–24.

In this case, the tools of regulatory construction indicate that there is a single reasonable meaning of § 3.350(f)(3): that a veteran is limited to a single half-step increase in SMC benefits, irrespective of how many additional single service-connected disabilities or combinations of service-connected disabilities are independently ratable at 50 percent or higher.

Accordingly, I would affirm the decision of the Veterans Court, which affirmed the decision of the Board, which followed the decision of the regional office.